UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NAKIESHA JONES,                                        **DECISION**
                              Plaintiff,                  **and**
          v.                                           **ORDER**

J.C. PENNEY'S DEPARTMENT STORES, INC.,                 **03-CV-920A(F)**
NICHOLAS GOODWIN, PAUL MEERBOTH,
SCOTT PIEL and JANE DOE,

                              Defendants.

APPEARANCES:           DEWEY P. SLOAN, JR., ESQ.
                       Attorney for Plaintiff
                       14 First Avenue SW
                       P.O. Box 501
                       Le Mars, Iowa   51031-0501

                       RICHARD L. BAUMGARTEN, ESQ.
                       Attorney for Plaintiff
                       Box 242
                       Buffalo, New York    14201

                       FELDMAN, KIEFFER & HERMAN, LLP
                       Attorneys for Defendants J.C. Penney's,
                          Goodwin & Meerboth
                       MICHELE K. SNYDER, of Counsel
                       110 Pearl Street, Suite 400
                       Buffalo, New York   14202

                       FREDERICK A. WOLF
                       ERIE COUNTY ATTORNEY
                       Attorney for Defendants Piel and Doe
                       KRISTIN KLEIN WHEATON,
                          Assistant County Attorney, of Counsel
                       69 Delaware Avenue, Suite 300
                       Buffalo, New York    14202

**JURISDICTION**

This case was referred to the undersigned for all pretrial matters pursuant to 28

U.S.C. § 636(b)(1)(A) and (B) by order of the Hon. Richard J. Arcara filed December 19,

2003 (Doc. No. 4).  The matter is presently before the court on Plaintiff's motion for

recusal, filed October 15, 2004, pursuant to 28 U.S.C. § § 144, 455 (Doc. No. 33).[1]


## BACKGROUND

Plaintiff's motion was filed together with the affirmation of Richard L.

Baumgarten, Esq., dated October 15, 2004, in support of Plaintiff's motion

("Baumgarten Affirmation in Support") along with Exhibits A (Transcript of Proceeding

September 20, 2004) and B (Transcript of Proceedings May 26, 2004) ("Plaintiff's

Exhibit(s) ___").   In accordance with the court's order, dated October 26, 2004 (Doc.

No. 35), Defendants J.C. Penney, Goodwin and Meerboth ("J.C. Penney Defendants")

filed the Affidavit of Michele K. Snyder, Esq., dated October 29, 2004, (Doc. No. 38)

("Snyder Affidavit in Opposition") on October 29, 2004 in opposition to Plaintiff's motion.

Defendants Scott Piel and Jane Doe filed, on November 1, 2004, the Affidavit of Kristin

Klein Wheaton, Assistant Erie County Attorney, dated November 1, 2004, also

opposing Plaintiff's motion (Doc. No. 39) ("Klein Wheaton Affidavit in Opposition").

Plaintiff's reply, the Affirmation of Richard L. Baumgarten, Esq., dated November 9,

2004 (Doc. No. 43) was filed November 9, 2004 ("Baumgarten Reply Affirmation").

On November 10, 2004, Plaintiff filed, without court approval or at the court's

request, the Supplemental Affirmation of Richard L. Baumgarten, Esq., dated

---

[1]  In Plaintiff's reply, Plaintiff additionally asserted that the degree of bias and prejudice Plaintiff alleged against the court violated her federal rights under the Due Process Clause of the Fifth Amendment.  Baumgarten Reply Affirmation ¶ ¶ 6-12.

November 10, 2004, attaching as Exhibit A a copy of Plaintiff's complaint to the Second

Circuit Judicial Council, alleging judicial misconduct against the undersigned, dated

October 25, 2004 ("Plaintiff's Exhibit A to Baumgarten Supplemental Affidavit") (Doc.

No. 44) ("Baumgarten Supplemental Affirmation") in further support of Plaintiff's motion

for recusal and in response to Defendants' affidavits.  Thereafter, without court

invitation, the parties filed the following documents: (1) Supplemental Affirmation of

Richard L. Baumgarten, Esq., dated December 10, 2004 (Doc. No. 50) ("Second

Baumgarten Supplemental Affirmation"); (2) the Affidavit of Kristin Klein Wheaton,

Assistant Erie County Attorney, dated December 20, 2004 in Opposition to Plaintiff's

Motion for Recusal (Doc. No. 55) ("Second Klein Wheaton Affidavit in Opposition"); (3)

Affidavit of Michele K. Snyder, Esq., dated December 20, 2004 (Doc. No. 58) ("Second

Snyder Affidavit in Opposition"); (4) the Affirmation of Richard L. Baumgarten, Esq.,

dated February 18, 2005 (Doc. No. 63) ("Baumgarten Affirmation in Response to

Defendants' Affidavits"); (5) Affidavit of Michele K. Snyder, Esq., dated February 28,

2005 (Doc. No. 64) ("Third Snyder Affidavit in Opposition"); (6) Affidavit of Kristin Klein

Wheaton, Assistant Erie County Attorney, dated March 2, 2005 (Doc. No. 65) ("Third

Klein Wheaton Affidavit in Opposition"); and (7) the Responding Affirmation of Richard

L. Baumgarten, Esq., dated March 17, 2005 (Doc. No. 67), ("Baumgarten Responding

Affirmation").  Oral argument was deemed unnecessary.  Based on the following,

Plaintiff's motion is DENIED.

**FACTS**[2]

This action, alleging violations of Plaintiff's constitutional rights and New York state law, was commenced by summons and complaint filed in New York Supreme Court, Erie County, on July 9, 2003.[3]  Specifically, Plaintiff, alleges pursuant to 42 U.S.C. § § 1981, 1983, 1985 and 1986, violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.  Plaintiff also asserted violations of corresponding provisions of the New York State Constitution, unspecified state statutes, and state common law tort claims of malicious prosecution, unlawful imprisonment, abuse of process, and negligence.[4]

Plaintiff's claims arise out of an encounter with Defendants that began with what Plaintiff alleges was Defendant J.C. Penney's discriminatory targeting of an anti-shoplifting store surveillance system, and application of Defendant J.C. Penney's alleged shoplifting policy against Plaintiff based on her race as an African-American, while Plaintiff shopped, on March 29, 2002, at a J.C. Penney's store located at 4545 Transit Road in the Town of Clarence, New York.  In particular, Plaintiff alleges that Defendants Goodwin and Meerboth, J.C. Penney employees, accosted Plaintiff as she left the store, and wrongly accused her of shoplifting.  Defendants Piel and Doe, Deputy Erie County Sheriffs who, according to Plaintiff, assisted Goodwin and Meerboth in the

---

[2]  Taken from the papers and pleadings filed in the instant matter and the court's docket and records.

[3]  The Complaint was signed by Glenn E. Murray, Esq. with Richard L. Baumgarten, Esq. named as "of counsel" to Mr. Murray.  However, as Defendants' docketing sheet filed with the Petition of Removal listed only Mr. Baumgarten as Plaintiff's attorney, Mr. Murray's name has not appeared on the docket sheet in this court, nor has Mr. Murray ever appeared before the court in connection with this matter.

[4]  Although the Complaint's introduction references 42 U.S.C. § 2000A, prohibiting discrimination in public accommodations, no count of the Complaint alleges a cause of action thereunder.

investigation and Plaintiff's arrest, subsequently charged Plaintiff with petite larceny.

Following criminal court proceedings in the Clarence Town Court ("the Town Court"),

the charge against Plaintiff was eventually dismissed on July 26, 2002, and this suit

followed.

        With consent of all Defendants, the Complaint was removed to this court on

December 8, 2003, pursuant to 28 U.S.C. § 1441(b).  Defendants J.C. Penney,

Goodwin and Meerboth ("J.C. Penney Defendants") served their answer, with a cross-

claim against Defendants Piel and Doe, on December 15, 2003; Defendants Piel and

Doe served their answers on December 15, 2003.[5]  An order of referral to the

undersigned was filed on December 19, 2003 by Chief District Judge Richard J. Arcara.

On January 5, 2004, an order was filed by the undersigned directing the parties to

submit proposed case management orders prior to a pretrial conference with the parties

scheduled for February 11, 2004, pursuant to Fed.R.Civ.P. 16(b) and Local Rule of Civil

Procedure 16.1(a).

        On February 9, 2004, Chief Judge Arcara filed an order (Doc. No. 9) ("the Chief

Judge Arcara Order") informing the judges of this court that Richard L. Baumgarten,

Esq., Plaintiff's attorney of record, had been suspended from the practice of law in New

York State by order of New York Supreme Court, Appellate Division, Fourth Department

("the Appellate Division"), on November 6, 1998, "based on a finding that . . . [Mr.

Baumgarten] was incapacitated from practicing law by reasons of mental infirmity or

illness."  Chief Judge Arcara Order at 1 (citing *In re Baumgarten*, 679 N.Y.S.2d 860

---

[5] To date, Defendant Doe has not been identified or served by Plaintiff and as such is not a party to this action.

(App.Div. 4th Dep't 1998)).   According to the Chief Judge Arcara Order, following the

Appellate Division's suspension of Mr. Baumgarten, in accordance with this court's

Local Rule of Civil Procedure 83.3, Mr. Baumgarten's name was stricken from the roll of

attorneys admitted to practice in this court.   *Id.* at 2-3.   In his order, Chief Judge Arcara

also noted that service upon Mr. Baumgarten of a copy of this court's order of

suspension pursuant to Local Rule of Civil Procedure 83.3 was not accomplished for

lack of a current mailing address in the court's records as Mr. Baumgarten, apparently,

had not maintained a current mailing address with the Clerk of Court, as required by

this court's Local Rule of Civil Procedure 83.1(h).   *Id.*

Further, Chief Judge Arcara's order advised the court that on June 8, 2001, the

Appellate Division had vacated Mr. Baumgarten's suspension finding that Mr.

Baumgarten, through therapy and medication, "had recovered from his incapacity," but

that notwithstanding such recovery, the Appellate Division had granted a cross-motion

of the Grievance Committee of the Appellate Division to suspend Mr. Baumgarten

indefinitely based on "uncontroverted proof that he had committed [professional]

misconduct."   Chief Judge Arcara Order at 3 (citing *In re Baumgarten*, 727 N.Y.S. 2d

673 (App. Div. 4th Dep't 2001)).   Specifically, Chief Judge Arcara informed the judges

that on December 30, 2002, the Appellate Division suspended Mr. Baumgarten for a

period of 19 months, effective as of June 8, 2001, based on such misconduct.   *Id.* at 3

(citing *In re Baumgarten*, 757 N.Y.S.2d 164, 177-78 (App. Div. 4th Dep't 2002)).[6]   Judge

---

[6]   The Appellate Division found Mr. Baumgarten had violated DR2-110(A)(3) (failing to return
unearned fees to clients); DR6-101(A)(3) (neglect of a matter entrusted to a lawyer); DR7-101(A)(2)
(failing to carry out a contract with a client for professional services); DR7-101(A)(3) (intentionally
damaging a client during course of the professional relationship).

Arcara also noted Mr. Baumgarten's December 30, 2002 suspension was later
terminated by the Appellate Division, and that Mr. Baumgarten was reinstated as a
member of the New York bar on March 21, 2003.  Chief Judge Arcara Order, *supra*, at
3 (citing *In re Baumgarten,* 759 N.Y.S.2d 922 (App. Div. 4th Dep't 2003)).

However, Chief Judge Arcara also determined that as of the date of the
Appellate Division order of reinstatement, Mr. Baumgarten had failed to comply with this
court's Local Rule of Civil Practice 83.3(e), requiring that an attorney who is disbarred
or suspended and is later reinstated by the state courts, "must reapply for admission" to
practice in this court in accordance with Local Rule of Civil Procedure 83.1.  Chief
Judge Arcara Order at 3.  Accordingly, Chief Judge Arcara directed Mr. Baumgarten to
apply for such readmission not later than March 12, 2004 and scheduled a hearing on
the matter for March 26, 2004.  *Id.* at 3.  Chief Judge Arcara also directed (1) that Mr.
Baumgarten be served with a copy of the order, (2) that each of four cases then
pending in this court, including the instant case for which Mr. Baumgarten was listed as
a counsel of record, be held in abeyance by any judge assigned to the case pending
resolution of Mr. Baumgarten's readmission, (3) that each judge and magistrate judge
of this court before whom the subject cases were pending be notified of the order, and
(4) that Mr. Baumgarten provide a copy of the order to each of his clients in the four
cases.  *Id.* at 3-4.

On February 11, 2004, this court, not then in receipt of a copy of Chief Judge
Arcara's order (and therefore being unaware of the order) conducted the previously
scheduled Rule 16(b) conference with counsel for the parties, including Mr.
Baumgarten, and, following discussion of the case with counsel, established a

proposed case management order (Doc. No. 7).[7]  No mention of Chief Judge Arcara's

order was made by any attorney at the Rule 16(b) hearing.  Thereafter, upon receiving

and reviewing Chief Judge Arcara's order, the undersigned directed the parties appear

on February 25, 2004 to determine how to proceed with the case in light of the order

(Doc. No. 8).  At the further pretrial conference, conducted on February 25, 2004, at

which Mr. Baumgarten appeared, the court was advised that all parties were then

aware of Chief Judge Arcara's order and that a further Rule 16(b) hearing for the case

would be scheduled on the assumption that Mr. Baumgarten obtained readmission in

accordance with Chief Judge Arcara's order (Doc. No. 10).

On April 7, 2004, Mr. Baumgarten was readmitted to this court by order of Chief

Judge Arcara.  (Minute Entry of April 7, 2004, Doc. No. 11.)  A further Rule 16(b)

conference for the instant case before the undersigned was thereafter scheduled for

May 26, 2004 at 10:00 a.m. (Doc. No. 12).  At this pretrial conference, at which Mr.

Baumgarten failed to appear, the court considered, with the assistance of Defendants'

attorneys, another Rule 16(b) case management order for the case proposing a fact

discovery cut-off of December 31, 2004.  Docket Minute Entry May 26, 2004.  Finding

that the case did not present complex issues of fact, the court, on May 27, 2004,

entered a case management order requiring that fact discovery be completed by

September 30, 2004, expert disclosures be made not later than November 15, 2004, a

settlement conference with the court be conducted on December 8, 2004, and

dispositive motions be filed by December 30, 2004.  Doc. No 13 ("the Scheduling

---

[7]  When the agreed Rule 16(b) scheduling order was in preparation for filing, Chief Judge Arcara's
order was received by the undersigned and the scheduling order was therefore not filed.  *See* Minute Entry
February 11, 2004 (Doc. No. 7).

Order").

According to Plaintiff, Mr. Baumgarten, prior to the May 26, 2004 pretrial conference, left a message on the court's answering machine to inform the court of his inability to attend on time the May 26, 2004 Rule 16(b) conference because of illness. Baumgarten Affirmation in Support ¶ 8.  As stated in his affirmation, Baumgarten arrived at the courthouse "at approximately 9:45 - 10:00 AM" and "encountered" Ms. Klein Wheaton "as she was leaving the courthouse." [8]  *Id.* ¶ 9.  Baumgarten also averred that upon his late arrival he proceeded to the undersigned's courtroom and spoke with the court's judicial assistant, Ms. Sandra Wilson, who informed him that the Rule 16(b) hearing had been conducted prior to his arrival, that a Scheduling Order for the case had been adopted by the court, and that he could expect to receive a copy of the order after its filing.  *Id.* ¶ ¶ 10-11.[9]  No request to reopen the Rule 16(b) hearing was made by Plaintiff at that time nor was any motion for reconsideration of the Scheduling Order thereafter filed by Plaintiff.  Moreover, no objections seeking review, pursuant to Fed.R.Civ.P. 72(a), of the Scheduling Order by the District Judge were filed by Plaintiff.  Fed.R.Civ.P. 72(a) (permitting district judge review of a magistrate judge's non-dispositive orders upon filing of objections within 10 days of service of such order).

The undersigned had no further contact with the case until Defendants filed, on August 23, 2004 (Defendant Piel) and August 26, 2004 (the J.C. Penney Defendants),

---

[8]  According to the court's tape recorded record of the proceeding, the Rule 16(b) hearing commenced at 10:07 a.m. and concluded at 10:21 a.m.

[9]  The court has no recollection of being informed by Ms. Wilson at that time of either Mr. Baumgarten's late arrival or his earlier telephone message left on the court's answering machine.

motions to compel discovery (Doc. Nos. 16, 18).  By order dated August 31, 2004, the

court scheduled oral argument on Defendants' motions for September 20, 2004,

directed Plaintiff's response to the motions be filed by September 9, 2004, and that

Defendants' replies be filed by September 15, 2004 (Doc. No. 19).  Plaintiff timely filed

her response on September 9, 2005 (Doc. No. 20).

At the September 20, 2004 oral argument on Defendants' motions, the court

determined that as Plaintiff's discovery responses served after the motion was filed,

while overdue, were, with one exception, then satisfactory to Defendants, Defendants'

motions were moot.  Doc. No. 25 (Minute Entry).  Plaintiff's Exhibit A at 13-15.[10]

However, Defendants also requested production of records Plaintiff had represented in

her responses were then in the possession of Glenn E. Murray, Esq., Plaintiff's

defense counsel in Plaintiff's criminal proceedings in the Town Court,[11] regarding

disposition of Defendants' shoplifting charge against Plaintiff, contending that the

records would show the charge against Plaintiff was dismissed by the court with the

stipulation that Plaintiff not file any civil actions against Defendants based on such

dismissal.  Plaintiff's Exhibit A at 18.  Finding that for purposes of Fed.R.Civ.P. 34(a),

Plaintiff retained control over the records in her attorney's files, and that, by untimely

service of Plaintiff's responses, Plaintiff had waived her asserted attorney-client

---

[10]  J.C. Penney Defendants' discovery requests (Interrogatories and Document Production
Requests) were served on or about June 1, 2004.  Affidavit of Michele K. Snyder, Esq., dated August 26,
2004, (Doc. No. 17) ¶ 5.  Defendant Piel's Interrogatories and Document Production Requests were
served on June 25, 2004.  Affidavit of Kristin Klein Wheaton, dated January [*sic*] 23, 2004, (Doc. No. 15) ¶
5.  According to the record, Plaintiff's responses were served on August 30, 2004.  Plaintiff's Exhibit A at
13.

[11]  Plaintiff's counsel in the criminal case was Glenn E. Murray, Esq., the same attorney who, as
noted, Background, *supra*, at 4, n. 3, signed and filed the state court complaint in this action.

privilege objection, *id.* at 17, 22-23, 29, the court granted Defendants' motion and
directed Plaintiff to produce the records.  *Id.* at 35; Minute Entry September 20, 2004
(Doc. No. 25).  *See Land Ocean Logistics, Inc. v. Aqua Gulf Corporation*, 181 F.R.D.
229, 236 (W.D.N.Y. 1998) (holding that failure to timely serve responses to Rule 34(a)
requests, absent agreement of the requesting party, waives objections) (citing cases).
The court also directed that Plaintiff's deposition be completed not later than the cut-off
date for discovery, September 30, 2004, established by the Scheduling Order.  (Doc.
No. 25 Minute Entry).

Additionally, based on its finding that Plaintiff's failure to timely respond to
Defendants' discovery requests was not substantially justified, the court, at Defendants'
request, awarded costs to Defendants pursuant to Fed.R.Civ.P. 37(a)(4)(A).  Plaintiff's
Exhibit A at 35.  No objections to the court's decision and order on Defendants'
motions, and nor the award of costs, were filed pursuant to Fed.R.Civ.P. 72(a) by
Plaintiff.  On October 26, 2004, finding that, by failing to provide the requested
discovery, Plaintiff's attorney had necessitated Defendants' motion to compel, the court
awarded costs against Mr. Baumgarten in the amount of $874.50.  (Doc. No. 36).
Again, no objection pursuant to Rule 72(a) to this order was filed by Plaintiff.

On September 30, 2004, the last day of the discovery period, Plaintiff filed a
motion (Doc. No. 30) to extend the deadlines in the Scheduling Order.  Defendant Piel
filed, on October 4, 2004, (Doc. No. 31), his opposition to Plaintiff's motion.  On October
25, 2004, the court issued an order (Doc. No. 34), requesting Defendants' responses to
Plaintiff's motion to amend the Scheduling Order.  On October 26, 2004, the court
issued an order directing that Defendants' responses to Plaintiff's recusal motion be

filed not later than November 4, 2004 (Doc. No. 35); Plaintiff's reply was to be filed not later than November 9, 2004.  J.C. Penney Defendants filed their opposition papers to Plaintiff's motion to amend the Scheduling Order on October 27, 2004 (Doc. No. 37), and in response to Plaintiff's recusal motion on October 29, 2004 (Doc. No. 38); on November 1, 2004 Defendant Piel filed his opposition to the recusal motion (Doc. No. 39).  Plaintiff filed her reply, the Affirmation of Richard L. Baumgarten, Esq., dated November 9, 2004, on November 9, 2004 (Doc. No. 43) ("Baumgarten Reply Affirmation").

On November 10, 2004, without seeking prior approval of the court to permit additional filings outside the dates established by the court's October 26, 2004 order for the instant motion, Plaintiff filed the Supplemental Reply Affirmation of Richard L. Baumgarten, Esq., dated November 10, 2004 (Doc. No. 44), attaching Plaintiff's Complaint to the Second Circuit Judicial Council, dated October 24, 2004, under 28 U.S.C. § 351, *et. seq.,* ("Baumgarten Supplemental Affirmation") asserting that the undersigned's demeanor and conduct of the prior proceedings in this case, in particular the September 20, 2004 oral argument on Defendants' motions to compel demonstrated, according to Plaintiff, "the appearance of bias and prejudice" in that the undersigned "appeared to be biased and openly hostile toward Plaintiff and her counsel," during such proceedings.  Exhibit A to Baumgarten Supplemental Affirmation, ¶ ¶ 4-5.

By Order filed November 18, 2004, the court denied Plaintiff's motion to amend the Scheduling Order, and directed remaining depositions be concluded by December

17, 2004, as the parties had agreed (Doc. No. 45).[12]  No objections to this order were

filed by Plaintiff pursuant to Rule 72(a).  However, because Plaintiff had demanded

Goodwin and Meerboth also be produced on December 17, 2004 for deposition, by

letter to the court by Michele K. Snyder, Esq., dated December 3, 2004, (Doc. No. 51)

the J.C. Penney Defendants requested clarification as to whether the court's November

18, 2004 Order was intended to allow Plaintiff to depose Defendants Goodwin and

Meerboth at the December 17, 2004 deposition, as well as Defendant Piel, rescheduled

by agreement of the parties to December 17, 2004 from September 30, 2004.  By order

dated December 16, 2004, the court clarified its November 18, 2004 order by directing

that the deposition of Defendant Piel only be concluded by December 17, 2004 (Doc.

No. 52) as the court had previously found Plaintiff had waived any deposition of

Defendants Goodwin and Meerboth by Plaintiff's unexcused failure to proceed with their

scheduled depositions on September 30, 2004.  Order of November 18, 2004 (Doc. No.

45).  Plaintiff filed no objections, pursuant to Rule 72(a), to this order.

As noted, on December 10, 2004, Plaintiff filed, without the court's permission, a

Supplemental Affirmation of Richard L. Baumgarten, Esq., dated December 10, 2004

("Second Baumgarten Supplemental Affirmation") (Doc. No. 50) in further support of

Plaintiff's motion for recusal alleging, as an additional ground for recusal, *ex parte*

communications between Defendants' attorneys and the court, based on (1) two letters

---

[12]  Specifically, as recounted in the court's order dated December 16, 2004 (Doc. No. 52)
("December 16, 2004 Order"), Plaintiff had demanded that depositions of Goodwin, Meerboth and Piel
also be conducted on September 30, 2004, the date for Plaintiff's deposition directed by the court.
December 16, 2004 Order at 1-2.  However, because of Piel's unavailability, and without seeking prior
permission of the court, the parties rescheduled Piel's deposition for December 17, 2004.  *Id.* at 2.  Such
rescheduling led Plaintiff to again demand Goodwin and Meerboth also be produced for depositions on
December 17, 2004.

to the court, one from Kristin Klein Wheaton, Assistant Erie County Attorney, attorney

for Defendant Piel, that was faxed to the court on September 29, 2004 seeking possible

judicial assistance to resolve the continuing dispute over Plaintiff's failure to provide

Plaintiff's attorney's file despite the court's September 20, 2004 direction and the other

from J.C. Penney Defendants' counsel, Michele K. Snyder, Esq., dated December 3,

2004,  filed November 18, 2004, requesting clarification of the court's order (Doc. No.

40); (2) a telephone call on September 29, 2004, the day before Plaintiff's deposition,

by Michele K. Snyder, Esq., J.C. Penney Defendants' attorney, to the court advising of

Mr. Baumgarten's failure to comply with the court's order of September 20, 2004 and

inquiring as to the court's availability to informally resolve Defendants' on-going difficulty

in obtaining production of Mr. Murray's file; and (3) the court's telephone call, placed by

its judicial assistant, Ms. Wilson, to Mr. Baumgarten's office requesting a response to

Ms. Snyder's December 3, 2004 letter (Doc. No. 51) to the court seeking clarification of

the court's November 18, 2004 order denying Plaintiff's motion to amend the scheduling

order.  Second Baumgarten Supplemental Affirmation ¶ 7; Exhibits A and B,

respectively.  Plaintiff specifically asserts such "communications" violate the Code of

Conduct for United States Judges Canon 3 § A(4) (judge should not "initiate nor

consider *ex parte* communications on the merits, or procedures affecting the merits, of

a pending . . . proceeding.").  *Id.* ¶ 5.[13]

    In response, Defendants filed on December 20, 2004, affidavits in response to

---

[13]  Plaintiff filed with the Second Circuit Judicial Council a second judicial misconduct complaint against the undersigned, dated February 14, 2005, asserting such *ex parte* communications as additional violations by the undersigned of the Code of Judicial Conduct.  Baumgarten Responding Affirmation ¶ 15. A copy of the complaint was not attached to the affirmation.

the Second Baumgarten Supplemental Affirmation (Second Klein Wheaton Affidavit in

Opposition; Second Snyder Affidavit in Opposition, Doc. Nos. 55 and 58, respectively)

contending that as the Second Baumgarten Supplemental Affirmation was filed beyond

the motion schedule for the instant motion, and without leave of court, it should be

disregarded.  Second Klein Wheaton Affidavit in Opposition, ¶ 6; Second Snyder

Affidavit in Opposition ¶ 6.  Defendants further argued that as Mr. Baumgarten received

a copy of Ms. Snyder's correspondence to the court, such communications were not *ex

parte*.  Second Klein Wheaton Affidavit ¶ 9; Second Snyder Affidavit ¶ 10.  Defendants'

counsel also pointed out that their phone call to the court was limited to a conversation

with the court's judicial assistant, Ms. Wilson, to ascertain the undersigned's availability

to consider applications to resolve any dispute between the parties regarding the

conduct of  Plaintiff's deposition and her failure to provide the documents from Mr.

Murray's file, in accordance with the court's direction at the September 20, 2004 oral

argument.  Second Klein Wheaton Affidavit ¶ ¶ 10-12; Second Snyder Affidavit ¶ ¶ 11,

16.

On February 23, 2005, again without leave of the court and beyond the limits of

the motion schedule, Plaintiff filed the Affirmation of Richard L. Baumgarten, Esq. in

Response to Defendants' Affidavits in Opposition to Plaintiff's Motion for Recusal, dated

February 18, 2005, (Doc. No. 63) ("Baumgarten Affirmation in Response to Defendants'

Affidavits") for the purpose of rebutting Defendants' arguments in opposition to

Plaintiff's recusal motion.  Specifically, Plaintiff asserted that by responding to

Defendants' letter to the court (Doc. No. 51 requesting clarification of the court's prior

ruling (Doc. No. 45)), and the court's subsequent order granting Defendants' request

15

(Doc. No. 52), the undersigned had shown "bias" and "non-neutrality," requiring recusal. Baumgarten Affirmation in Response to Defendants' Affidavits ¶ 16.

In opposition to the February 23, 2005 Baumgarten Affirmation, Defendants filed affidavits on February 28, 2005 ("Third Snyder Affidavit in Opposition") and March 2, 2005 ("Third Klein Wheaton Affidavit in Opposition"), (respectively, Doc. Nos. 64 and 65). In these submissions, Defendants contended that Plaintiff had erroneously concluded that improper *ex parte* communication had occurred between the court and Defendants based on the fact that Ms. Snyder and Ms. Klein Wheaton had received the court's December 16, 2004 order prior to the December 17, 2004 deposition of Defendant Piel, scheduled for 9:30 a.m. that day. Baumgarten Affirmation in Response to Defendants' Affidavits ¶ 12. Particularly, Ms. Snyder averred that unlike Mr. Baumgarten, who, according to the court's records, is a lawyer not registered with the Clerk of Court to receive by electronic mail from or to the court including court decisions and orders, Defendants' attorneys, Ms. Snyder and Ms. Klein Wheaton, are lawyers who are registered to receive such electronic mail service of court papers, and therefore received copies of this court's December 16, 2004 order by such electronic mail service prior to the scheduled December 17th deposition. Third Snyder Affidavit in Opposition (Doc. No. 64) ¶ 5. Accordingly, as Ms. Snyder explained, Plaintiff has no basis to accuse either defense counsel, or the court, of engaging in an improper *ex parte* communication with respect to the issuance or service, upon defense counsel, of the court's December 16, 2004 order prior to Mr. Baumgarten's receipt thereof and, because of Mr. Baumgarten's election not to register with the Clerk's Office by electronic mail service, by subsequent mail upon Plaintiff's attorneys.

16

Undaunted, on March 21, 2005, Plaintiff filed the Responding Affirmation of Richard L. Baumgarten, Esq., dated March 17, 2005 (Doc. No. 67) ("Baumgarten Responding Affirmation"), accusing defense counsel of professional misconduct based on Plaintiff's previous improper *ex parte* communications between Defendants' attorneys and the court.  Baumgarten Responding Affirmation ¶ 15.  Specifically, Plaintiff again asserted that the court improperly and "unfortunately," acted on Ms. Snyder's telephone call to Ms. Wilson, the court's judicial assistant, on or about September 29, 2004, in connection with Defendants' claim that, notwithstanding the court's direction of September 20, 2004, Plaintiff failed to produce Plaintiff's defense counsel's records as well as Mr. Baumgarten's refusal to discuss the matter with Defendants' counsel in their attempt to obtain Plaintiff's compliance with the court's order prior to Plaintiff's deposition.  Baumgarten Responding Affirmation ¶ 15; Second Snyder Affidavit in Opposition ¶ 11.

On March 2, 2005, Plaintiff moved, pursuant to Fed.R.Civ.P. 65(b), for a temporary restraining order prohibiting Defendants' attorneys from engaging in further *ex parte* communications with the court in violation of the Code of Professional Responsibility as applicable to attorneys practicing before this court. (Doc. No. 66).  By Report and Recommendation filed contemporaneously with this Decision and Order, it was recommended that Plaintiff's motion be dismissed as frivolous.

## DISCUSSION

28 U.S.C. § § 144 provides that a federal judge should recuse himself if, upon a "sufficient affidavit" there is a showing that the court holds "a personal bias or prejudice"

17

against the moving party or in favor of an adverse party.  Additionally, 28 U.S.C. §
455(a) requires that a judge shall disqualify himself where his "impartiality might
reasonably be questioned."  Section 455(b) also prescribes recusal when a judge has
"a personal bias or prejudice concerning a party, based on the applicability of any of the
considerations in subsection (b)(1) - (5)."[14]  Under these provisions recusal is typically
determined based only upon "extrajudicial conduct . . . not conduct which arises in a
judicial context."  *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d
Cir. 1987).  *See also Hall v. Dworkin*, 829 F.Supp. 1403, 1407-08 (N.D.N.Y. 1993).
While extrajudicial conduct is commonly the source of asserted judicial bias, it is not the
exclusive one.  *Liteky v. United States*, 510 U.S. 540, 551 (1994).  However, where the
request for recusal is based on conduct during judicial proceedings, such as the
expression of negative views by the court during judicial proceedings concerning a party
or the merits of his or her case, such conduct does not constitute grounds for recusal
unless the conduct is demonstrated to be so "extreme as to display clear inability to
render fair judgment."  *Liteky, supra,* at 551 (citing *Davis v. Board of School Comm'rs of
Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975) (discussing "pervasive bias"
exception to the "extrajudicial source" doctrine), *cert. denied*, 425 U.S. 944 (1976)).
Evidence arising from judicial proceedings sufficient to justify recusal therefore requires
a showing of "[p]artiality . . . [or] favoritism . . . [that] is, for some reason, wrongful or
inappropriate," that pervades the proceeding.  *Id.* at 552.

---

[14]  Plaintiff makes no claim that the undersigned is disqualified under any of the grounds listed in
§ 455(b)(2) - (5); Plaintiff relies only on § 455(b)(1) (disqualification based on court's "personal bias or
prejudice concerning a party . . ..").

On the other hand, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).  "In and of themselves [adverse judicial rulings] . . . cannot possibly show reliance upon an extrajudicial source . . .." *Id.*  Rather, such adverse rulings "are proper grounds for appeal, not for recusal." *Id.*  Additionally, the Supreme Court has stated that judicial remarks "critical or disapproving of or even hostile to counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555.  Further, "expressions of impatience, dissatisfaction, annoyance and even anger [with the parties or their attorneys]," during court proceedings are not evidence of a disqualifying partiality or bias, and a judge's "stern and short-tempered" ". . . efforts at courtroom administration . . . remain immune [from recusal]." *Id.* at 555-56 (bracketed material added).  Thus, unless such judicial conduct stems from an extrajudicial source or so pervasively "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible," recusal is not warranted. *Id.* at 555.

Further, "a motion to recuse is committed to the sound discretion of the . . . judge," against whom recusal is sought. *Hall, supra* (citing *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988), *reh'g denied*, 869 F.2d 116 (2d Cir.), *cert. denied sub. nom.*, *Milken v. SEC*, 490 U.S. 1102 (1989)).  In seeking recusal, the moving party carries a "'substantial burden' . . . to demonstrate the judge is not impartial." *Id.* (quoting *Shabazz v. Scully*, 1993 WL 8182 *1 (S.D.N.Y. Sept 1, 1993)); *see also United States v. Int'l Business Machines*, 475 F.Supp. 1372, 1379 (S.D.N.Y. 1979), *aff'd*, 618 F.2d 923 (2d Cir. 1980).  To satisfy his burden, the moving party "must proffer evidence to show that a 'reasonable person knowing and understanding all the

relevant facts would recuse the judge[s].'" *Id.* (quoting *In re Drexel Burham, supra*, at 1313).  In other words, recusal is not required unless "an objective, disinterested observer fully informed of the facts, [would] entertain significant doubt that justice would be done absent recusal."  *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992) (bracketed material added).  Expressions of bias "concerning the outcome of the case at issue," and where "a judge has a direct personal financial or fiduciary interest in the outcome of the case," warrant recusal.  *Id.*

Pursuant to 28 U.S.C. § 144, if the judge finds the affidavit in support of recusal "establishing legally sufficient claims of personal bias or prejudice, 'the judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.'" *Int'l Business Machines, supra*, at 1379 (quoting 28 U.S.C. § 144).  Where, however, the supporting affidavit is insufficient on its face, this forbearance requirement is not "triggered."  *Role v. Eureka Lodge No. 434*, 402 F.3d 314, 318 (2d Cir. 2005) (*per curiam*) (litigant affidavit seeking magistrate judge's disqualification predicated solely upon disagreement with judge's prior discovery rulings held insufficient under 28 U.S.C. § 144 and magistrate judge against whom recusal was sought not precluded from further action on the matter pending resolution of the § 144 motion).  A sufficient affidavit is also a prerequisite to a recusal motion pursuant to § 455(a).  *Id.*  As § 144 and § 455(a) both require that a disqualifying bias be extra-judicial in nature, the court's analysis is directed to the merits of Plaintiff's claims under both statutes.  *Int'l Business Machines, supra*, at 1389 ("past adverse rulings and a litigant's fear of future adverse rulings remain insufficient to oust a judge from a case); *Liteky, supra*, at 552 ( § § 144 and 455(b)(1) "apply <u>whenever</u> bias or prejudice exists.").

20

In this case, Plaintiff claims that the court's handling of the May 26, 2004 Rule

16(b) hearing, its conduct of the September 20, 2004 oral argument and disposition of

Defendants' motion to compel on that date, two telephone calls and two letters between

defense counsel and the undersigned's chambers Plaintiff claims were improper *ex

parte* communications in violation of the Code of Judicial Ethics for United States

Judges by the court and the Code of Professional Responsibility by Defendants'

attorneys, the court's November 18, 2004 denial of Plaintiff's motion to amend the

Scheduling Order (Doc. No. 45), and its December 16, 2004 decision, in response to

the J.C. Penney Defendants' December 3, 2004 letter requesting clarification of the

court's November 18, 2004 order, demonstrate the court acted with a degree of bias

and prejudice against Plaintiff, her counsel, Richard L. Baumgarten, Esq., and the

Plaintiff's case, sufficient to justify the undersigned's recusal.  Baumgarten Affirmation

in Support ¶ ¶ 6, 7, 17, 21.  However, a careful review of the record of proceedings in

this case, under applicable law, shows Plaintiff's motion, as supported by Mr.

Baumgarten's several affirmations, does not satisfy the requirements of § 144, and is

otherwise wholly without merit under either  §144 or  §445(a).[15]

---

[15]  Section 144 limits the applicant to one supporting affidavit and requires a certification by
counsel of record that the recusal request is "made in good faith."  28 U.S.C. § 144.  Here, Plaintiff has
filed five attorney affirmations in support of her motion; however, no attorney's certification of good faith as
required by § 144 has ever been filed by either Mr. Baumgarten or Mr. Sloan.  The need for such a
certification is particularly important in the instant case as, prior to the filing of the instant motion, the court
conducted three pretrial conferences with the parties and entered a Rule 16(b) scheduling order, granted
Defendants' motion to compel, and granted Defendants' request for costs against Mr. Baumgarten, yet
Plaintiff made no attempt to seek review of such orders before Chief District Judge Arcara, the assigned
district judge, as permitted by Fed.R.Civ.P. 72(a).  How Plaintiff's acquiescence in three orders, including
the May 27, 2004 Scheduling Order, and the court's adverse decisions on Defendants' motions to compel
and for costs, entered prior to the filing of Plaintiff's motion, resulting, according to Plaintiff's motion, from
bias and prejudice against Plaintiff and her counsel is consistent with the existence of any good faith basis
for Plaintiff's motion is not explained by Plaintiff.  Indeed, according to Mr. Baumgarten, the motion was
brought by Mr. Baumgarten "upon my client's [Plaintiff's] specific directive," with her "total" concurrence.
Baumgarten Affirmation in Support ¶ 3.  That Plaintiff is attempting to gain, improperly, relief from the

First, on their face, nothing in Plaintiff's papers in support of recusal points to any extrajudicial sources for the alleged bias and prejudice, and Plaintiff has otherwise failed to allege any.  Rather, each of the proceedings and judicial actions relied on by Plaintiff as evidence supporting recusal, *i.e.*, the May 26, 2004 Rule 16(b) conference and the May 27, 2004 Scheduling Order, the September 20, 2004 oral argument on Defendants' motions to compel and the court's grant of Defendants' motions and the grant of Rule 37 costs against Mr. Baumgarten, were upon notice to Plaintiff, made on the record with a full opportunity to be heard, and after which no objections were filed by Plaintiff as permitted by Fed.R.Civ.P. 72(a).  In fact, even after Plaintiff's recusal motion was filed, the court's decisions of November 18 and December 15, 2004, were not appealed by Plaintiff to the district judge on any ground, including a possible violation of the forbearance requirement of § 144.  *Compare Role, supra*, at 317 (plaintiff appealed magistrate judge's failure of court to forbear pursuant to § 144).  As the record shows, each judicial proceeding involving Plaintiff was docketed, notices were served, on-the-record hearings or arguments were conducted following issuance

court's prior rulings is fairly revealed by Plaintiff's request that in addition to appointment of a another magistrate judge, "that all prior orders [of the undersigned] be rescinded and vacated."  Baumgarten Affirmation in Support at 20.  It is settled law that a motion for recusal cannot effectuate avoidance of the court's prior rulings.  *United States v. International Business Machines Corp.,* 475 F.Supp. 1372, 1380 (S.D.N.Y. 1979) ("It is not appropriate in response to an affidavit of bias or prejudice for this court to reexamine the merits of any or all questions previously decided, for such rulings are subject to correction on appeal." (citing *In re Federal Facilities Realty Trust*, 140 F.Supp. 522, 525 (N.D. Ill. 1956)), *aff'd*  618 F.2d 923 (2d Cir. 1980); *Freed v. Inland Empire Inc. Co.,* 174 F.Supp. 458, 464 (D.Utah 1959) ("A judge's rulings derived from judicial determination of facts in each case, together with his reasons in support of rulings, are subject to attack only on appeal and not upon filing of motion to disqualify.") (citing *In re Federal Facilities Realty Trust,* 140 F.Supp. 522, 525 (N.D.Ill. 1956)).  Thus, the absence of the "good faith certification" required by § 144 renders Plaintiff's motion under § 144 legally insufficient on its face.  *See Role, supra* (failure to comply with § 144 prerequisite renders affidavit in support of recusal motion insufficient as a matter of law).  Such deficiency applies as well to Plaintiff's motion under § 455.  *See Apple v. Jewish Hospital and Med. Ctr., supra*, at 333 ( § 144 and § 455(b)(1) to be construed *in pari materia*); *United States v. Pugliese*, 805 F.2d 1117, 1125 (2d Cir. 1986) (same); *Int'l Business Machines, supra*, at 1389 (same) (citing *United States v. Wolfson*, 558 F.2d 59, 62 (2d Cir. 1977)).

of typical scheduling orders, followed by written decisions and orders served on the

parties, or oral orders docketed on the record as minute entries in connection with the

September 20, 2004 oral argument of Defendants' motions to compel.  In fact, prior to

the initial Rule 16(b) hearing on February 11, 2004, the court does not recall ever

meeting Mr. Baumgarten officially or otherwise, or of even hearing of him.

Additionally, Plaintiff's complaints of *ex parte* communications between

Defendants' attorneys and the court, vigorously condemned by Plaintiff, are not

extrajudicial in nature, and do not establish a prohibited source of impermissible bias or

prejudice against Plaintiff, her case or her attorneys, contrary to Plaintiff's assertions.

Nor in the circumstances in which the accused communications occurred, do the

communications indicate an objective reason to believe the communications could

reasonably have created such bias or prejudice by the court against Plaintiff or her

attorney.  For example, the second Rule 16(b) scheduling conference in this case was

conducted on May 26, 2004 following a delay in the proceedings of more than three

months from the date of the initial Rule 16(b) hearing on February 11, 2004 (Doc. No.

7) (the conduct of which Plaintiff raises no complaint), a delay solely the result of Mr.

Baumgarten's failure to comply with the court's local rule for attorney reinstatement.[16]

Moreover, although Mr. Baumgarten appeared after the hearing was concluded, Mr.

Baumgarten presumes the court should have been aware that, prior to commencement

---

[16] According to this court's chamber file on the instant case, in an "*ex parte*" telephone message to the court, received on February 13, 2004 and as summarized in a handwritten message note taken and placed in the file by the court's judicial assistant, Mr. Baumgarten stated that he did not know he had been suspended in this court when he appeared at the February 11, 2004 Rule 16(b) conference, and expressed his "deep apologies" to the court for the oversight.  Mr. Baumgarten's second *ex parte* phone call to the court occurred in connection with his belated arrival for the May 26th Rule 16(b) conference.

of the hearing, he had left a telephone message advising of his inability to timely appear, Baumgarten Affirmation in Support ¶ ¶ 8-9, that assumption was incorrect.

As evident from the record, and known to counsel who regularly litigate civil matters in this court, the judicial assistant to the undersigned calls the court's civil calendar, and, because of her required presence in the courtroom during the calendared proceedings on May 20, 2004, she was therefore not aware of Mr. Baumgarten's telephone message until returning to her desk from the courtroom at approximately 10:45 a.m. after the conclusion of the scheduled Rule 16(b) conference and noting Mr. Baumgarten's belated appearance on the record, and upon checking the court's answering machine for messages.[17]  However, the undersigned first learned that Mr. Baumgarten's failure to timely appear for the May 26, 2004 Rule 16(b) resulted from his asserted illness when Mr. Baumgarten responded to the court's question, during September 20, 2004 oral argument on Defendants' motion to compel.  Plaintiff's Exhibit A at 8.  Mr. Baumgarten's assertion, Baumgarten Affirmation in Support ¶ 11, that the judicial assistant informed him the court would not change the Scheduling Order, is incorrect and, in any event, irrelevant, as a simple motion, with an explanation of his reason for being late, could have prompted the court to reconsider its decision on the Scheduling Order.  However, no such request was made until Plaintiff filed her September 30, 2004 motion formally seeking an amendment of the Scheduling Order. Thus, Plaintiff's claim of bias arising from the conduct of the Rule 16(b) conference is

---

[17]  Mr. Baumgarten's late arrival, and the time of such arrival, was noted in the minutes.  *See* Minute Entry for Rule 16(b) proceedings of May 26, 2004.  The court's system does not forward unanswered calls to the court deputy or the court's law clerk.

based on a fact unknown to the court at the time of the conference, and about which the court learned four months later.

Significantly, at no time between May 26, 2004 and September 30, 2004 did Plaintiff bring the matter of Mr. Baumgarten's inability to comply with the Scheduling Order to the court's attention by motion to reconsider the Scheduling Order or make any written request that the court reopen the Rule 16(b) hearing for the case, nor did Plaintiff appeal the Scheduling Order, or the court's denial of Plaintiff's motion to amend, to the District Judge based on the undersigned's abuse of discretion, as an indicia of the court's bias Plaintiff now asserts as a ground for recusal.  Baumgarten Affirmation in Support ¶ 14 at 10.[18]  Moreover, even after commencing discovery under the Scheduling Order, Plaintiff made no application to the court to modify the Scheduling Order until Plaintiff filed her motion seeking such relief on September 30, 2004, the close of discovery date established by the Scheduling Order.  As noted, Plaintiff did not move for recusal promptly following entry of the Scheduling Order, which constitutes a further ground for finding Mr. Baumgarten's affirmation in support of Plaintiff's motion to be legally insufficient under 28 U.S.C. § 144 (requiring filing of a

---

[18] Interestingly, at the February 11, 2004 Rule 16(b) conference, the court, after seeking the advice of the attorneys for the parties, including Mr. Baumgarten, settled upon a scheduling order for the case and, but for receiving the next day Chief Judge Arcara's Order about Mr. Baumgarten's lack of admission, the February 11, 2004 scheduling order, as initially adopted by the court, would have been filed.  According to the judicial assistant's notes of the proceeding, the court and the parties agreed on a schedule for the litigation of the case calling for five months of fact discovery and a dispositive motion cut-off date of November 30, 2004, for a total period of nine months of pretrial preparation.  Such period contrasts to seven months to reach dispositive motions including four months for fact discovery and two additional months for expert disclosures as called for by the May 27, 2004 Scheduling Order.  Neither the court's conduct of the February 11, 2004 Rule 16(b) conference nor the further February 25, 2004 pretrial conference (Doc. No. 16) with the parties to consider the effect of Chief Judge Arcara's Order on the schedule for the case adopted at the February 11th conference were cited by Plaintiff as manifesting any bias against her, her case, or her attorney.  Plaintiff offers no plausible reason as to why the court became biased against Plaintiff or Mr. Baumgarten following the February 11th Rule 16(b) conference.

"timely" and sufficient affidavit) (underlining added) as to this basis for the motion.

During oral argument on Defendants' motion to compel, held September 20, 2004, Mr. Baumgarten acknowledged he had read the Scheduling Order following the May 26th Rule 16(b) hearing and, despite his "overwhelming case schedule," Plaintiff's Exhibit A at 49, that Plaintiff had ample opportunity, prior to September 20, 2004, to seek relief from the Scheduling Order, but that, as of the date of the oral argument, had taken no steps to do so. *Id.* at 47. Thus, that Plaintiff discerned no basis for recusal until after the court denied Plaintiff's motion to modify the Scheduling Order and granted Defendants' motion to compel and request for costs, over four months after entry of the Scheduling Order, drains Plaintiff's assertion, that the court manifested bias against Plaintiff and Mr. Baumgarten during the May 26, 2004 Rule 16(b) conference caused by Plaintiff's counsel's failure to attend the conference because of tardiness, of validity. *See* Baumgarten Affirmation in Support ¶ 14. Plaintiff's assertion that her recusal motion is a good faith reaction to judicial bias rather than the complaint of a disgruntled litigant therefore "blinks reality."

Plaintiff also accuses the undersigned of religious prejudice against Mr. Baumgarten based on the court's refusal to extend the date for Plaintiff's deposition beyond September 30, 2004 which, according to Mr. Baumgarten, was a Jewish holiday. Baumgarten Affirmation in Support ¶ ¶ 15 at 13; 17; Plaintiff's Exhibit A at 41. First, such refusal and the court's suggestion that Mr. Baumgarten supply other counsel if he was personally unable to defend Plaintiff's scheduled deposition does not reveal bias against Plaintiff based on Mr. Baumgarten's religion, Plaintiff's lawsuit, or, for that matter, Mr. Baumgarten personally. Significantly, when, at the outset of the September

20, 2004 proceedings Mr. Dewey Sloan was granted, at Baumgarten's request, *pro hac vice* admission as Plaintiff's lead counsel prior to the oral argument of Defendants' motion, Mr. Baumgarten represented that Mr. Sloan was being brought into the case at that time because Mr. Baumgarten's alleged "overwhelming caseload" prevented him from effectively prosecuting Plaintiff's action, Plaintiff's Exhibit A at 4, and that, accordingly, Mr. Sloan would "conduct <u>all depositions</u>, conduct the trial, if necessary, negotiation. [*sic*] <u>I</u> [Baumgarten] <u>would serve pretty much as an intermediary</u>, and . . . assist in research." *Id.* at 3-4 (bracketed material and underlining added).[19]

Based on Mr. Baumgarten's own representation that Mr. Sloan was being admitted *pro hac vice* as Plaintiff's new lead counsel specifically to assume the major litigation phases of the case, specifically including the conduct of depositions, the court's refusal to reschedule Plaintiff's deposition to enable Mr. Baumgarten, then acting as an "intermediary" attorney and serving solely as local counsel, to also defend Plaintiff's deposition that was expected to be conducted by Mr. Sloan, constituted an objectively unbiased decision.[20]  As such, Plaintiff's assertion that the court's refusal to

---

[19]  According to the records of the Clerk of Court, Mr. Sloan's check for the required fee of $35 was received by the court on October 8, 2004, and held in escrow pending the court's action on his motion for admission *pro hac vice*.  Thus, as a result of the court's granting of Mr. Sloan's *pro hac vice* motion, Mr. Sloan has, since the motion was granted at the September 20, 2004 proceeding, served as lead counsel for Plaintiff in this matter, yet, without indication of Mr. Sloan's approval, the instant motion was filed by Mr. Baumgarten who represented to the court less than thirty days earlier that he would act only as local counsel in an "intermediary" role.  Mr. Sloan's check has since been deposited.

[20]  The court notes that Plaintiff's complaint, originally filed in New York Supreme Court was signed by Glenn E. Murray, Esq., who also served as Plaintiff's defense attorney in the shoplifting case filed against by Defendants in Town Court.  Mr. Baumgarten is listed as "of counsel" to Mr. Murray, who has not otherwise appeared in the action following its removal to this court.  Interestingly, as recently as February 23, 2005, in filing his Affirmation in Response to Defendants' Affidavit in Opposition to Plaintiff's Motion to Recuse, dated February 22, 2005 (Doc. No. 63), Mr. Baumgarten describes his role in the case as Plaintiff's "co-counsel."  Baumgarten's Affirmation in Response to Defendants' Affidavits ¶ 1.

reschedule Plaintiff's deposition beyond the discovery cut-off date and its request that

Mr. Baumgarten "supply counsel" were manifestations of religious bias against Mr.

Baumgarten or his religion by the court is as groundless as it is offensive.  Any

subjective reason for the court's refusal to reschedule Plaintiff's deposition as an

accommodation to Mr. Baumgarten was more likely a reflection of the court's frustration

with Mr. Baumgarten's unexcused failure to prosecute Plaintiff's case within the time

limits established by the Scheduling Order and his unusual request that new lead

counsel enter the case so late in the proceedings.  *See Liteky*, 510 U.S. at 551

(expression of judicial "impatience" with counsel no ground for recusal).

Plaintiff also accuses the court of demonstrating bias based on its use, during

the May 26, 2004 Rule 16(b) hearing, of the third person pronoun "we" as revealing,

according to Plaintiff, an improper "alignment" between the court and Defendants.

Baumgarten Affirmation in Support ¶ ¶ 13-14.  However, a fair reading of the relevant

portion of the hearing transcript shows the court's use of the pronoun refers to the court

and the parties.  *See* Plaintiff's Exhibit B at 5, 6.  Taken as a whole, the record reflects

the court's overriding objective at the conference was to have the pretrial phases of

Plaintiff's case concluded by the end of the calendar year.  *Id.* at 5 (noting that the case

appeared to the court to as one "that ought to be resolved quickly.")[21]  Moreover, given

that Plaintiff had specifically alleged mental and physical "distress" damages, Complaint

(Doc. No. 1) Exhibit A to Defendants' Removal Petition ¶ 33, the need for expert

---

[21]  As discussed, Discussion, *supra*, at 25 n. 18, a similar schedule would also have been
adopted if the initial scheduling order, considered and adopted at the February 11, 2004 Rule 16(b)
conference, had been filed, but for Mr. Baumgarten's lack of timely readmission to practice before the
court.

disclosures was a likelihood requiring detailed scheduling, pursuant to Fed.R.Civ.P. 26(a)(2)(C), within that time frame.  Plaintiff's Exhibit B at 9-10.  Second, the court's use of the "we" pronoun was not exclusive during the proceeding.  *Id. (passim).*  Finally, the court's expression, during the hearing, of dissatisfaction with Mr. Baumgarten's failure to appear at the May 26, 2004 proceeding was, as discussed, Discussion, *supra*, at 23-25, without prior knowledge that Baumgarten may have had a health excuse for being tardy.  Unfortunately, such fact was not brought to the court's attention at that time, nor at any other time thereafter by Plaintiff until the September 20, 2004 oral argument.  Thus, Plaintiff's perception that the court's use of the pronoun "we" in conducting any proceeding in this case evidenced improper "alignment" with Defendants is baseless.[22]

Finally, Plaintiff argues the court's award of costs against Plaintiff for failing to timely provide Defendants' requested discovery, particularly Plaintiff's attorneys' notes regarding specifics of the Town Court's disposition of Plaintiff's shoplifting charge, also demonstrates the court's improper bias against Plaintiff and her attorney.  Baumgarten Affirmation in Support ¶ ¶ 21-23.  As no record of the Town Court proceeding involving disposition of Plaintiff's case was made, Defendants sought such notes in an attempt to reconstruct the nature of the court's actual disposition of the case.  Plaintiff's Exhibit A at 18.  Several reasons justify the conclusion that Plaintiff's recusal request on this ground is without merit.

First, it is undisputed that Plaintiff failed to file timely objections to Defendants' discovery requests, and Plaintiff's requested documents and interrogatory answers

---

[22]  Plaintiff has, apparently, not reviewed or submitted a copy of a transcript of the February 11, 2004 Rule 16(b) conference during which it may be fairly assumed the court made similar use of the "we" pronoun without objection by Plaintiff.

were not served by Plaintiff until well after Defendants' motions to compel were filed.[23]

Plaintiff's Exhibit A at 13; Affidavit of Kristin Klein Wheaton, Assistant Erie County

Attorney, in Support of Defendant Piel's Motion to Compel, dated "January [*sic*] 23,

2004" (Doc. No. 15) ¶ 5; Affidavit of Michele K. Snyder, Esq., in Support of J.C. Penney

Defendants' Motion to Compel, dated August 26, 2004 (Doc. No. 17) ¶ ¶ 5-7.  Under

Rule 37, sanctions, including costs, *i.e.*, attorney's fees, to the prevailing party are to be

awarded unless the court finds the requested party's failure to provide the requested

discovery was "substantially justified," or that an award would be unjust.  Fed.R.Civ.P.

37(d).  Here, while Defendants' motion requested further relief, without specific

reference to Rule 37(a)(4), the court inquired whether Defendants sought costs as

provided in Rule 37(a)(4) to fully consider the scope of Defendants' request;

Defendants advised that such costs were sought.  Plaintiff's Exhibit A at 42.  Based on

the record, the court found that the need for Defendants' motion resulted from Plaintiff's

failure to respond timely to Defendants' discovery request without any justification

sufficient to avoid the award of the sanctions authorized by Rule 37(a)(4).  *Id.* at 23.[21]

---

[23]  Plaintiff was served with J.C. Penney Defendants' discovery requests on June 1, 2004.
Affidavit of Michele K. Snyder, Esq. in support of J.C. Penney Defendants' Motion to Compel, dated
August 26, 2004 (Doc. No. 18) ("Snyder Affidavit") ¶ 5.  Plaintiff was served with Defendant Piel's
discovery requests on June 25, 2004.  Affidavit of Kristin Klein Wheaton, Assistant Erie County Attorney in
Support of Defendant Piel's Motion to Compel, dated January 23, 2004 [*sic*] (Doc. No. 15) ("Klein
Wheaton Affidavit") ¶ 5.  On July 9, 2004, seven days after Plaintiff's responses should have been served,
pursuant to Fed.R.Civ.P. 33(b) and 34(b), J.C. Penney Defendants wrote to Mr. Baumgarten to inquire
about the status of Plaintiff's overdue responses.  Snyder Affidavit ¶ 6.  On July 16, 2004, Mr. Baumgarten
advised Ms. Snyder and, by copy thereof, Ms. Klein Wheaton, that Plaintiff's responses could be expected
by July 31, 2004.  *Id.* ¶ 6, Exhibit C.  Plaintiff's responses were not served by July 31, 2004 as Mr.
Baumgarten had promised and on August 9, 2004, Mr. Baumgarten telephoned both Ms. Snyder and Ms.
Klein Wheaton to advise them that Plaintiff's responses would be served by August 13, 2004.  Snyder
Affidavit ¶ 7; Klein Wheaton Affidavit ¶ 7.  However, Defendants did not receive Plaintiff's responses until
after Defendants' motions to compel were filed on August 23, 2004.

[21]  Nor did Plaintiff at any time seek a protective order pursuant to Rule 26(c).

When asked about Plaintiff's failure to provide the requested discovery in accordance with Rule 34 and his representations to defense counsel as to when Plaintiff's responses would be forthcoming, Baumgarten stated his failure to timely serve Plaintiff's responses was because he was "overwhelmed" by his "case schedule." *Id.* at 48-49.  However, as noted, Mr. Baumgarten, despite his busy professional schedule, causing new lead counsel, Mr. Sloan, to be recruited to Plaintiff's cause, failed to request reasonable extensions from Defendants or to seek any timely judicial relief from the Scheduling Order. *Id.* at 50.  Notwithstanding his claim of having extensive calendar commitments during the discovery response period, Mr. Baumgarten also admitted that he "agreed" with the court's assessment that his failure to provide timely discovery responses to Defendants was not substantially justified.[22] *Id.*

Other than demonstrating some irritation by the court with what it perceived to be Mr. Baumgarten's repeated efforts during oral argument to sidestep the remaining issue, *i.e.*, production of Mr. Murray's file, presented on Defendants' motions, the record reveals nothing to support that the court acted with any bias or prejudice against Plaintiff or Mr. Baumgarten making it incapable of a fair consideration of Defendants' motion, including the court's rejection of Plaintiff's unfounded attempts to justify Plaintiff's late responses and waiver of objections.  How enforcement by the court of its properly issued scheduling orders and entry of discovery related decisions pursuant to the Federal Rules of Civil Procedure in the face of a party's repeated and unsupported noncompliance with valid discovery requests demonstrates judicial bias or prejudice

---

[22]  Despite his "overwhelming" work schedule, Mr. Baumgarten did not fail to request a transcript of the May 26, 2004 Rule 16(b) conference which was filed on September 27, 2004 (Doc. No. 27).

requiring recusal is not plausibly explained by Plaintiff.  *See Liteky,* 510 U.S. at 552

(judicial rulings rarely warrant recusal because, in themselves, such rulings reveal no

extrajudicial source of bias).  Nor does Plaintiff point to other actions or statements by

the court in connection with Plaintiff's case manifesting "pervasive bias," against

Plaintiff, *Liteky, supra,* at 545, or extrajudicial sources of improper partiality toward

Defendants or prejudice against Plaintiff.  Accordingly, the court's award of costs

against Mr. Baumgarten provides no ground for recusal.

Plaintiff further asserts that the court's interruption of Mr. Baumgarten 16 times

during the September 20, 2004 oral argument of Defendants' motion to compel

demonstrates bias against Plaintiff and Mr. Baumgarten.  Baumgarten Affirmation in

Support ¶ 6.  However, a reading of the entire transcript of the oral argument reveals

that prior to its consideration of the merits of Defendants' motions, the court granted

Plaintiff's unusually late request to admit Mr. Dewey Sloan, a lawyer with offices in

Iowa, as new lead counsel of record, *pro hac vice*, to proceed with the case.  Plaintiff's

Exhibit B at 3-4.  According to Mr. Baumgarten, the request was necessary because Mr.

Baumgarten's asserted heavy caseload made it impossible for Baumgarten to

adequately represent Plaintiff at that point forward in the litigation, and that Mr.

Baumgarten would serve only in an "intermediary role" as local counsel.  *Id.*  The

transcript of the proceeding fairly demonstrates that some of the court's "interruptions"

occurred while the court attempted to clarify with Mr. Baumgarten that if Mr. Sloan's

appearance in the case was approved, Mr. Sloan should not expect the court to modify

the Scheduling Order to accommodate his late entry into the case.  *Id.* at 6.  The court

therefore specifically questioned Mr. Baumgarten to assure itself that Mr. Sloan was

aware of the Scheduling Order and was prepared to comply with it notwithstanding his late appearance as counsel and, in the course of such questioning, found it necessary to interrupt Mr. Baumgarten to obtain the assurances it required.  *See* Plaintiff's Exhibit A at 6-7.

The transcript also reveals that the balance of the hearing and oral argument consisted of the usual 'give-and-take' between counsel and the court on the merits of Defendants' motions and Plaintiff's opposition, and the court's directions to the parties regarding completion of discovery in compliance with the Scheduling Order, including the taking of Plaintiff's deposition, one of the main issues raised by Defendants' motions.  Thus, Plaintiff's contention that the court's interruptions of Mr. Baumgarten's presentation constitutes evidence of improper bias toward Plaintiff or Mr. Baumgarten is unpersuasive.  *See Int'l Business Machines, supra*, at 1381 ("court's 1200 interruptions of defendant's 19 trial witnesses' testimony held insufficient, *inter alia*, to require recusal).

In Plaintiff's Second Supplemental Affirmation, filed nearly two months after Plaintiff's recusal motion and outside the court's motion schedule, Plaintiff raised an entirely new ground for recusal in violation of § 144's one affidavit limitation.[23] Specifically, Plaintiff argues that J.C. Penney Defendants' attorney, Ms. Snyder's, telephone call to the court on September 29, 2004, relating to the ongoing dispute between the parties concerning Plaintiff's failure to produce the Glenn Murray file, constituted improper *ex parte* communication detracting from the court's impartiality.

---

[23]  Although, as noted, the Second Supplemental Affirmation violates § 144's restriction on multiple affidavits, in the interest of judicial completeness the court addresses its merits.

Second Baumgarten Supplemental Affirmation ¶ 7(c), Exhibit at 10; Baumgarten

Affirmation in Response to Defendants' Affidavits ¶ 11.  However, Plaintiff does not

deny that the phone call at issue was placed by Ms. Snyder, to the court's judicial

assistant, Ms. Wilson, not the undersigned.  *Id.,* fn. 2.  Nevertheless, according to

Plaintiff, such a communication to a judge's "secretary," even solely for the purpose of

ascertaining the court's availability to consider potential on-going discovery disputes is

imputed to the court by its condoning of such communications, thus establishing an

improper *ex parte* communication has occurred as a further ground for recusal.  *Id.*

In support of this novel contention, Plaintiff relies on a New York state case,

*Goldstein v. Bartlett*, 401 N.Y.S.2d 706 (Sup.Ct. Albany Co. 1978) for the proposition

that *ex parte* communications with a judge's secretary also constitutes a prohibited

contact with the judicial officer.  However, the facts in *Goldstein, supra*, are quite

inapposite involving whether state judicial regulations governing confidential law

secretaries (as New York Supreme Court law clerks were then known) prohibited

handling of *ex parte* judicial applications by such law secretaries while engaged in

private law practice.  *Goldstein, supra*, at 708-09.  Of course, as most practitioners in

this court know, despite her many capabilities, Ms. Wilson is neither a law clerk, nor a

law secretary, to the undersigned.  Rather, Ms. Wilson is the undersigned's personal

secretary authorized by the Administrative Office of the U.S. Courts to use the title of

judicial assistant, rather than secretary, to the undersigned.  Any suggestion therefore

that a phone call to Ms. Wilson by Defendants' counsel to check on the magistrate

judge's availability to resolve a potential discovery dispute in this case, constitutes an

improper *ex parte* communication dealing with the merits or procedures for the case, thereby imputing bias, is simply frivolous.

Plaintiff's other argument in support of recusal, that Ms. Klein Wheaton's letter of September 29, 2004 and Ms. Snyder's letter of December 3, 2004 to the court, Second Baumgarten Supplemental Affirmation, Exhibits A and B, respectively, represent two other instances of improper *ex parte* communications, is punctured by the undisputed fact that Mr. Baumgarten received copies of the letters in question and, in an effort to expedite judicial consideration of Ms. Snyder's December 3, 2004 letter, he was requested by Ms. Wilson's telephone call to promptly respond. Second Baumgarten Supplemental Affirmation ¶ 13. Significantly, the court took no action in response to Ms. Klein Wheaton's September 29, 2004 letter, and Plaintiff does not contend otherwise. Notwithstanding Mr. Baumgarten was copied on both letters, Plaintiff argues that because Defendants' failed to request Plaintiff's permission prior to sending the letters, *id.* ¶ 8, the letters constituted improper *ex parte* communications. Second Baumgarten Supplement Affirmation ¶ 8. As noted, the Klein Wheaton letter advised the court of Plaintiff's failure to produce Mr. Murray's file and requested further judicial intervention to resolve the issue. However, also as noted, *supra*, no such action was taken by the court.

Additionally, as explained in Ms. Snyder's letter, Defendants sought clarification of the court's November 18, 2004 order that directed depositions conclude December 17, 2004 (Doc. No. 51 at 2). Because Plaintiff had demanded that Defendants Goodwin and Meerboth appear at Defendant Piel's rescheduled December 17, 2004 deposition, thereby allowing Plaintiff to depose Goodwin and Meerboth, a result

35

inconsistent with the court's prior denial of Plaintiff's motion to amend the Scheduling

Order to enlarge the time for fact discovery, including depositions of Goodwin and

Meerboth, Defendants requested the court clarify whether the rescheduled Piel

deposition date should be limited to Defendant Piel or should include Goodwin and

Meerboth as demanded by Plaintiff. *Id.*  In retrospect, Defendants should have

proceeded by motion, however, to expedite resolution the court elected to treat Ms.

Snyder's letter as a motion and, rather than to incur further delay by issuing a

scheduling order directing a response to Defendants' letter, Ms. Wilson's telephone call

to Mr. Baumgarten's office invited a response by Plaintiff.  It is therefore difficult to

understand how the court's handling of Ms. Snyder's request, mailed 14 days prior to

the December 17th deposition date, in reaction to Plaintiff's demand that Goodwin and

Meerboth also be deposed, supports any inference of judicial bias against Plaintiff

based on an improper *ex parte* communication.  *See Ocasio v. Fashion Institute of*

*Technology*, 86 F.Supp.2d 371, 375 (S.D.N.Y. 2000) (letters to court of which all

counsel are sent copies do not constitute improper *ex parte* communications supporting

motions to recuse), *aff'd*, 9 Fed.Appx. 66 (2d Cir. 2001).

Plaintiff also contends that receipt of the court's December 16, 2004 decision by

Defendants' attorneys, prior to the December 17, 2004 Piel deposition, demonstrates

the court had engaged in another improper *ex parte* communication further manifesting

undue partiality toward Defendants provide an additional ground for recusal.

Baumgarten Affirmation in Response to Defendants' Affidavits (Doc. No. 63) ¶ ¶ 12-13.

Specifically, Plaintiff argues that as Mr. Baumgarten had not received his copy of the

court's December 16, 2004 Decision and Order as of 9:30 a.m. December 17, 2004,

the scheduled time for commencing the Piel deposition, and "because . . . the Order . . .

could not have been received <u>by mail</u> [prior to the deposition's start time]" . . . [Mr.

Baumgarten's] "logical conclusion" was that an improper *ex parte* communication

between Ms. Snyder and the court had taken place. *Id.* (bracketed material and

underlining added).

Plaintiff's theory of wrong doing lacks even a scintilla of substance. As Ms.

Snyder avers, Mr. Baumgarten did not receive a copy of the court's order prior to 9:30

a.m., December 17th, as did Defendants' attorneys, because neither Mr. Baumgarten

nor Dewey Sloan, Plaintiff's new lead counsel, were "registered with the . . . Clerk's

Office to receive [the court's] filings via electronic mailing," and the December 16, 2004

order at issue was electronically filed by the court. Third Snyder Affidavit in Opposition

(Doc. No. 64) ¶ 5. Although Ms. Snyder also averred, *id.* ¶ 5, that a copy of the order

was electronically mailed to Baumgarten at 2:30 p.m., on  December 16, 2004, the

court takes judicial notice that, according to the records of the Clerk of Court,

Baumgarten (and, presumably, Mr. Sloan as *pro hac vice* counsel) has declined to

register with the court to receive electronically filed papers, an option strongly

recommended by the court since implementation of the court's electronic filing program

commenced on October 4, 2003. Thus, as of December 17, 2004, through no fault of

Defendants or the court, neither Mr. Baumgarten nor Mr. Sloan could have received a

copy of the court's order by electronic mail from the court. Moreover, while, according

to the Clerk's records, Mr. Baumgarten has received training in the court's electronic

filing procedures, utilizing computer disks, he has not yet availed himself of the option

of using the new system to receive court filings, including court decisions and orders,

such as the court's December 16, 2004 Order at issue.[24]  The court therefore finds,

upon the undisputed facts presented, that no objective person could believe Plaintiff's

assertion that an improper *ex parte* communication between defense counsel and the

court, based on Defendants' "early" receipt of the court's December 16, 2004 order,

demonstrates that the court harbors partiality toward Defendants or prejudice against

Plaintiff.

　　　In sum, Plaintiff's motion represents a transparent attempt by Plaintiff and Mr.

Baumgarten to deflect responsibility for any potential adverse consequences to her

case resulting from Mr. Baumgarten's failure to obtain a Rule 16(b) schedule for the

case more accommodating to his professional calendar, Mr. Baumgarten's failure to

conduct and conclude discovery in accordance with the Scheduling Order, Plaintiff's

unsuccessful opposition to Defendants' motions to compel, and Mr. Baumgarten's

failure to obtain an 'eleventh-hour' modification of the Scheduling Order.  If Plaintiff

genuinely believed she had been the subject of erroneous prior rulings or abuse of

judicial discretion resulting, as Plaintiff's motion posits, from improper bias, the record is

silent as to why Plaintiff did not promptly seek review pursuant to Rule 72(a) rather than

the undersigned's recusal. To date, including entry of the Rule 16(b) Scheduling Order

on May 27, 2004, the court has acted adversely to Plaintiff's position in this litigation five

times, yet Plaintiff has never appealed any of those decisions, three of which, according

to Plaintiff, reflect improper bias against Plaintiff and her attorney or partiality toward

---

[24]  The court notes that in her opposing affidavit, Third Snyder Affidavit in Opposition ¶ 5, Ms. Snyder appears to have mistakenly read the court's hard copy of the December 16, 2004 Order's electronic filing notice issued by the Clerk of Court to indicate an e-mail copy of the order was also sent to Mr. Baumgarten at 2:30 p.m. on December 16, 2004; however, the hard paper copy notice only reflects e-mailing to Ms. Snyder and that "[n]otice [to Baumgarten and Dewey Sloan] will be delivered by other means," *i.e.*, first class mail.  *See* Doc. No. 52.

Defendants.[25]

By failing to object to the court's rulings entered prior to the recusal motion,

Plaintiff has placed herself in the unenviable position of effectively conceding that such

decisions were correct, while now maintaining they were nevertheless the product of

undue bias or prejudice.[26]   A reasonable observer, including the court, may be excused

for failing to perceive any plausible way to reconcile this patently self-defeating

inconsistency.  Presumably had the court decided in Plaintiff's favor on these issues, no

recusal motion would have been filed.  An objective review of the history of this action

will also conclude that had Plaintiff's attorneys prosecuted her case with the same

assiduity they have devoted to the instant motion, neither the motion, nor Plaintiff's

related judicial misconduct complaints, would have been filed.

Significantly, Plaintiff fails to point to any ruling, statement or other actions by this

court constituting adverse comments on Plaintiff, Mr. Baumgarten, or the merits of

Plaintiff's case.[27]   Nor is there any evidence in the record, particularly the transcripts of

the May 26, 2004 Rule 16(b) hearing and the September 20, 2004 oral argument, within

Plaintiff's five affirmations supporting the instant motion, or outside the record, to which

---

[25]  Mr. Baumgarten also acknowledged that he had failed to attend the scheduled settlement conference on December 8, 2004 in this matter, as the court noted in its Decision and Order of November 16, 2004, Doc. No. 52, at 2, n. 1, Baumgarten Affirmation in Response to Defendants' Affidavits, Exhibit "C."  *See* Baumgarten Affirmation in Response at 5, n. 3, referring to the failure as "unexcusable, albeit unintentional."  Interestingly, Baumgarten's "heavy caseload" was not offered as an excuse for such failure.

[26]  As explained, Discussion, *supra*, at 21-22 n. 15, Plaintiff's request that all decisions by the undersigned be rescinded is unavailable on a motion for recusal.

[27]  Notwithstanding Plaintiff's and Mr. Baumgarten's apparent displeasure with the court's handling of the case and its related rulings, the court acknowledges Mr. Baumgarten's *bon mots* that "[i]t is important to stress that, aside from the unusual tenor of the facts recited in this particular matter . . . Judge Foschio has always been deferential, respectful and collegial to affiant [Mr. Baumgarten] and to my colleagues in my presence, both inside and outside the court."  Affirmation of Richard L. Baumgarten, Esq., dated October 15, 2004 (Doc. No. 33) ¶ 38.

Plaintiff can point, that the court has commented favorably upon Defendants' defenses, or their respective counsel's advocacy.   Plaintiff's numerous motion papers are therefore devoid of any evidence reasonably suggesting that the court's rulings against Plaintiff in this case, or the undersigned's in-court conduct, including questions and comments, about which Plaintiff complains, have any basis other than the merits of the issues presented to the court or the effectiveness of Plaintiff's and Defendants' attorneys.  In short, there are simply no grounds presented by Plaintiff, assuming their truth, on this record that rationally imply any disqualifying bias or partiality on the part of the undersigned sufficient to warrant recusal.[28]

To the contrary, any difficulties Plaintiff may believe to have arisen in the prosecution of her case which motivated the instant motion, are the direct result of Plaintiff's attorneys', particularly Mr. Baumgarten's, failure to comply with applicable rules, including the court's local rules, of federal practice and procedure, and this court's orders.  Such difficulties undeniably commenced with Mr. Baumgarten's failure to maintain a correct mailing address with this court  at the time of his 1998 suspension by the Appellate Division, and his failure to timely obtain readmission to this court following his reinstatement in 2003, particularly after removal of this action in December of that year.  Mr. Baumgarten's recurring excuse that an "overwhelming" caseload somehow justified, prior to Mr. Sloan's entry into the case, Mr. Baumgarten's

---

[28]  As noted, Plaintiff fails to criticize the court's handling of the original Rule 16(b) conference on February 11, 2004, or the further conference on February 26, 2004 resulting from Mr. Baumgarten's failure to seek timely readmission, an oversight that caused an unnecessary loss of over three months of available litigation time for this case.  It cannot be known whether the May 27, 2004 Scheduling Order may have been more acceptable to Mr. Baumgarten's had Mr. Baumgarten attended the conference and explained his asserted caseload problems to the court at that time because, for whatever reason, Mr. Baumgarten did not attend the Rule 16(b) conference and made no request for reconsideration of the Scheduling Order once issued.

failure to complete discovery in Plaintiff's case within the time limits of the Scheduling

Order is irrelevant to Plaintiff's recusal motion as attorneys are expected to adjust their

professional caseloads to their capacity to comply with court imposed deadlines

including Rule 16(b) case management orders and subsequent motion schedules.  *See*

*Fleming v. Deaconess Hospital*, 2004 WL 2011474 *3 (W.D.N.Y. Sept. 9, 2004)

(affirming magistrate judge's sanction against attorney who failed to comply with Rule

16 scheduling order because of asserted "heavy caseload" and attorney's illness)

(Curtin J.).  Here, Mr. Baumgarten's caseload difficulties were evident to him as of the

May 26, 2004 Rule 16(b) conference, yet he waited until September 30, 2004, the last

day for discovery in this case, when Plaintiff first moved to amend the Scheduling

Order, to address them directly with the court.  As such, the court's unwillingness to

accommodate Mr. Baumgarten's professional problems does not manifest bias or

prejudice.  Finding no merit to Plaintiff's motion based on § 144 and § 455, the court

also rejects Plaintiff's alternative due process ground for recusal.  *See Int'l Business*

*Machines, supra*, at 1390 (absence of merit to recusal request under § § 144 and 455

negate due process violation claim) (citing cases).


## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 33 ) is DENIED.  Plaintiff's

attorneys are directed to serve a copy of this Decision and Order upon Plaintiff and file

with the court an affidavit or affirmation confirming such service <u>within 10 days</u> of

service of this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2005
      Buffalo, New York