UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NAKIESHA JONES,                                        **DECISION**

                              Plaintiff,                  **and**

        v.                                               **ORDER**

J.C. PENNEY'S DEPARTMENT STORES, INC.,      **03-CV-920A(F)**
NICHOLAS GOODWIN, PAUL MEERBOTH,
SCOTT PIEL and JANE DOE,

                              Defendants.

APPEARANCES:           DEWEY P. SLOAN, JR., ESQ.
                       Attorney for Plaintiff
                       14 First Avenue SW
                       P.O. Box 501
                       Le Mars, Iowa   51031-0501

                       RICHARD L. BAUMGARTEN, ESQ.
                       Attorney for Plaintiff
                       Box 242
                       Buffalo, New York    14201

                       FELDMAN, KIEFFER & HERMAN, LLP
                       Attorneys for Defendants J.C. Penney's,
                          Goodwin & Meerboth
                       MICHELE K. SNYDER, of Counsel
                       110 Pearl Street, Suite 400
                       Buffalo, New York    14202

                       FREDERICK A. WOLF
                       ERIE COUNTY ATTORNEY
                       Attorney for Defendants Piel and Doe
                       KRISTIN KLEIN WHEATON,
                          Assistant County Attorney, of Counsel
                       69 Delaware Avenue, Suite 300
                       Buffalo, New York    14202

**JURISDICTION**

This case was referred to the undersigned for all pretrial matters pursuant to 28

U.S.C. § 636(b)(1)(A) and (B) by order of the Hon. Richard J. Arcara filed December 19,

2003 (Doc. No. 4).  It is presently before the court on Defendants', J.C. Penney,

Goodwin and Meerboth, motion, filed November 3, 2004 (Doc. No. 40), and Defendant

Piel's motion, filed November 4, 2004 (Doc. No. 41), seeking dismissal of the complaint

or other sanctions pursuant to Fed.R.Civ.P. 37.


## BACKGROUND and FACTS[1]

This civil rights action arising out of a state shoplifting charge filed against

Plaintiff by Defendants, based on an encounter between Plaintiff and Defendants

Goodwin, Meerboth and Piel at a local J.C. Penney's store, was commenced in state

court on July 9, 2003, and later removed to this court.

On August 23, 2004, Defendants moved to compel discovery (Doc. Nos. 16 and

18).  Following oral argument, conducted September 20, 2004, (Doc. No. 25) (Minute

Entry) the court determined that by reason of Plaintiff's service of the discovery

responses sought by Defendants, after Defendants' motions were filed, with the

exception of the relevant files of Plaintiff's attorney, Glenn Edward Murray, Esq.,

Defendants' motions had become moot.  *Id.*  Based on its finding that the information

sought from Mr. Murray's file regarding possible conditions on the dismissal of Plaintiff's

criminal case by the Town of Clarence town court ("Town Court"), was relevant to

Defendants' defense and that Plaintiff had, by her untimely responses to Defendants'

document production requests, in violation of Fed.R.Civ.P. 34(b) (responses to be

---

[1] Taken from the pleadings and papers filed in connection with the instant motions.

served by the requested party 30 days after being served by the requesting party),

waived any objections to such production based on the attorney-client privilege, the

court directed Plaintiff to provide the requested file.  *Id.*  In addition to asserting the file

was protected by the attorney-client privilege, Plaintiff argued that Defendants could

obtain the information they sought from the original docket sheet minutes entry of the

Town Court, entered on July 16, 2002.  *See* Exhibit C to Reply Affirmation of Richard L.

Baumgarten, Esq., dated September 17, 2004 (Doc. No. 24) ("Baumgarten Reply

Affirmation").  According to Defendants, the requested file will assist Defendants in

establishing a potential defense, *i.e.*, that the Town Court dismissal was based on "the

interest of justice," which, according to Defendants, under New York law does not

constitute a favorable disposition sufficient to support a claim for malicious prosecution.

Reply Affidavit of Kristin Klein Wheaton, Esq., dated September 15, 2004, (Doc. No.

23) ¶ 9.[2]  Defendants also maintain that there is "no transcript" of a discussion between

Plaintiff's attorney and the prosecutor on such issues, and the "court records are not

clear."  *Id.*

Further, because, as of the September 20, 2004 oral argument on Defendant's

motions to compel, the parties had failed to schedule Plaintiff's deposition, the court

ordered the deposition be completed not later than September 30, 2004, the date for

conclusion of fact discovery established by the May 27, 2004 Rule 16(b) case

management order ("Scheduling Order").  (Doc. No. 13).  In support of the instant

motions, Defendants J.C. Penney, Goodwin and Meerboth ("J.C. Penney Defendants")

---

[2]  Although Ms. Klein Wheaton refers to *People v. Clayton*, no citation to this case is provided.
Applicable New York law on this subject is discussed *infra*.  Discussion, *infra*, at 26, n. 23.

submit the Affidavit of Michele K. Snyder, Esq., dated November 3, 2004 (Doc. No. 40) in Support of Defendants' Motion for Sanctions ("Snyder Affidavit in Support") together with Exhibits A-D ("Defendants' Exhibit(s) ___"); Defendant Piel submits the Affidavit of Kristin Klein Wheaton, Assistant Erie County Attorney, dated November 4, 2004 (Doc. No. 41) ("Klein Wheaton Affidavit in Support").  Plaintiff's opposition papers were not timely filed in accordance with this court's scheduling order (Doc. No. 42), and Plaintiff, after the December 2, 2004 deadline, sought an enlargement of time for such late filing by motion filed on December 8, 2004 (Doc. No. 48).[3]

Defendants request dismissal of Plaintiff's complaint, or alternative sanctions, pursuant to Fed.R.Civ.P. 37(b)(2) on several grounds.  Snyder Affidavit in Support ¶ 2; Klein Wheaton Affidavit in Support ¶ 2.  Specifically, Defendants contend that Plaintiff's counsel, Richard L. Baumgarten, who defended Plaintiff's deposition on September 30, 2004, repeatedly violated this court's Deposition Guidelines ("the Guidelines"), included and "So Ordered" in the Scheduling Order, after J.C. Penney Defendants' attorney, Ms. Snyder, requested that Mr. Baumgarten comply with the Guidelines; that Plaintiff failed to proceed with the deposition of Defendants Goodwin and Meerboth, as scheduled by agreement of the parties for September 30, 2004 causing J.C. Penney Defendants to incur unnecessary costs, *id;* that Plaintiff failed to comply with the court's September 20, 2004 on the record order that Plaintiff produce her criminal court attorney's file regarding the Town Court's disposition of the shoplifting charges against Plaintiff, *id;* and that Plaintiff failed to produce a videotape identified in Plaintiff's discovery

---

[3]  By Decision and Order, filed contemporaneously herewith, the court denied Plaintiff's motion.

responses which had been requested by J.C. Penney Defendants' attorney at Plaintiff's

deposition.  Snyder Affidavit in Support ¶ 2.

Defendants point to three instances in Plaintiff's deposition transcript where Mr.

Baumgarten, after stating, erroneously, that the Guidelines were not "on the record,"

repeatedly directed Plaintiff not to answer Defendants' questions pertaining to Plaintiff's

social security number, a prior criminal conviction, and Plaintiff's prior arrests for

assault, in violation of Guideline No. 3 which prohibits an attorney's direction that a

witness not answer unless for the purpose of preserving an objection based on a

privilege.  Snyder Affidavit in Support  ¶ ¶ 6-8; Klein Wheaton Affidavit in Support ¶ ¶ 3-

4.[4]  Defendants also point to five instances during the deposition that Defendants'

questions were interrupted by Mr. Baumgarten and his improper responses to

Defendants' questions before Plaintiff could answer for herself.  Snyder Affidavit ¶ ¶ 12-

16; Klein Wheaton Affidavit ¶ ¶ 5-6.  In particular, Defendants argue Mr. Baumgarten

interfered with their questions to Plaintiff regarding her criminal record, her claim for

unpaid lost wages in the instant case, and whether Plaintiff considered Mr. Rodgers

Hicks, described as Mr. Baumgarten's paralegal, as her attorney.  *Id.*  In each example,

Defendants maintain Mr. Baumgarten interjected his unsworn statement prior to

Plaintiff's answer, thereby improperly influencing such answers.  *Id.*

Additionally, Defendants describe several other instances where Mr. Baumgarten

made suggestive statements before Plaintiff could respond to influence Plaintiff's

answer to the question.  Snyder Affidavit ¶ ¶ 18-19.  As well, Defendants complain that

---

[4]  A copy of the Scheduling Order and Guidelines are attached hereto as an Appendix.

Mr. Baumgarten improperly influenced Plaintiff's response to Defendants' questions concerning her alleged damages by directing Plaintiff's attention to allegations in the Complaint.  *Id*. ¶ 20.  Defendants further complained of Mr. Baumgarten's repeated interruptions of Defendants' questions and particularly in regards to Defendants' questions to Plaintiff about a video surveillance tape of Plaintiff's actions while in the Defendant J.C. Penney's store, which are highly relevant to Plaintiff's claims in this action.  Snyder Affidavit in Support ¶ 21.[5]

Defendants' requests for sanctions are further based on Plaintiff's failure to comply with the court's September 20, 2004 direction on the record, in ruling on Defendants' motions to compel, to produce Plaintiff's criminal defense attorney's file, when Plaintiff represented them as being in Mr. Murray's possession.   Snyder Affidavit in Support ¶ 30-42; Klein Wheaton Affidavit in Support ¶ ¶ 7-9.  Specifically, in opposition to Defendants' motions to compel filed the day of the oral argument, Plaintiff submitted Mr. Murray's affirmation, dated September 17, 2004, which averred that Mr. Murray "maintain[ed] possession of the [Plaintiff's] criminal file . . .."  Exhibit B to Affirmation of Richard L. Baumgarten, Esq., dated September 20, 2004 (Doc. No. 24) ¶ 3.  *See also* Snyder Affidavit ¶ 30; Klein Wheaton Affidavit ¶ 7.  In his opposing affirmation, Mr. Baumgarten stated that he had "conference[d] this matter with Mr. Murray" and that Mr. Murray would not produce the file absent Plaintiff's consent or a court order in order to protect Plaintiff's attorney-client privilege in the file.  Baumgarten

---

[5]  According to J.C. Penney Defendants, Mr. Baumgarten "frequently interrupted the questioning" of Plaintiff.  Snyder Affidavit in Support ¶ 21.  However, as Defendants have not submitted a complete transcript of the entire deposition, *see* Exhibit A to Snyder Affidavit in Support, the court is unable to determine the accuracy of J.C. Penney Defendants' assertion.

Reply Affirmation ¶ 7.  Defendants noted that, following the September 20, 2004 oral

argument on Defendants' motions to compel, the court granted the motions as to Mr.

Murray's file and directed, on the record, that Plaintiff produce the file to Defendants by

September 27, 2004, prior to September 30, 2004, the date designated for Plaintiff's

deposition, to enable Defendants' potential use of the file at the deposition.  Snyder

Affidavit in Support ¶ 31; Klein Wheaton Affidavit in Support ¶ 8.

However, Mr. Baumgarten rebuffed Defendants' attempts, by telephone and

correspondence to Mr. Baumgarten, to obtain Plaintiff's compliance with the court's

order prior to Plaintiff's deposition.  Snyder Affidavit in Support ¶ ¶ 32-33, Exhibits B

and C; Klein Wheaton Affidavit in Support ¶ ¶ 10-12, Exhibits B and C.  Although in his

affirmation opposing Defendants' motions and his letter responding to Defendants'

requests that he produce the file, dated September 28, 2004, Exhibit C to Snyder

Affidavit in Support, Mr. Baumgarten again represented that Mr. Murray would not

produce the requested file without an order of the court, Defendants learned from Mr.

Murray in a telephone conversation on September 29, 2004, that Plaintiff had not

informed Mr. Murray of the court's September 20, 2004 order directing production of the

file.  Snyder Affidavit in Support ¶ 34; Klein Wheaton Affidavit in Support ¶ 14.  While

Mr. Murray further informed defense counsel in their conversation, contrary to Mr.

Baumgarten's representation, Exhibit B, Klein Wheaton Affidavit in Support, that he

would comply with the court's order, Mr. Murray subsequently revised his position by

informing Defendants that, contrary to the statement in his September 17, 2004

affirmation and his earlier telephone conversation with Ms. Klein Wheaton, he was not

then in possession of the requested file because he had turned the file over to Mr.

Rodgers Hicks, a person Mr. Baumgarten represented to be paralegal at the time of Plaintiff's deposition, nearly two years earlier on October 15, 2002, at Plaintiff's request. Klein Wheaton Affidavit in Support ¶ 16.[6]

Adding to the confusion created by Plaintiff and Mr. Baumgarten regarding responsibility for production of the file, at the outset of Plaintiff's deposition, Mr. Baumgarten disavowed, in response to Ms. Klein Wheaton's statement of Defendants' efforts to obtain the file, on the record, ever speaking with Mr. Murray about the subject file, that he, Baumgarten, lacked any control over the file, and further denied having any knowledge as to its location, including whether the file had been turned over to Mr. Hicks prior to Plaintiff commencing this action, as Mr. Murray informed Defendants. Snyder Affidavit in Support ¶ 36; Klein Wheaton Affidavit in Support ¶ 18; Exhibit A to Snyder Affidavit in Support at 9-10.[7]  Additionally, Defendants referenced portions of Plaintiff's deposition in which Plaintiff testified that, although she had possession of the file at an earlier time, Plaintiff had made no effort to locate the file in connection with Defendants' discovery requests and this court's order granting Defendants' motion to compel its production, until Mr. Hicks asked her about it just prior to Plaintiff's deposition on September 30, 2004.[8]  Snyder Affidavit in Support ¶ ¶ 39-40; Klein

---

[6]  The record is unclear whether such communication was by telephone or a fax message.

[7]  The plain inconsistency between Mr. Murray's averment in his September 17, 2004 affirmation submitted to the court by Mr. Baumgarten, Discussion, *supra*, at 5-6, and Mr. Baumgarten's unsworn on the record statement to Defendants at Plaintiff's deposition on September 30, 2004 regarding Mr. Murray's lack of possession of the file is not explained in the record.

[8]  The record does not indicate that Mr. Hicks was Mr. Baumgarten's employee at the time Mr. Hicks obtained the file on Plaintiff's behalf.  "At the time it [the file] was handed over to Mr. Hicks, I [Mr. Baumgarten] was not even in this case."  Statement of Richard L. Baumgarten, Esq., September 20, 2004, Exhibit A to Snyder Affidavit in Support at 9, LL 12-14; "It was not within my power to obtain it . . . ." *Id.*, L 18.

Wheaton Affidavit in Support ¶ ¶ 22-23, Exhibit A to Snyder Affidavit in Support at 127, LL 13-17; 135, LL 3-16.  As relevant, Plaintiff testified that, after dismissal of the shoplifting charge in the Town Court, she requested Mr. Hicks obtain the file from Mr. Murray and, after obtaining the file, she had stored it among her other personal files at her Godmother's home where it may have been subject to extensive water damage ("my Godmother had a flood," "those boxes [containing the file] were destroyed [in the] flood.").  Exhibit A to Snyder Affidavit in Support at 127, LL 10-17, at 128, LL 10-17. Plaintiff's deposition transcript does not indicate when, in relation to commencing this litigation, Plaintiff stored the file, when the alleged water damage occurred, or how Plaintiff came to believe that the file was in fact "destroyed," as she testified.

Defendants contend the manifest inconsistencies represented by Mr. Baumgarten's submissions to the court and defense counsel on this issue in opposing Defendants' motions, regarding Mr. Murray's September 17, 2004 affirmation relating to his possession of the file and Plaintiff's later deposition testimony, on September 30, 2004, that Mr. Hicks had obtained the file from Mr. Murray on her behalf sometime during 2002, one year prior to commencement of this lawsuit, demonstrates Plaintiff's and Mr. Baumgarten's failure to take reasonable steps to locate the file and accurately respond to Defendants' discovery requests as to its existence and whereabouts, which warrants imposing sanctions, including dismissal of the Complaint, pursuant to Fed.R.Civ.P. 37(b)(2).[9]  Indeed, that Plaintiff apparently knew prior to commencing this action or at least prior to responding to Defendants' requests that the file was likely

---

[9] Defendants do not accuse Plaintiff of spoliation of the file.

destroyed at an earlier time, also demonstrates Mr. Baumgarten failed to question

Plaintiff as to the existence of the file prior to serving Plaintiff's responses.[10]  Plaintiff's

continued indifference to this issue is reflected in an unsolicited letter from Mr.

Baumgarten to the court, dated October 6, 2004, filed by the court contemporaneously

with this Decision and Order, in which Mr. Baumgarten describes Ms. Klein Wheaton's

effort to obtain production of the file as "a never-ending quest" and, because Mr. Murray

no longer maintained possession of the file, such effort, in Mr. Baumgarten's opinion,

was "folly."  Letter of Richard L. Baumgarten to Hon. Leslie G. Foschio dated October 6,

2004 (Doc. No. 73).

Finally, J.C. Penney Defendants also request sanctions available under

Fed.R.Civ.P. 30(g)(1) based on Plaintiff's failure to proceed with the depositions of

Defendants Goodwin and Meerboth on September 30, 2004, as the parties had agreed

following the September 20, 2004 oral argument, and Plaintiff's continued failure to

provide a copy of a surveillance video tape to Defendants that Plaintiff stated, in

response to Defendants' documents requests, she possessed.  Snyder Affidavit in

Support ¶ ¶ 25-26; ¶ ¶ 27-29.


**DISCUSSION**

"A district court may impose sanctions when 'a party . . . fails to obey an order to

provide or permit discovery.'" *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D.

---

[10]  Why Mr. Hicks, who apparently became Mr. Baumgarten's paralegal after obtaining possession of the file from Mr. Murray, did not advise Mr. Baumgarten regarding its location prior to serving Plaintiff's discovery responses and filing opposition papers to Defendants' motions to compel, is unexplained.

594, 598 (W.D.N.Y. 1996) (quoting Fed.R.Civ.P. 37(b)).  Such sanctions include an order directing "that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claims of the party obtaining the order."  Fed.R.Civ.P. 37(b)(2)(A). Other sanctions authorized by Rule 37(b)(2) include an order preventing a disobeying party from supporting a claim or opposing a defense or offering designated evidence at trial, Fed.R.Civ.P. 37(b)(2)(B), an order striking pleadings, granting a stay until the order is obeyed, or an order dismissing the action or granting a default judgment. Fed.R.Civ.P. 37 (b)(2)(C).  A court may also treat the disobedience of the court's discovery order as contempt.  Fed.R.Civ.P. 37(b)(2)(D).  Finally, the court may impose reasonable expenses, including attorneys' fees, caused by the party's failure to obey the court's discovery orders.  Fed.R.Civ.P. 37 (b); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 524 (2d Cir. 1990) (pattern of ignoring discovery requests and court orders supported award of attorneys fees to prevailing party and evidentiary sanctions).  "Imposition of discovery sanctions is within the broad discretion of the court."  *Burns, supra*, at 598 (citing *Bobal v. Renssalear Polytechnic Institute*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943 (1991); and *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 386-87 (2d Cir. 1981)).

    Although the sanctions of striking a pleading, or entry of a default judgment, are available, they "ordinarily are not imposed unless disobedience has been wilful, in bad faith, or otherwise culpable."  *Burns, supra* (citing *Societe Int'l v. Rogers*, 357 U.S. 197, 212 (1958) (sanctions under Rule 37 justified where responding party has control over documents requested and fails or refuses production without showing of inability to

comply with court's order); and *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357,

1367 (2d Cir. 1991) (order prohibiting corporations from presenting evidence on the

issue of *alter ego* liability for failure to respond to a court order requiring document and

witness production for depositions)).  Repeated failure of a party ordered to produce

documents will also support ordering as a sanction that a fact, the ascertainment of

which may be dependent upon the requested discovery, be deemed established for

purposes of trial.  *Burns, supra*, at 597.  Further, open and unequivocal defiance of

court ordered discovery is sufficient to support a finding of bad faith or wilful misconduct

supporting the severe sanction of dismissal of a pleading.  *Jones v. Niagara Frontier*

*Transportation Authority*, 836 F.2d 731, 734 (2d Cir. 1987) (*pro se* plaintiff's refusal to

answer questions at court ordered deposition supported dismissal of complaint) (citing

*Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)).


1.    Violations of the Court's Deposition Guidelines.

The record supports a finding that Mr. Baumgarten, without justification,

repeatedly violated, several of the court's Deposition Guidelines that were attached to,

incorporated by reference, and "So Ordered" in the May 27, 2004 Scheduling Order

(Doc. No. 13).[11]  Plaintiff cannot be excused from compliance by claiming ignorance of

the Guidelines as, despite Ms. Snyder's several reminders of his duty to follow the

---

[11]  The Guidelines are consistent with Fed.R.Civ.P. 30(c) and (d)(1), (3).  *See Sheppard v. Beerman*, 1999 WL 1011940, *1 (E.D.N.Y. Sept. 23, 1999) (declining to modify or set aside magistrate judge's rulings pertaining to discovery disputes, including imposition of deposition guidelines, as such rulings were neither clearly erroneous nor contrary to law); *see also Hall v. Clifton Precision,* 150 F.R.D. 525, 530 (E.D. Pa. 1993) (enforcing guidelines for conduct of depositions similar to the Guidelines at issue in this case).

Guidelines in the conduct of Plaintiff's deposition, Mr. Baumgarten nevertheless
repeatedly directed Plaintiff not to answer Ms. Snyder's questions without specifying a
privilege objection as Guideline No. 3 and Fed.R.Civ.P. 30(d)(1) require.  Snyder
Affidavit in Support ¶ 3. Specifically, Guideline No. 3 directs that "Counsel shall not
direct or request that a witness not answer a question, unless that counsel has objected
to the question on the ground that the answer is protected by a privilege or a limitation
on evidence directed by the court."  As relevant, Rule 30 similarly provides that "[a]
person may instruct a deponent not to answer <u>only</u> when necessary to preserve a
privilege, to enforce a limitation directed by the court, or to present a motion under Rule
30(d)(4)."  Fed.R.Civ.P. 30(d)(1) (underlining added).

Notwithstanding the Guidelines's limitations, and Ms. Snyder's request to Mr.
Baumgarten that he comply with the Guidelines during Plaintiff's deposition, when Ms.
Snyder asked Plaintiff for her social security number, Mr. Baumgarten directed Plaintiff
not to answer.  Snyder Affidavit in Support ¶ 3.  Upon being challenged by Ms. Snyder
to state the justification for his direction to Plaintiff, Mr. Baumgarten said:  "Well, just
based on my understanding of – I'll think of the privilege and I'll put it on the record
<u>when it comes to my mind</u>."  *Id.* (underlining added).  Mr. Baumgarten also mistakenly
claimed, in opposing Ms. Snyder's effort to obtain compliance with the Guidelines, that
"I [Baumgarten] don't think he [the court] put any guidelines for depositions on the
record."  *Id.* ¶ 4 (bracketed material added).  However, the record demonstrates that at
the September 20, 2004 oral argument on Defendants' motions to compel, Mr.
Baumgarten unequivocally acknowledged to the court that he had read the court's May
27, 2004 Scheduling Order in which compliance with the attached Guidelines was "So

Ordered."  Exhibit A to Affirmation of Richard L. Baumgarten Esq., dated October 14, 2004 (Doc. No. 33) at 44.[12]

As the transcript of Plaintiff's deposition provided to the court fails to reveal any later attempt by Mr. Baumgarten during the remainder of the deposition to assert a colorable claim of privilege, Mr. Baumgarten's violation of the court's order, *i.e.*, Guideline No. 3, is fully established.[13]  Manifestly, Mr. Baumgarten failed to recall that the court's Guidelines  were attached to the May 27, 2004 Scheduling Order, and were "So Ordered" in the text of the Scheduling Order.  *See* Doc. No. 13 at 2.  Later in the deposition, according to Defendants, Mr. Baumgarten, off the record, withdrew his direction that Plaintiff not answer the question.  Snyder Affidavit in Support ¶ 5.  However, Mr. Baumgarten also objected to, and directed Plaintiff not to answer, several of Defendants' other questions seeking specifics regarding her criminal record.  *Id.*  ¶ ¶

---

[12]  Court:                        Now, I issued the scheduling order in this case on May 26th, correct?

Mr. Baumgarten:        That is correct, Judge.

Court:                        And you read it?

Mr. Baumgarten:        Judge – –

Court:                        And you read it?

Mr. Baumgarten:        Yes.

[13]  As a matter of relevancy, an objection that was not raised by Mr. Baumgarten, prevailing caselaw supports the propriety of Ms. Snyder's question seeking Plaintiff's social security number.  *See Goodman v. City of New York,* 2004 WL 1661105 *2 (S.D.N.Y. July 23, 2004) (attorney's direction not to answer question seeking, *inter alia*, witness's social security number held improper – information directed to be provided subject to a confidentiality agreement); *Pearson v. Heavey*, 1997 WL 159656 *1-2 (S.D.N.Y. April 23, 1997) (absent showing that lawsuit was brought in bad faith, deposition request for defendant's social security number was relevant and information not subject to any broad judicially imposed limitation upon discovery based on security concerns for police officer defendant in civil rights case arising from false arrest claim); *Magedson v. Fina*, 1993 WL 35261 *4 (N.D.N.Y. Feb. 10, 1993) (granting motion to compel request for social security information at plaintiff's deposition subject to sealing order).  Plaintiff did not offer to provide her social security number subject to a confidentiality agreement.

6-8.  As to each question and direction to Plaintiff not to answer, Mr. Baumgarten, upon being challenged by Defendants, failed to state any basis for the objections and his direction to Plaintiff not to answer.  *Id.*  Moreover, instead of making any effort to state plausible reason for his objections and directions to Plaintiff not to answer, in response to Ms. Snyder's repeated requests, Mr. Baumgarten dismissively retorted, "[y]ou can discuss it with the judge."  *Id.*

Additional violations of the Guidelines were committed by Mr. Baumgarten when he repeatedly interjected himself into the deposition by answering several questions put to Plaintiff before Plaintiff could answer without being influenced by Mr. Baumgarten's unsworn statements.  Snyder Affidavit in Support ¶ ¶ 12-16.  For example, Ms. Snyder asked Plaintiff the following questions:

| | |
|---|---|
| Snyder Q: | Is it [*sic*] Mr. Hicks serving as your attorney? |
| Baumgarten: | <u>Mr. Hicks is my paralegal</u>. |
| Ms. Snyder: | I'm asking the witness. |
| The Witness (Plaintiff): | <u>He's my attorney</u>. |
| Q: | So what's your understanding of Mr. Hicks' [*sic*] role? |
| A. | <u>He's Mr. Baumgarten's paralegal</u>. |
| Q. | Did you know that before Mr. Baumgarten answered my question? |
| A: | Yeah. |

Snyder Affidavit in Support ¶ 16; Exhibit A to Snyder Affidavit in Support at 135, LL 20-23; at 135, LL 1-8 (underlining added).  The improper influence of Mr. Baumgarten's violation of Guideline No. 3 is palpable on this record.

Defendants, additionally, complain that Mr. Baumgarten improperly interrupted Ms. Snyder's questioning of Plaintiff by responding to Ms. Snyder's question so as to suggest an answer to Plaintiff.  Snyder Affidavit in Support ¶ ¶ 18-22; Klein Wheaton Affidavit ¶ 6.  For example, at one point in the deposition, while questioning Plaintiff on the sequence of events that allegedly occurred at Defendant J.C. Penney's store as recorded on a store video surveillance tape, Ms. Snyder asked Plaintiff:

> ". . . can we agree that the person on the [video] tape at this particular junction fifteen thirty-four fifty something —"

Mr. Baumgarten:    I'm not going to stipulate that that's the actual time or the authenticity as you do, I'm just going to stipulate that this tape says fifteen thirty-four, but not that it is actually is in this tape." [*sic*].

Snyder Affidavit in Support ¶ 21; Exhibit A to Snyder Affidavit in Support at 94, LL 2-9.

The court's Deposition Guideline No. 4 states in relevant part:   "Counsel shall not make objections or statements which might suggest an answer to a witness."  This direction mirrors the requirement of Rule 30(d)(1) that "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and <u>non-suggestive</u> manner."  Fed.R.Civ.P. 30(d)(1) (underlining added).  Here, Mr. Baumgarten's repeated and unexcused interruptions of Defendants' questioning, particularly his unsworn remarks in response to Defendants' questions to Plaintiff, represent egregious violations of Guideline No. 4 as well as Rule 30(d)(1).  Further, as the Guidelines represent an order of the court, Mr. Baumgarten's cavalier attitude toward this court's order, that the Guidelines apply to the conduct of all depositions in this case, after being specifically reminded of his obligation to comply with them, constitutes willful violation of such order warranting sanctions.

While the court determines that Mr. Baumgarten's violations of the Guidelines and Rule 30 are substantial and wilful, the court nevertheless finds alternative sanctions, particularly a monetary fine for civil contempt, other than dismissal of the Complaint, as Defendants request, can achieve the purposes of deterrence and avoiding any further potential prejudice to Defendants in this case.  Although Mr. Baumgarten's conduct during Plaintiff's deposition patently violated Guidelines Nos. 3 and 4, the court finds Defendants' questions do not relate directly to Defendants' ability to defeat Plaintiff's claims or support Defendants' defenses.  Moreover, other than the inexcusable annoyance to Defendants' counsel caused by Mr. Baumgarten's behavior, its disruptive effect on the deposition and the need to incur extra expenses in bringing this motion, the court discerns no substantial prejudice to Defendants going to the merits of the case, and Defendants point to none.

Accordingly, the court does not find that directing any adverse inferences or findings of fact against Plaintiff's case, preclusions of Plaintiff's evidence, or dismissal of the Complaint, permitted by Rule 37(b)(2) are warranted by Mr. Baumgarten's violations.  However, to deter future potential similar misconduct by Mr. Baumgarten (or others similarly disposed), the court finds that Mr. Baumgarten's violations of the Guidelines, a pretrial order governing the conduct of discovery in this case, warrant punishment for civil contempt of court pursuant to Fed.R.Civ.P. 16(f).[14]  A Certification to the Chief District Judge assigned to this case finding Mr. Baumgarten's violations of the Guidelines are acts constituting civil contempt and recommending Mr. Baumgarten

---

[14] Violations of a Rule 16(b) order are punishable by civil contempt as authorized by Rule 37(b)(2)(D).  Fed.R.Civ.P. 16(f).

be held in civil contempt of this court based on these acts, pursuant to 28 U.S.C. §

636(e)(6)(B)(iii), is therefore filed contemporaneously with this Decision and Order.

Further, based on the extensive and wilful interference with the effective conduct of

Plaintiff's deposition, the court finds Mr. Baumgarten should personally pay the

reasonable expenses of conducting Plaintiff's deposition incurred by Defendants,

including attorney's fees, as an additional sanction, fully warranted on this record, under

Fed.R.Civ.P. 37(b)(2).


2.     Failure to Conduct Deposition of Defendants Goodwin and Meerboth.

J.C. Penney Defendants also argue that Plaintiff's failure to conduct the

depositions of Defendants Goodwin and Meerboth, scheduled by the parties for

September 30, 2004, Snyder Affidavit ¶ 25, justify sanctions.[15]  When the court denied

---

[15]  In accordance with the court's September 20, 2004 direction to complete discovery by the September 30, 2004 cut-off date as established by the Scheduling Order, Plaintiff agreed to conduct the Defendants' depositions, including Goodwin, Meerboth and Piel, on September 30, 2004.  Affidavit of Michele K. Snyder, Esq., dated October 27, 2004 in Opposition to Plaintiff's Motion to Extend Scheduling Order (Doc. No. 37) ¶ 5, Exhibits B and E.  How the parties came to stipulate, without the court's approval, as required under Fed.R.Civ.P. 29, that Piel's deposition would be taken December 17, 2004, well after the cut-off date, *i.e.*, December 17, 2004, for discovery is not explained in the record on this motion.  The letter communications, on which the court was not copied, between Defendants' attorneys and Mr. Baumgarten prior to September 30, 2004, inform that because of a previously scheduled and required law enforcement training session, Defendant Piel could not attend the September 30, 2004 deposition as the parties had previously agreed and expected.  Exhibit A to Klein Wheaton Affidavit, Letter of Kristin Klein Wheaton to Richard L. Baumgarten (advising that Defendant Piel could not appear for the scheduled deposition on September 30, 2004 and proposing to reschedule at another date).  Mr. Baumgarten failed to bring J.C. Penney Defendants' refusal to comply with his unexpected demand, Exhibit D to Affirmation of Richard L. Baumgarten, Esq., dated December 6, 2004, Exhibit B to Plaintiff's Motion to Extend Time for Filing Plaintiff's Opposition (Doc. No. 48), that Goodwin, Meerboth and Piel be deposed on the same day as Plaintiff, to the court's attention by motion to enforce the court's September 20, 2004 direction that all depositions be completed in accordance with the Scheduling Order on September 30, 2004, notwithstanding Piel's unavailability because of scheduled training.  Had Mr. Baumgarten done so, the court could have directed Piel appear for the deposition notwithstanding Piel's training date, or that the deposition of all three individual Defendants take place on an alternative date closer to the original September 30th cut-off.  Why Mr. Sloan, whom Plaintiff requested on September 20, 2004 be permitted take over the case for the specific purpose of conducting depositions, could not conduct the scheduled deposition of Goodwin and Meerboth is also not explained by Plaintiff.

Plaintiff's request to enlarge the Scheduling Order, November 18, 2004 Order, Doc. No.

45, the court also found that Plaintiff, without good cause, had failed to conduct the

deposition of Defendants Goodwin and Meerboth and that Plaintiff should therefore be

precluded from doing so after the September 30, 2004 cut-off date for discovery

established by the Scheduling Order.   *See also* December 16, 2004 Order (Doc. No.

52).  As Plaintiff failed to appeal the order to the District Judge pursuant to Fed.R.Civ.P.

72(a), the November 18, 2004 Order became the law of the case.  Additionally, Rule

30(g)(1) provides that where a party who notices a deposition which the noticed party

attends and is prepared to proceed with the deposition, and the party who noticed the

deposition fails to proceed, the court may order such party to pay to the noticed party

the reasonable expenses of attending the deposition, including attorney's fees of such

party.  Fed.R.Civ.P. 30(g)(1).  Here, Plaintiff's violation of Rule 30(g) did not cause

prejudice to Defendants justifying more severe sanctions, as requested by J.C. Penney

Defendants than already imposed by the court; nevertheless, as Defendants incurred

unnecessary costs because of Plaintiff's failure, without cause, to proceed with the

scheduled Goodwin and Meerboth depositions on September 30, 2004, and Plaintiff's

reason for failing to do so is not substantially justified, the court finds Defendants are

entitled to the financial sanctions available under Rule 30(g)(1) attributable to Plaintiff's

failure to depose Goodwin and Meerboth.


3.    Failure to Produce Plaintiff's Criminal File.

In this case, it cannot be disputed, Background and Facts, *supra*, that (1) Plaintiff

failed to provide timely responses to Defendants' Rule 34(b) request for Plaintiff's

criminal case file that Plaintiff had received from her attorney, Mr. Murray,

approximately two years prior Defendants' requests; (2) Plaintiff represented in her

responses to Defendants' Rule 34(b) production requests served on Plaintiff on June 1st

(by J.C. Penney Defendants) and July 25th, 2004 (by Defendant Piel) that Mr. Murray

continued to retain the file as of the date of Plaintiff's opposition, filed September 20,

2004, to Defendants' motions to compel, and further represented in her opposing

papers that Mr. Murray would not release the file absent an order from the court; (3)

since well prior to commencing this action Plaintiff, not Mr. Murray, has maintained

possession of the requested filed but nevertheless failed to take any reasonable steps

toward locating and timely producing the file (or had advised Mr. Baumgarten she had

previously received the filed from Mr. Murray) in response to Defendants' document

requests; (4) Mr. Baumgarten's representations to Defendants at Plaintiff's deposition

that he had had no prior conversation with Mr. Murray regarding production of the file

are severely contradicted by Mr. Baumgarten's September 20, 2005 submission to the

court, ten days prior to Plaintiff's deposition, in opposition to Defendants' motions, of an

affirmation, purportedly by Mr. Murray, stating that Mr. Murray then maintained

possession of the file and would not relinquish it to Defendants absent a court order or

Plaintiff's consent;[16] and (5) Plaintiff failed to reasonably supplement her Rule 34(b)

responses regarding the file, served after Defendants' motion was filed as required by

Rule 26(e)(2).  Baumgarten Affirmation dated September 20, 2004, Exhibit 2

(Affirmation of Glenn E. Murray, Esq. dated September 17, 2002 ("Murray Affirmation")

---

[16] As late as September 28, 2004, by letter to Ms. Klein Wheaton, Mr. Baumgarten continued to assert this position.  Exhibit B to Klein Wheaton Affidavit in Support.

(Doc. No. 24) ¶ ¶ 3, 6.

Specifically, Mr. Murray's September 17, 2004 affirmation states he will not release the file to any third person, *id.* ¶ 6, absent his client's waiver of her attorney-client privilege "or a Court's order."  Murray Affirmation ¶ 6.[17]   Further, in Mr. Baumgarten's Reply Affirmation, dated September 20, 2004, opposing Defendants' motion to compel (Doc. No. 24), Mr. Baumgarten stated, "I [Baumgarten] have conference [*sic*] this matter with Glenn E. Murray, Esq.; and Mr. Murray, . . . has indicated that absent a written waiver from his client, Ms. Jones, or, otherwise, [*sic*] directed by Court Order, that he would not disclose Ms. Jones' [*sic*] criminal file to any third party."  *Id.* ¶ 7 (bracketed material added).  Despite the fact the court orally directed Plaintiff to produce the file (which the court and Defendants' attorneys had then been led by Plaintiff to believe was in Mr. Murray's possession), Mr. Baumgarten, based on Mr. Murray's alleged affirmation, nonetheless demanded Defendants obtain a <u>written</u> order of the court, asserting that to satisfy one of Mr. Murray's two alternative requirements for release of the file, a written order of the court was required by Section 2219(a) of the New York Civil Practice Law and Rules (requiring a written order for motions determined by a court).[18]  In contrast to Mr. Baumgarten's representation, when

---

[17]  Absent any showing by Plaintiff that Mr. Murray, two years after his representation of her in the criminal case, was authorized by Plaintiff to assert the attorney client privilege, Mr. Murray was without standing to do so.  *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) (attorney-client privilege belongs solely to the client and may be asserted only by the client or by one authorized to do so on the client's behalf, and citing *In re von Bulow*, 828 F.2d 94, 100 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987)).  There is nothing in this record to suggest Mr. Murray was attempting to raise the privilege at Plaintiff's behest.

[18]  However, federal, not state, rules of practice, apply to actions removed pursuant to 28 U.S.C. § 1441(a)(b), 28 U.S.C. § 1447(a) (district may issue orders and process against parties to a removed case); Fed.R.Civ.P. 81(c) (Federal Rules of Civil Procedure "apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal.");  *Mroz v. City of*

informed by Defendants' attorneys about the court's oral direction, Mr. Murray told

Defendant Piel's attorney, by telephone, he had not been previously advised by Plaintiff

of the court's direction, and agreed to produce the file; however, in a subsequent

telephone call, Mr. Murray told Defendants' attorneys that he no longer had possession

of the file and could not, therefore, comply with the court's directive. Snyder Affidavit in

Support ¶ ¶ 33-35; Klein Wheaton Affidavit in Support ¶ ¶ 14-16.

Thus, on this record the court finds that (1) after being served by Defendants in

June and July 2004 with Defendants' Rule 34(b) document production requests for the

file, when responding to Defendants' initial requests for the file, and in opposing

Defendants' subsequent motions to compel, filed August 24 and 27, 2004, respectively,

neither Plaintiff nor Mr. Baumgarten, Plaintiff's counsel, had made any effort to

ascertain the existence or location of the requested file, rather Plaintiff merely asserted

a general objection to production of the file based on an attorney-client privilege lacking

any colorable basis,[19] thereby materially misleading both Defendants and the court as

---

*Tonawanda*, 999 F.Supp. 436, 449 (W.D.N.Y. 1998) ("Unless the case is remanded, after removal, questions of procedure are governed by federal law."). Under federal practice, oral discovery orders of the court on the record need not be reduced to written form to be enforceable. *See Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) (district court authorized to impose Rule 37(b) sanctions for noncompliance with, not only written, but also oral orders of the court, "provided that there is a clearly articulated order of the court requiring specified discovery."). Here, there can be no question the court's direction to Mr. Baumgarten to produce the file was "clearly articulated" following oral argument on Defendants' motions. Doc. No. 25 Minute Entry; Exhibit A to Affirmation of Richard L. Baumgarten, Esq., dated October 14, 2004 (Doc. No. 33) in Support of Plaintiff's Motion for Recusal at 35-36 ("The Court: [Defendants'] motion [to produce Mr. Murray's file] is granted . . . the file will be produced [by Plaintiff] five days from today's date.") (bracketed material added).

[19] According to Plaintiff, she directed the file be turned over to Mr. Hicks, a third party not within the privilege then existing between Mr. Murray and Plaintiff, in 2002, thus destroying the privilege. *See Tisby v. Buffalo General Hospital*, 157 F.R.D. 157, 168 (W.D.N.Y. 1994) (subsequent disclosure to a third party by a client of a communication with his attorney eliminates whatever privilege the communication may have originally possessed) (citing *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)).

to this issue;[20] (2) notwithstanding Plaintiff's lack of any confirmed knowledge as to current existence and location of the file, Plaintiff submitted her attorney's affirmation asserting the file's current existence to be in Mr. Murray's possession, thus reinforcing the court's and Defendants' attorneys' misperception created by Plaintiff's lack of diligence and wilful disregard for the actual facts concerning the existence and location of the file; (3) Plaintiff caused the court to schedule and conduct unnecessary and time-consuming oral argument on Defendants' demand for production of the file, and issue a futile order directing its production, resulting in a waste of judicial resources and unnecessary expense to Defendants in litigating this issue;[21] (4) Plaintiff unreasonably failed to comply with the court's order to produce the file in a timely manner asserting, instead, a meritless ground for Plaintiff's refusal to comply based on a non-existent attorney-client privilege, and, alternatively Plaintiff's waiver of the privilege in allowing Mr. Hicks to earlier obtain the file from Mr. Murray; and (5) Mr. Baumgarten acted with unprofessional indifference to this court's order to produce the file in asserting, erroneously, that state law applied requiring the court's order be in written form.  Upon this record, the court finds that Plaintiff and her attorney have engaged in bad faith and willful misconduct in conducting discovery in this case warranting sanctions pursuant to

---

[20]  Indeed, based on Plaintiff's deposition testimony that the first time anyone asked her about the file was when Mr. Hicks, represented by Mr. Baumgarten as his "paralegal" in this case, did so just prior to her deposition, Exhibit A to Snyder Affidavit in Support at 135, LL 7-16, it may reasonably be concluded that Mr. Baumgarten never spoke to Plaintiff (or, for that matter, Mr. Hicks) about the file when preparing and serving Plaintiff's answer to Defendants' document requests, nor in filing Plaintiff's opposition to Defendants' motion to compel in this court.  Nor, apparently, did Mr. Hicks volunteer the information to Mr. Baumgarten.

[21]  The court's conduct of the oral argument is asserted by Plaintiff as a basis for Plaintiff's subsequent motion for recusal and her complaint to the Second Circuit Council for Judicial Conduct Code violations against the undersigned.

Rule 37(b)(2).

While such willful misconduct by Plaintiff and Mr. Baumgarten in the conduct of discovery and related motion practice in this case justifies sanctions pursuant to Rule 37, the Second Circuit has cautioned courts not to apply the sanction of dismissal except in extreme circumstances.  *Compare West v. Goodyear Tire & Rubber Company*, 167 F.3d 776, 780 (2d Cir. 1999) (dismissal of complaint too harsh as a sanction against plaintiff for spoliation of evidence) with *Jones, supra,* 836 F.2d at 734 (plaintiff's refusal to answer questions at his court ordered deposition justified dismissal of complaint as sanction under Rule 37).  In choosing the proper sanction, the court should consider the need to deter future similar misconduct, protection of a defendant's interests, and remedying any potential prejudice to defendants caused by the misconduct as well as the range of available sanctions to effectively satisfy these requirements.  *See West, supra*, at 780.

In the case at bar, it is undisputed that Plaintiff misled Defendants and this court regarding the availability of the Plaintiff's criminal file maintained by her former attorney, Mr. Murray, for production, particularly its present possession by Mr. Murray, when its production was initially sought by Defendants and, subsequently, while Defendants' motions to compel were litigated before the court, as well as the lack of a good faith basis for Plaintiff's assertion of a viable attorney-client privilege in the file, and Mr. Murray's willingness to produce the file, assuming he had maintained possession of it as represented (albeit erroneously) in his affirmation submitted to the court in opposing Defendants' motions to compel.  Such inexcusable neglect by Mr. Baumgarten in meeting Plaintiff's obligations to comply with properly served discovery requests under

Rules 26 and 34, if not a deliberate misrepresentation to opposing counsel and the

court, was the direct cause of substantial and unnecessary litigation of this issue and a

dilution of judicial resources based on the lack of a good faith belief as to true

circumstance of the file's status.[22]  Significantly, Plaintiff admitted at her deposition that

she did not know with certainty if the file remains in existence or if it was in fact

destroyed when flooding occurred at her Godmother's house where, according to

Plaintiff, the file was stored after she obtained it from Mr. Murray through Mr. Hicks over

two years ago.  Snyder Affidavit in Support ¶ 40; Exhibit A to Snyder Affidavit in Support

at 128.  As the date of the alleged "flood" in Plaintiff's Godmother's basement is not

established by the record before the court, the court is unable to determine whether

earlier compliance by Plaintiff with Defendants' document production requests when

first served by J.C. Penney Defendants on June 1, 2004 could have avoided the loss of

the file as Plaintiff testified.  While Mr. Baumgarten's responses to Defendants'

attempts to obtain access to the file, as well as the court's direct order to produce it,

may be viewed as obstructionist in nature, Defendants have not demonstrated that

absent such access, Defendants will be unable to reconstruct the exact nature of the

Town Court's disposition of Plaintiff's criminal charges which, according to Defendants,

included a condition that Plaintiff not file any civil suit based on the court's dismissal of

the charges, the principle reason for seeking, according to Defendants, production and

---

[22]  In an unsolicited letter to the court, dated October 6, 2004, and not previously filed, Mr. Baumgarten mockingly referred to Ms. Klein Wheaton's effort to obtain the file as "folly" and a "never ending quest."  Letter of Richard L. Baumgarten, Esq., dated October 6, 2004 (with attachment) to Hon. Leslie G. Foschio (Doc. No. 73) at 1.

review of the file.[23]  As noted, Defendants do not claim Plaintiff, or Mr. Baumgarten, are guilty of spoliation of evidence.

It is therefore fair to conclude that had Plaintiff provided an earlier and more accurate explanation why the file could not be produced, Defendants could have attempted to obtain, within the allotted time for discovery under the Scheduling Order, such particulars, if any, by deposition, pursuant to Fed.R.Civ.P. 45, of Mr. Murray, the presiding judge of the Town Court, the prosecutor, or the court clerk, to determine their recollections as to any such condition that may provide a defense to any claim asserted by Plaintiff in this action.  As it is, substantial time has been wasted because Plaintiff in effect sent both Defendants and the court on a veritable 'wild goose chase' for the file. However, as the court, on this record, is unable to find either Plaintiff or Mr. Baumgarten guilty of spoliation of evidence, or a willful refusal to produce the file, severe sanctions such as an adverse inference ruling or dismissal of the Complaint are not warranted at this time.  Therefore, because of the lapse of time since this issue arose, in order to provide Defendants a reasonable opportunity to reconstruct any relevant conditions pertaining to the Town Court's dismissal of Plaintiff's shoplifting charge, it is necessary to amend the Scheduling Order, on a limited basis, to permit such relief.  Accordingly, the court finds there is good cause to amend, *sua sponte*, the

---

[23]  Under New York law, dismissal of a criminal charge in the interest of justice will support a later civil action claim for malicious prosecution provided the reasons for such dismissal "are not inconsistent with the innocence of the accused."  *Cantalino v. Danner*, 754 N.E.2d 164, 167 (N.Y. 2001) (citing *Smith-Hunter v. Harvey*, 734 N.E.2d 750 (N.Y. 2000)).  Thus, under New York law, a dismissal based on considerations of mercy toward the accused or which ends in a compromise with the accused does not support a malicious prosecution claim.  *Id*. (citing cases).  *See also MacFawn v. Kresler*, 666 N.E.2d 1359, 1359-60 (N.Y. 1996) (interest of justice dismissal of theft charge based on court's judgment that facts alleged by information insufficient does not support subsequent malicious prosecution claim). Accordingly, the Town Court's reasons for dismissal of Plaintiff's case are highly relevant to the viability of her state malicious prosecution claim.

Scheduling Order to permit Defendants to conduct, for a period of 45 days following service of this Decision and Order,[24] non-party depositions and related document production, pursuant to Fed.R.Civ.P. 45, directed to the question of the nature, under New York law, of the dismissal of Plaintiff's charges, as judicially ordered by the Town Court and the reasons for such dismissal.[25]

## CONCLUSION

Based on the foregoing, Defendants' motions for sanctions (Doc. Nos. 40 and 41) is GRANTED, in part, and DENIED, in part.  Defendants' affidavits of costs as granted by this Decision and Order shall be <u>filed not later than 10 days</u> following service of this Decision and Order.  Plaintiff's response shall be <u>filed not later than 10 days</u> of such service.  Oral argument shall be at the court's discretion.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2005
         Buffalo, New York

---

[24]  The court has previously awarded Defendants their costs in connection with the motion to compel.

[25]  Plaintiff attached a copy of the relevant minute entry from the Town Court.  Exhibit C to Baumgarten Reply Affirmation, dated September 17, 2004, (Doc. No. 24).  However, the court finds much of the handwritten entry to be indecipherable and, as such, it is unable to determine these questions based on the document.

# APPENDIX

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NAKIESHA JONES,

                         Plaintiff,                   **ORDER**

    v.

                                                    **03-CV-920A(F)**

J.C. PENNY'S DEPARTMENT STORES, INC.,
NICHOLAS A. GOODWIN, PAUL MEERBOTH,
SCOTT PIEL and JANE DOE,

                         Defendants.

Pursuant to the order of the Hon. Richard J. Arcara referring the above case to the undersigned for pretrial procedures and the entry of a scheduling order as provided in Fed.R.Civ.P. Rule 16(b) and Local Rule 16.1(a), and a conference having been held on May 26, 2004 with counsel relative to the matter, it is ORDERED that:

1.      Compliance with the mandatory disclosure requirements found in Rule 26(a)(1) of the Federal Rules of Civil Procedure will be accomplished by **June 15, 2004.**

2.      All motions to join other parties and to amend the pleadings shall be filed on or before **July 7, 2004.**

3.      All fact discovery in this case shall conclude on **September 30, 2004.**  All motions to compel discovery shall be filed on or before **October 8, 2004.**

4.      Plaintiff(s) shall identify any expert witnesses through interrogatories and provide reports pursuant to Fed.R.Civ.P. 26 by **October 15, 2004;** (2) defendant(s) shall identify any expert witnesses through interrogatories and provide reports pursuant to Fed.R.Civ.P. 26 by **November 15, 2004.**  All motions to compel expert discovery shall be filed not later than **November 22, 2004.**

5.      A pretrial conference will be held with the undersigned at 424 U.S. Courthouse, Buffalo, New York on **December 8, 2004 at 11:00 a.m.** to discuss the

possibility of settlement.  **In preparation for the settlement conference, counsel shall consult Local Rule 16.1(c).**  Representatives of the parties shall be available either in person or by telephone conference.  Prior to the conference the parties are expected to exchange a demand and an offer in a good faith effort to settle the case without court involvement.

6.     Dispositive motions, if any, shall be filed no later than **December 30, 2004.**  Such motions shall be made returnable before the Magistrate Judge.

7.     If the case is not settled and if no dispositive motions are then pending, the parties will be directed to meet with Judge Arcara for the purposes of scheduling the case to trial.

8.     No extension of the above cutoff dates will be granted except upon written application, filed prior to the cutoff date, showing good cause for the extension.  Application must be made to the Magistrate Judge.  Moreover, if counsel are of the belief that an intermediate conference with Judge Arcara or the Magistrate Judge would be of assistance in the prompt disposition of the case, such a conference will be scheduled upon application of any party.

The attached guidelines shall govern all depositions.  Counsel's attention is directed to Fed.R.Civ.P Rule 16(f) calling for sanctions in the event of failure to comply with any direction of this court.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     May 27, 2004
           Buffalo, New York

2

## **GUIDELINES FOR DISCOVERY DEPOSITIONS**

(1)   At the beginning of the deposition, deposing counsel shall instruct the witness to ask deposing counsel, rather than the witness's own counsel, for clarifications, definitions, or explanations of any words, questions, or documents presented during the course of the deposition.  The witness shall abide by these instructions.

(2)   All objections, except those which would be waived if not made at the deposition under Fed.R.Civ.P. 32(d)(3)(B), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the court, or to present a motion pursuant to Fed.R.Civ.P. 30(d), shall be preserved.  Therefore, those objections need not and shall not be made during the course of deposition.

(3)   Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court.

(4)   Counsel shall not make objections or statements which might suggest an answer to a witness.  Counsels' statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more.

(5)   Counsel and their witness/clients shall not initiate or engage in private off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.

(6)   Any conferences which occur pursuant to, or in violation of, guideline (5) are a proper subject for inquiry by deposing counsel to ascertain whether there has been any witness-coaching and, if so, what.

(7)   Any conferences which occur pursuant to, or in violation of, guideline (5) shall be noted on the record by the counsel who participated in the conference.  The purpose and outcome of the conference shall also be noted on the record.

(8)   Deposing counsel shall provide to the witness' counsel a copy of all documents shown to the witness during the deposition.  The copies shall be provided either before the deposition begins or contemporaneously with the showing of each document to the witness.  The witness and the witness' counsel do not have the right to discuss documents privately before the witness answers questions about them.

(9)   There shall be only one question at a time put to a witness.  Counsel shall permit the witness to fully answer before propounding subsequent or follow-up questions.  If the witness indicates he or she does not understand the question, counsel shall simply rephrase the question.  There is to be <u>no</u> characterization or

comment by examining counsel as to any answer given by a witness.  Should the answer reasonably appear to counsel to be unresponsive, counsel may so advise the witness and his or her counsel and have the question repeated by the stenographer from the record.

(10)    Examining counsel shall not engage in any argument with opposing counsel as to these issues, rather his objection shall be taken on the record and appropriate relief from this court may be sought upon completion of the examination.  Similarly, counsel for a witness shall not engage in any argument with examining counsel as to the objectionability of any question.  Rather, he may note his objection and permit the witness to answer the question, subject to the objection.

(11)    If a witness or his or her counsel is unclear as to any question, he or she shall so advise counsel and permit the examining counsel an opportunity to rephrase or withdraw the witness' question.  Neither witness nor counsel shall make any comment or engage deposing counsel in an argument (other than grounds therefore) about the nature of the question or the witness' request for clarification.

(12)    Examining counsel shall at no time interrupt a witness while he or she is attempting to answer a question.  Counsel shall await the witness' complete response to a question before advancing any follow-up questions or moving on to a new subject.

(13)    Examining counsel shall refrain from unnecessary on-the-record recitation or lengthy quotations from discovery materials or documents except as is necessary to put specific questions to the witness related to such material or documents.

(14)    Authority: Fed.R.Civ.P. 16, 26(f), 30, 37(a); *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D.Pa. 1993).