UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NAKIESHA JONES,

                  Plaintiff,

     v.

J.C. PENNEY'S DEPARTMENT STORES, INC.,
NICHOLAS GOODWIN, PAUL MEERBOTH,
SCOTT PIEL and JANE DOE,

                  Defendants.
_____

**CERTIFICATION
OF CIVIL CONTEMPT
PURSUANT TO
28 U.S.C. § 636(e)(6)(B)(iii)**

03-CV-920A(F)

APPEARANCES:        DEWEY P. SLOAN, JR., ESQ.
                            Attorney for Plaintiff
                            14 First Avenue SW
                            P.O. Box 501
                            Le Mars, Iowa   51031-0501

                            RICHARD L. BAUMGARTEN, ESQ.
                            Attorney for Plaintiff
                            Box 242
                            Buffalo, New York   14201

                            FELDMAN, KIEFFER & HERMAN, LLP
                            Attorneys for Defendants J.C. Penney's,
                               Goodwin & Meerboth
                            MICHELE K. SNYDER, of Counsel
                            110 Pearl Street, Suite 400
                            Buffalo, New York   14202

                            FREDERICK A. WOLF
                            ERIE COUNTY ATTORNEY
                            Attorney for Defendants Piel and Doe
                            KRISTIN KLEIN WHEATON,
                              Assistant County Attorney, of Counsel
                            69 Delaware Avenue, Suite 300
                            Buffalo, New York   14202

**JURISDICTION**

This case was referred to the undersigned for all pretrial matters pursuant to 28

U.S.C. § 636(b)(1)(A) and (B) by order of the Hon. Richard J. Arcara filed December 19, 2003 (Doc. No. 4).  This Certification for a finding of civil contempt against Richard L. Baumgarten, Esq., Plaintiff's attorney, is based on repeated violations of this court's pretrial order regulating the conduct of depositions in this case.  It is related to this court's Decision and Order filed May 31, 2005 (Doc. No. 75) on Defendants' motions for sanctions pursuant to Fed.R.Civ.P. 37, filed November 3, 2004 by Defendants J.C. Penney, Goodwin and Meerboth, (J.C. Penney Defendant's") (Doc. No. 40), and on November 4, 2004 by Defendant Piel (Doc. No. 41) ("Defendants' motions").

## BACKGROUND and FACTS

The District Judge is referred to the Background and Facts stated in the undersigned's Decision and Order on Defendants' motions, filed May 31, 2005 (Doc. No. 75).  In the Decision and Order, this court granted in part and denied in part Defendants' motion, in particular Defendants' request to dismiss the complaint based on numerous violations of the court's Deposition Guidelines during Plaintiff's deposition, conducted September 30, 2004, committed by Plaintiff's counsel Richard L. Baumgarten, Esq.  This Certification proposes finding civil contempt and penalties against Plaintiff's counsel, Richard L. Baumgarten, Esq., based on Mr. Baumgarten's violation of the Rule 16(b) Scheduling Order (Doc. No. 13), specifically, the court's Deposition Guidelines, Nos. 3 and 4.

## DISCUSSION

28 U.S.C. § 636(e)(6)(B)(iii) provides that a magistrate judge to whom a civil

case is referred for pretrial matters pursuant to 28 U.S.C. § 636(a) or (b) may certify to a district judge conduct constituting a civil contempt.  28 U.S.C. § 636(e)(6)(B)(iii).  Such certification and an order to show cause shall be served upon the person "whose behavior is brought into question," directing such person appear before the district judge to show cause why the person should not be adjudged in "contempt by reason of the facts so certified."  *Id.*  At the show cause hearing, the district judge shall "hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge."  *Id.*

Under Fed.R.Civ.P. 16(f), the court may enforce its scheduling or pretrial orders entered, *inter alia*, for the purpose of "discouraging wasteful pretrial activities" and improving the quality of the trial through more thorough preparation."  Fed.R.Civ.P. 16(a)(3) and (4).  In particular, Rule 16(b) authorizes entry of pretrial scheduling orders which take action with respect to "the control and scheduling of discovery, including orders affecting . . . discovery pursuant to . . . Rule 29 through 37 [of the Federal Rules of Civil Procedures]" (bracketed material added).  Thus, a court is authorized to enter pretrial orders regulating the scheduling and conduct of oral depositions pursuant to Fed.R.Civ.P. 30.  Rule 16(f) further authorizes a district judge, or where authorized by local rule, a magistrate judge, to sanction an attorney for failure to obey a pretrial order entered pursuant to Rule 16, upon motion or *sua sponte*, including the sanction of contempt pursuant to Fed.R.Civ.P. 37(b)(2)(D).  Fed.R.Civ.P. 16(f).  Courts have established and enforced guidelines governing the conduct of depositions similar to the court's Deposition Guidelines in this case.  *See Sheppard v. Beerman*, 1999 WL

1011940, *1 (E.D.N.Y. Sept. 23, 1999) (declining to modify or set aside magistrate judge's rulings pertaining to discovery disputes, including imposition of deposition guidelines, as such rulings were neither clearly erroneous or contrary to law); *see also Hall v. Clifton Precision,* 150 F.R.D. 525, 530 (E.D. Pa. 1993) (enforcing guidelines for conduct of depositions similar to the Guidelines at issue in this case).

The sanction of civil contempt based on a violation of a court's pretrial order regulating the conduct of discovery is permissible where the accused attorney's conduct manifests contemptuous behavior with respect to the court's order. *United States v. Wendy*, 575 F.2d 1025, 1029-30 and n. 12 (2d Cir. 1978) (observing federal courts have inherent power to enforce attorney's compliance with lawful court order through civil contempt sanction). A finding of civil contempt based on a violation of a court order will justify a monetary fine where the conduct is wilful and in bad faith. *E.E.O.C. v. Local 638*, 81 F.3d 1162, 1177 (2d Cir. 1996) (in civil contempt proceeding, monetary sanctions may be used either to coerce compliance with district court's order, or to compensate victim for the contemnor's conduct). The amount of any fine should consider a variety of factors including: (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the sanctions probable effectiveness in bringing about compliance; and (3) the contemnor's financial resources and consequent seriousness of the sanction's burden. *Id.* (citing *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)).

Here, the court's Deposition Guidelines regulating the conduct of oral depositions were specifically included by reference and <u>So Ordered</u> in the May 27, 2004 Rule 16(b) Scheduling Order entered by the court for this case. *See* Doc. No. 13 at 2; Decision

and Order Appendix (underlining added).  Moreover, at the Plaintiff's deposition, conducted September 30, 2004, despite having acknowledged to the court on September 20, 2004 that he had read the court's order, Decision and Order at 13, n. 10, Mr. Baumgarten repeatedly violated Guideline Nos. 3 and 4 during Defendants' conduct of Plaintiff's deposition on September 30, 2004 by Michele K. Snyder, Esq., J.C. Penney Defendants' attorney and Kristin Klein Wheaton, Assistant Erie County Attorney, Defendant Piel's attorney.  A copy of the relevant portions of Plaintiff's deposition transcript is attached as Exhibit A to the Affidavit of Michele K. Snyder, Esq., dated November 3, 2004 (Doc. No. 40) in Support of J.C. Penney Defendants' Motion for Sanctions ("Exhibit A").  Particulars, as to each such violation justifying the recommended finding and adjudication of contempt are set forth in the Snyder Affidavit in Support, and Exhibit A, as follows:

(1)     Mr. Baumgarten's Violations of Deposition Guideline No. 3.

This Guideline provides that the attorney representing the deposed witness "shall not direct or request that a witness not answer a question, unless that counsel has objected to the questions on the ground that the answer is protected by a privilege . . .." *See also* Fed.R.Civ.P. 30(d)(1).

Here, Mr. Baumgarten interrupted Ms. Snyder's question to Plaintiff seeking her social security number.  Snyder Affidavit in Support ¶ 3.  When challenged by Defendant Piel's attorney, Kristin Klein Wheaton, to state a basis for the objection and Mr. Baumgarten "directing you [plaintiff] not to answer your social security number," *id.*, Mr. Baumgarten stated it was based on ". . .  my understanding of — I'll think of the privilege and I'll put it on the record when it comes to mind." *Id.* (underlining added).

Defense counsel immediately objected that Mr. Baumgarten's direction to Plaintiff violated this court's Guidelines to which Mr. Baumgarten responded: "Excuse me, put whatever you want on the record.  And I don't think he [the court] put any guidelines for depositions on the record."  Snyder Affidavit in Support ¶ 4; Exhibit A at 17 LL 9-16.

A second violation by Mr. Baumgarten of Guideline No. 3 occurred when Ms. Snyder attempted to ask Plaintiff about her criminal history.  Snyder Affidavit in Support ¶ 6; Exhibit A at 26-27.  Specifically, Mr. Baumgarten stated that ". . . at this point I'm directing her not to answer."  Despite having just been reminded by Ms. Snyder of the Guideline prohibition directed against such direction to a witness, Mr. Baumgarten went on to state "you [defense counsel] can go discuss it with the judge, if you wish."  *Id.*  Defense counsel again reminded Mr. Baumgarten his conduct was in violation of the court's Guideline No. 3.  *Id.*

Later in the deposition, Mr. Baumgarten violated Guideline No. 3 a third time despite further admonition by Defendants' attorneys.  Specifically, in response to Defendants' questions regarding details of Plaintiff's disorderly conduct conviction, Snyder Affidavit in Support ¶ 8, Mr. Baumgarten again stated ". . . I'll direct [Plaintiff] not to answer."  In response to Ms. Klein Wheaton's objection that "there's no basis to direct her not to answer," Mr. Baumgarten again ignored the objection and replied, "you can discuss it with the judge."  *Id.*; Exhibit A at 122, LL 11-12.  Thus, for a third time, Mr. Baumgarten set himself in a position superior to the court's authority in regulating the conduct of the deposition, without a scintilla of cause, in direct defiance of an applicable court order.  Mr. Baumgarten's repeatedly dismissive attitude toward the court's authority to enter and expect compliance with such orders, designed to curtail abusive

deposition conduct and to promote the objectives established by Rule 16, is patently contemptuous.  Mr. Baumgarten's repeated violations after being warned represents an aggravating circumstance justifying significant punishment.

Of course, the central purpose of Guideline No. 3 is to avoid unnecessary application to the court for judicial intervention to deal with baseless interruptions and interference with the efficient conduct of an oral deposition which directly impairs the ultimate usefulness of the deposition.  Mr. Baumgarten's demonstrated cavalier and scornful attitude toward the court's order and, *a fortiorari,* the salutary purposes for such pretrial orders pursuant to Rule 16(b), manifest a blatant contempt toward the court and its pretrial order.

(2)   Mr. Baumgarten's Violations of Deposition Guideline No. 4.

As relevant, Guideline No. 4 provides that "[c]ounsel shall not make objections or statements which might suggest an answer to a witness."  Decision and Order Appendix.  *See also* Fed.R.Civ.P. 30(d)(1).  Here, the record demonstrates Mr. Baumgarten during Plaintiff's deposition committed at least five violations of Guideline No. 4.[1]

First, in response to a question to Plaintiff by Ms. Snyder, to state in which court Plaintiff was convicted on a prior felony assault charge, before Plaintiff could answer, Mr. Baumgarten interjected that "I'll stipulate that it was Erie County Court before the Honorable Timothy J. Drury."  Snyder Affidavit in Support ¶ 12; Exhibit A at 27, LL 9-17.

---

[1] Ms. Snyder averred that the cited examples of Mr. Baumgarten did not reflect the "frequent[ ] interrupt[ions]" he committed during Plaintiff's deposition, Snyder Affidavit ¶ 21.  However, as Defendants did not include a complete transcript of the deposition, the court is unable to accurately assess the full extent of Mr. Baumgarten's interference with Defendants' conduct of the deposition.

Second, shortly after that exchange, Ms. Snyder asked Plaintiff if she has ever "pled guilty to any other felony or misdemeanors?" Snyder Affidavit in Support ¶ 13. Exhibit A at 28, LL 9-10. Plaintiff answered that she "only had the assault. No, I never had no – it was a violation." *Id.* At that point, Mr. Baumgarten interjected, "The answer is no." Snyder Affidavit in Support ¶ 13; Exhibit A at 28, L 13 (underlining added). Although Ms. Snyder had not propounded any question, Plaintiff then, parroting Mr. Baumgarten, responded further "No." Snyder Affidavit in Support ¶ 13; Exhibit A at 28, L 14. Here, Mr. Baumgarten's unsolicited interjections go beyond making a suggestive statement; rather, Mr. Baumgarten's unsworn assertions represent an attempt to prevent Plaintiff from answering Defendants' questions at all. Again, as Mr. Baumgarten was requested repeatedly to follow the Guidelines, his interruptions should be viewed as unexcused violations warranting a finding of contempt.

Third, Mr. Baumgarten again violated Guideline No. 4 when, after Ms. Snyder objected to his continued violation of the court Guidelines, in response to Ms. Snyder's question to Plaintiff asking whether Plaintiff was claiming damages for wages lost because she did not return to work while she was released on bail on the shoplifting charge in this case. Snyder Affidavit in Support ¶ 14. Specifically, Ms. Snyder asked Plaintiff, "[w]ere you paid for those days of work?" *Id.* Plaintiff answered, "No." *Id.* Ms. Snyder then asked Plaintiff, "Are you making a claim for those [days lost]?" *Id.* Mr. Baumgarten started to interrupt by saying "she's – – – ." *Id.* Ms. Snyder cautioned him stating "I'm asking her." *Id.*; Exhibit A at 87, L 5 (underlining and bracketed material added). Mr. Baumgarten nevertheless persisted in interrupting Ms. Snyder's questioning of Plaintiff stating "Excuse me. Our complaint has not stated a claim for

8

lost wages." *Id.,* L 6-7 (underlining added). Despite this obvious attempt by Mr. Baumgarten to coach his client, Ms. Snyder attempted to obtain Plaintiff's response by repeating the question to which Plaintiff responded, "That's not  – – – we don't have anything stating that." *Id.,* L 11-12 (underlining added).  Again, Mr. Baumgarten displayed contempt for the court's Guideline No. 4 by his refusal to conform his conduct to its restriction on suggestive statements.  In this instance, the suggestive effect of Mr. Baumgarten's violation on Plaintiff's response is patent.

Mr. Baumgarten later engaged in a fourth violation of Guideline No. 4 when Ms. Klein Wheaton asked Plaintiff the reason for her incarceration in the Albion State Correctional Facility.  Snyder Affidavit in Support ¶ 15; Exhibit A at 112, L 13.  In response, Plaintiff stated, "you asked me that question already and I answered it." Snyder Affidavit in Support ¶ 15; Exhibit A at 112, L 14.  Ms. Klein Wheaton nevertheless again asked, "What is the answer please?" *Id.*  At that point, Mr. Baumgarten intervened stating "OK.  We will stipulate it was a parole violation based on a plea to disorderly conduct."  Snyder Affidavit in Support ¶ 15; Exhibit A, LL 17-19. Ms. Klein Wheaton objected to Mr. Baumgarten's interruption and improper attempt to prevent Plaintiff from giving testimony in answer to the question.  Exhibit A at 112, LL 20-23. Plaintiff then testified, consistent with Mr. Baumgarten's "stipulation," "That's what it was.  I'll answer the question.  I was violated for disorderly conduct."  Exhibit A at 113, LL 1-3 (underlining added).

Still refusing to abide by the court's Guideline No. 4, Mr. Baumgarten, for a fifth time, improperly sought to prevent Plaintiff from answering Defendants' counsel's question when Ms. Snyder asked Plaintiff what role Mr. Rodgers Hicks "play[s] with

respect to your litigation to your understanding?"  Snyder Affidavit in Support at 16; Exhibit A at 135, LL 17-18.  Plaintiff responded, "What litigation?"  Exhibit A at 135, L 19.  In response, Ms. Snyder stated "This particular case," and then asked Plaintiff, "Is Mr. Hicks serving as your attorney?"  Snyder Affidavit in Support ¶ 16; Exhibit A 135, LL 20-21.  At that point Mr. Baumgarten interjected, "Mr. Hicks is my paralegal."  Snyder Affidavit in Support ¶ 16; Exhibit A 135, LL 22-23.  Ms. Snyder promptly objected to this improper conduct stating to Mr. Baumgarten, "I'm asking the witness."  Ms. Snyder again queried Plaintiff, "So what's your understanding of Mr. Hicks' [sic] role?," to which Plaintiff, unsurprisingly, responded, "He's Mr. Baumgarten paralegal."  Snyder Affidavit in Support ¶ 16; Exhibit A at 136, LL 1-5.  Asked by Snyder if Plaintiff knew "that [Hicks's status with Baumgarten] before Mr. Baumgarten answered my question?," Plaintiff insisted she did.  Exhibit A at 136, LL 6-8.  A more clear cut and wilful violation of both Guideline No. 4 and Rule 30(d)(1) is difficult to imagine, underscoring Mr. Baumgarten's persistent and deliberate disobedience of a court order constituting contemptuous conduct.

    (3)    <u>Other Violations of Guideline No. 4</u>.

Eight other instances during Plaintiff's deposition constitute evidence that Mr. Baumgarten's two fold strategy for conducting Plaintiff's deposition was to improperly influence Plaintiff, whenever possible, in the course of the deposition, through unwarranted interruptions and suggestive comments, and to prevent Plaintiff from answering, uncoached by Mr. Baumgarten, Defendants' questions to Plaintiff whenever such questions called for responses potentially harmful to Plaintiff's case.

| | | |
|---|---|---|
| (1) | Ms. Snyder: | Have you [Plaintiff] ever been deposed before? |
| | Mr. Baumgarten: | Have you had a deposition such as what we have right here in a civil case, a deposition like what we have here? |
| | Plaintiff: | Have I? |
| | Ms. Snyder: | You can't ask Mr. Baumgarten. I'm asking what you remember. |

Exhibit A at 18, LL 2-9 (bracketed material added).

| | | |
|---|---|---|
| (2) | Ms. Snyder: | . . . and I'm asking if you've [Plaintiff] ever sat through a deposition before today. |
| | Mr. Baumgarten: | If you know. And if you don't know, say you don't know. |
| | Ms. Snyder: | Let's clarify that so we don't have the interjection . . .. If you don't know, say I don't know. |
| | Plaintiff: | I don't recall. If I did, it wasn't on my behalf. |
| | Mr. Baumgarten: | Nakiesha, I don't recall is an appropriate answer if your don't recall. |

Exhibit A at 18, LL 18-19, L 6 (bracketed material added).

| | | |
|---|---|---|
| (3) | Ms. Klein Wheaton: | I'm going to object. |
| | Ms. Snyder: | I'm going to object too. |
| | Ms. Klein Wheaton: | – – as to Ms. Snyder's previous objection and as to Mr. Baumgarten's counseling the witness – – coaching the witness I should say. |
| | Mr. Baumgarten: | <u>I'm asking her if reading that might help her refresh her recollection</u>. |
| | Ms. Klein Wheaton: | You [Baumgarten] should be objecting as to form or asserting a privilege. |

Exhibit A at 90, LL 1-10 (underlining and bracketed material added).

| | | |
|---|---|---|
| (4) | Ms. Snyder: | OK. Now ma'am, other than the emotional injuries that we've talked about and the out-of-pocket expenses to your attorney, did you suffer any other injuries as a result of this incident? |
| | Plaintiff: | What do you mean? |
| | Ms. Snyder: | Other than the emotional injuries we've talked about and the money that you've paid your attorney, did you suffer any other injuries as a result of this incident? |
| | Mr. Baumgarten: | <u>Okay</u>. |
| | Ms. Snyder: | Note for the record that Mr. Baumgarten is <u>apparently referring to paragraph forty-one</u>[2] and <u>indicating</u> to the <u>witness</u> some <u>text</u> in <u>the complaint</u>, and <u>note my objection</u> thereto, <u>and also note</u> that that <u>violates Judge Foschio's guidelines for discovery depositions</u>. Ma'am, I'm just asking you, not your attorney and not anything that he is pointing out to you, other than those injuries, the emotional injuries we've talked about and the out-of-pocket expenses, are you alleging any other injuries as a result of this incident? |
| | Mr. Baumgarten: | <u>Excuse me. Do you need that to refresh your recollection</u>? |
| | Plaintiff: | Yes. |

Exhibit A at 88, LL 22-23; at 89, LL 1-23 (underlining added).

| | | |
|---|---|---|
| (5) | Ms. Snyder: | . . . I'm going to ask you to read paragraph thirty-three [of the Complaint] to yourself, ma'am. Just read it to yourself, please. |
| | Mr. Baumgarten: | <u>Do you see it</u>? |
| | Plaintiff: | Yes. |

Exhibit A to 87, LL 15-19 (underlining and bracketed material added).

---

[2] Paragraph 41 of the Complaint alleges state action against Defendants Goodwin and Meerboth based on their wilful participation with Defendants Piel and Doe in violation of Plaintiff's civil rights.

| | | |
|---|---|---|
| (6) | Ms. Snyder: | Okay.  Can we agree that it indicates in there that you paid seven hundred and fifty dollars? |
| | Plaintiff: | It doesn't say. |
| | Mr. Baumgarten: | <u>Do</u> <u>you</u> <u>understand</u> <u>her</u> <u>question</u>, Nakiesha? |

Exhibit A at 88, LL 2-6.

| | | |
|---|---|---|
| (7) | Ms. Snyder: | As you read paragraph thirty-three of the Complaint, does it indicate to you <u>that</u> <u>you</u> <u>paid</u> seven hundred and fifty dollars to Mr. Murray? |
| | Mr. Baumgarten: | Does it <u>indicate</u> that is <u>says</u> <u>you</u> <u>paid</u> seven hundred fifty dollars? |
| | Plaintiff: | Yeah, that's what it <u>say</u>. |
| | Ms. Snyder: | Let me ask <u>my</u> question again, <u>not</u> <u>Mr. Baumgarten's</u> <u>question</u>.  As you read paragraph thirty-three of the Complaint, does it indicate to you that you paid Mr. Murray seven hundred and fifty dollars? |
| | Plaintiff: | Yeah, that what that say. |

Exhibit A at 88, LL 10-21 (underlining added).

(8) Finally, while Ms. Snyder attempted to question Plaintiff regarding the sequence of events, preceding her arrest, as they allegedly occurred at Defendant J.C. Penney's store, Ms. Snyder asked Plaintiff:

> . . . can we agree that the person on the [video] tape at this particular junction fifteen thirty-four fifty something – –

| | |
|---|---|
| Mr. Baumgarten: | <u>I'm</u> <u>not</u> <u>going</u> <u>to</u> <u>stipulate</u> that that's the actual time or the authenticity as you do, I'm just going to stipulate that this tape says fifteen thirty-four, but that it is actually in this tape. [*sic*]. |

Snyder Affidavit in Support ¶ 21; Exhibit A at 94, LL 2-99 (underlining added).

In each of these eight instances, Mr. Baumgarten demonstrates his complete

disregard and, thus, contempt for the court's Guideline No. 4.  Mr. Baumgarten's blatant attempt to disrupt the flow of Defendants' questioning coloring the Plaintiff's response, and his brazen effort to insinuate himself into the role of giving unsworn testimony justify severe sanctions.  Such contemptuous behavior is starkly presented by Mr. Baumgarten's statement in response to Ms. Snyder's questioning of Plaintiff regarding the video surveillance tape of the episode involving Plaintiff, Discussion, *supra*, obviously a highly relevant piece of evidence and testimony, that he was not going to make any stipulation regarding the tape.  Manifestly, no one had asked Mr. Baumgarten to make any such stipulation, and his confusing discourse about the authenticity of the tape, in the absence of any prior application for a protective order pursuant to Fed.R.Civ.P. 26(c), can only be understood as a thinly disguised attempt to alert Plaintiff against making potentially damaging admissions about her activity in the store as recorded on the tape.  Such conduct, calculated to undermine the truth seeking purpose of the deposition, is reprehensible and merits the strong disapproval of this court through imposition of the contempt sanction.  *Calhoun v. Mastec, Inc.*, 2004 WL 1570302 *4-5 (W.D.N.Y. June 1, 2004) (attorney's conduct in instructing client to leave deposition in violation of court order, warranted sanctions for contempt; *Mahler v. United States*, 195 F.Supp.2d. 379, (D.Conn. 2002) (awarding sanctions against attorney whose failure to provide opposing party with court-order discovery rendered deposition "functionless").

     Depositions are a time honored discovery device integral to the truth seeking mission of the courts, vital to its ability to administer justice fairly and efficiently.  *See Sadowski v. Technical Career Institutes, Inc.*, 1994 WL 240546, *1 (S.D.N.Y. May 27,

1994) (use of depositions is often crucial to attorney's assessment of opposing party's case and to trial preparation); *Cummings v. Sony Music*, 2003 WL 22889496, *6 (S.D.N.Y. Aug. 28, 2003) ("For over fifty years, the deposition – discovery provisions of the Federal Rules of Civil Procedure have been viewed as integrated procedural devices designed to enable parties to discover the true facts underlying a claim.") (citing *Hickman v. Taylor*, 329 U.S. 495, 505 (1947)).  Thus, judicial enforcement of rules to promote productive deposition practice is essential to achieving the salutary objectives of efficient pretrial preparation and the quality of trial.  Fed.R.Civ.P. 16(a)(3) and (4).  In the absence of deposed witnesses to testify at trial, depositions are valid substitutes for their trial testimony, *Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir. 1998) ("Under [Fed.R.Evid.] 804(b)(1), the prior testimony of a person who (a) is unavailable, and (b) has testified at a proper deposition at which the party against whom the testimony is offered had an opportunity and similar motive to cross-examine him, is not excluded by the hearsay rule."), *see* Fed.R.Evid. 804(b)(1) (hearsay exception for deposition of an unavailable witness); 1007 (admissibility of deposition testimony to prove content of documents, recordings or photos), and may significantly affect the fact finder's judgment on the fundamental issue of credibility when successfully employed as a litigation weapon on cross-examination.  *See* Fed.R.Civ.P. 30(c) ("Examination and cross-examination of deposed witnesses may proceed <u>as permitted at trial</u> under . . . the Federal Rules of Evidence . . ..").  *See Nash v. Heckler,* 1984 WL801, (W.D.N.Y. 1984) ("oral [deposition] examination of a witness is usually favored because it allows cross-examination of an evasive or hostile witness") (citing *In re China Merchants Steam Nav. Co.,* 259 F.Supp 75, 78 (S.D.N.Y. 1966) (observing that although a

deposition may be taken on written interrogatories, "[t]he oral examination of witnesses is usually favored, however, because it allows cross-examination of 'evasive, recalcitrant or hostile' witnesses.")).  Thus, the federal rules recognize the close analog between examination of a deposition witness and giving testimony at trial, and, as such, depositions are essential to the fair administration of justice.  The court's Deposition Guidelines are, accordingly, intended to protect that vital purpose by forbidding attorney conduct during depositions that would not be tolerated if a witness testified at trial.  The record here is replete with Mr. Baumgarten's repeated violations of the Guidelines fully meriting the sanction of contempt as authorized by Rule 16(f).

Accordingly, in order to adequately punish Mr. Baumgarten for his repeated acts of contempt and to send a strong and unequivocal message to like minded potential offenders as a strong deterrence against future violations, it recommended that for each of the three violations of Guidelines No. 3 as found by this court, Discussion, *supra*, at 5-7, Mr. Baumgarten be fined the amount of $1,000 for a total of $3,000.  For each of the five violations of Guideline No. 4 as found by this court, Discussion, *supra*, 7-10, it is further recommended that Mr. Baumgarten be fined $1,000 for a total of $5,000.  For each of the additional eight violations of Guideline No. 4 and found by this court, Discussion, *supra*, 10-13, it is recommended that Mr. Baumgarten be fined the amount of $500 for each violation for a total of $4,000.

## CONCLUSION

Based on the foregoing, Mr. Baumgarten should be required to show cause before the presiding District Judge why he should not be held in contempt for the

sixteen violations of this court's Deposition Guideline Nos. 3 and 4 as found by the court in the total amount of $12,000, pursuant to 28 U.S.C. § 636(e)(B)(iii).

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2005
      Buffalo, New York