UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NAKIESHA JONES,

|  |  |  |
|---|---|---|

                          Plaintiff,

       v.

J.C. PENNEY'S DEPARTMENT STORES, INC.,
NICHOLAS A. GOODWIN, J.C.Penney's Employee,
PAUL MEERBOTH, J.C. Penney's Employee,
SCOTT PIEL, Erie County Sheriff Officer,
JANE DOE, an unidentified female Erie County
 Sheriff Officer,

                          Defendants.

_____

**REPORT
and
RECOMMENDATION**

**03-CV-920A(F)**

APPEARANCES:      RICHARD L. BAUMGARTEN, ESQ.
                             Attorney for Plaintiff
                             P.O. Box 242
                             Buffalo, New York 14201

                             FELDMAN, KIEFFER & HERMAN LLP
                             Attorneys for Defendants J.C. Penney,
                              Goodwin and Meerboth
                             MICHELE K. SNYDER, of Counsel
                             The Dun Building
                             110 Pearl Street,
                             Suite 400
                             Buffalo, New York 14202

                             LAURENCE K. RUBIN
                             Erie County Attorney
                             Attorney for Defendant Piel
                             KRISTIN KLEIN WHEATON
                             Assistant County Attorney, of Counsel
                             69 Delaware Avenue
                             Suite 300
                             Buffalo, New York 14202

## **JURISDICTION**

This action was referred to the undersigned by Honorable Richard J. Arcara on

December 19, 2003 for all pretrial matters, including report and recommendation on dispositive motions.  The matter is presently before the court on Defendants' joint motion for summary judgment (Doc. No. 143), filed May 11, 2006.

## BACKGROUND

Plaintiff Nakiesha Jones ("Plaintiff" or "Jones"), who is African-America, commenced this civil rights action on July 9, 2003 in New York Supreme Court, Erie County, alleging that on March 29, 2002, after shopping in Defendant J.C. Penney's Stores, Inc. ("J.C. Penney" or "the store"), store at the Eastern Hills Mall in Clarence, New York, Defendants store employees Nicholas A. Goodwin ("Goodwin") and Paul Meerboth ("Meerboth") ("the Store Defendants"), along with Defendant Erie County Sheriff Deputies Scott Piel ("Piel") and Jane Doe ("the County Defendants"), racially discriminated against Plaintiff by arresting and prosecuting Plaintiff for shoplifting.  In particular, Plaintiff asserts seven causes of action under federal civil rights laws and New York law including (1) malicious prosecution under 42 U.S.C. § 1983 ("§ 1983"), and New York common law ("First Cause of Action") ; (2) false imprisonment under § 1983 and New York common law ("Second Cause of Action"); (3) abuse of process under § 1983 and New York common law ("Third Cause of Action"); (4) negligence in hiring and training under New York common law ("Fourth Cause of Action"); (5) false arrest and conspiracy to deprive Plaintiff of constitutional rights under § 1983 ("Fifth Cause of Action"); (6) deprivation of equal rights under 42 U.S.C. § 1981 ("§ 1981") ("Sixth Cause of Action"); and (7) conspiracy to interfere with Plaintiff's civil rights and negligent failure to prevent such alleged conspiracy in violation of 42 U.S.C. §§ 1985 ("§

2

1985") and 1986 ("§ 1986") ("Seventh Cause of Action").

On December 8, 2003, Defendants removed the matter to this court pursuant to 28 U.S.C. § 1441(b).  Notice of Removal (Doc. No. 1).  Answers to the Complaint were filed on December 15, 2003, by Defendant Piel ("Piel") (Doc. No. 2), and Defendant's J.C.Penney, Goodwin and Meerboth (Doc. No. 3).

A Scheduling Order filed May 27, 2004, established September 30, 2004 as the deadline for discovery and December 30, 2004, as the filing deadline for dispositive motions.  Thereafter, numerous discovery and other motions irrelevant to resolution of Defendants' joint summary judgment motion were filed, and the time to file dispositive motions was extended to May 17, 2006.  March 30, 2006 Minute Entry.

As noted, on May 11, 2006, Defendants filed their joint motion for summary judgment ("Defendants' Motion" or "the motion").  In support of the motion, the Store Defendants filed a Statement of Facts pursuant to Fed. R. Civ. P. 56 (Doc. No. 144) ("Defendants' Fact Statement"), an Appendix of Exhibits to the Joint Statement of Facts Pursuant to Local Rule 56.1 (Doc. No. 145) (Defendants' Exh. __."), Defendant Piel's Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 146) ("Defendant Piel's Memorandum"), and Defendants J.C. Penney, Nicholas Goodwin, and Paul Meerboth's Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 147) ("Store Defendants' Memorandum").

In opposition to Defendants' motion, on August 16, 2006, Plaintiff filed a Statement of Material Facts in Dispute (Doc. No. 162) ("Plaintiff's Fact Statement").  On August 21, 2006, Plaintiff further filed a volume of exhibits in support of Plaintiff's Fact Statement (Doc. No. 163) ("Plaintiff's Exh. __").

On August 30, 2006, Defendants filed in further support of Defendants' Motion J.C. Penney, Nicholas Goodwin, Paul Meerboth and Scott Piel's Joint Reply Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 165) ("Defendants' Reply").   Oral argument was deemed unnecessary.

Based on the following, Defendants' joint motion for summary judgment should be DENIED.

## FACTS[1]

On March 29, 2002, while Plaintiff Nakiesha Jones was shopping in the J.C. Penney store in Eastern Hills Mall ("the mall")  in Clarence, New York, where Defendants Goodwin and Meerboth were employed as loss prevention officers.  At 3:30 P.M., Meerboth, who was operating a video surveillance camera at the store as part of the store's routine surveillance, observed Plaintiff carrying a large black bag shopping in the store's women's department.  Meerboth maintains he continued to observe Plaintiff select clothing items from the store's display racks without checking price tags, draping them over her arms on top of the black bag.  Among the items Meerboth observed Plaintiff select were three pairs of dark colored slacks, one pair of light colored or tan slacks, and a ladies' shirt.  Plaintiff then proceeded into the women's fitting room, emerging several minutes later with keys in her hand.  At that time, Plaintiff's black bag appeared to Meerboth fuller than when she entered the fitting room.  Meerboth also observed a white price tag similar in size and color to the price tag attached to the

---

[1] Taken from the pleadings and motion papers filed in this action.

clothing Plaintiff had carried into the fitting room sticking out of the bag.  Meerboth watched as Plaintiff returned two pairs of slacks and the ladies' shirt to the display racks, leaving two items, *i.e.*, two pairs of dark-colored slacks, unaccounted for. Plaintiff then exited the store, and Meerboth asked Goodwin to review the surveillance tape while Meerboth proceeded to the women's fitting room to check the stalls for the unaccounted for articles of clothing.  Upon reviewing the surveillance tape, Goodwin concurred with Meerboth's observations.

Meerboth immediately inspected the women's fitting rooms, but did not find the two unaccounted for articles of clothing; rather, all of the fitting rooms were empty and there were no nearby clothing racks for returning unwanted clothing.  After contacting Goodwin by radio to advise that the missing clothing had not been located, Meerboth and Goodwin left the store and entered the mall to search for Plaintiff, splitting up to cover more ground.

Meanwhile, after leaving the J.C. Penney store, Plaintiff proceeded to the Kaufmann's store ("Kaufmann's"), also located in the mall.  Goodwin observed Plaintiff in Kaufmann's while Meerboth, who was unable to find Plaintiff, returned to the J.C. Penney loss prevention office and resumed his regular duties.  Goodwin advised Kaufmann's loss prevention employees that Jones was suspected of shoplifting items from J.C. Penney earlier that day, and then returned to the J.C. Penney loss prevention office.  Shortly thereafter, Goodwin received a telephone call from Kaufmann's loss prevention employee Laura Leahy ("Leahy") who advised that a person matching Plaintiff's description was being detained in Kaufmann's loss prevention office on suspicion of shoplifting three shirts.

Goodwin and Meerboth exited the J.C. Penney store and proceeded to Kaufmann's loss prevention officer where they encountered Leahy, an unidentified male Kaufmann's loss prevention employee, Plaintiff, and Erie County Sheriff Deputy Scott Piel ("Deputy Piel").  Deputy Piel had not been summoned to Kaufmann's by either Goodwin or Meerboth for shoplifting from the J.C. Penney store but, rather, had stopped to visit with his friend, Leahy, who informed Piel that Plaintiff was being detained for shoplifting at Kaufmann's, that Kaufmann's intended to "civilly" prosecute Plaintiff.  Leahy requested Piel leave Kaufmann's, and Piel obliged.

Plaintiff had with her inside the Kaufmann's loss prevention office the same large, black bag Plaintiff had carried in the J.C. Penney store.  Goodwin looked inside the bag, but did not see the two pairs of pants that were missing from J.C. Penney following Plaintiff's earlier visit and which Plaintiff denied taking.  Documents produced by Kaufmann's indicate Plaintiff was observed by Kaufmann's loss prevention employees selecting clothing from display racks located in Kaufmann's junior's department, entering the fitting room and exiting the fitting room without the clothing Plaintiff was observed to have carried in.  A subsequent inspection of the fitting room revealed three empty hangers, and three shirt were found in a bag.  Plaintiff stated that she took the shirts for Easter because she had recently lost her job.  In exchange for Plaintiff's agreeing not to enter a Kaufmanns' store for two years, Kaufmann's did not file criminal charges against Plaintiff.  Goodwin then requested Deputy Piel to return to the J.C. Penney loss prevention office to review the surveillance tape to determine if there was probable cause to arrest Plaintiff and Piel agreed.  Goodwin and Meerboth escorted Plaintiff from Kaufmann's loss prevention officer to the J.C. Penney loss

6

prevention office where Deputy Piel joined them.

Goodwin, Meerboth and Deputy Piel reviewed the surveillance tape and Piel advised there was probable cause to arrest Plaintiff.  While Meerboth completed an incident report in accordance with the store's policy, Goodwin completed a supporting deposition and Piel completed an arrest report and accusatory information.  Plaintiff was then arrested and charged with petit larceny, and transported to jail where Plaintiff remained for three hours until bail, in the amount of $ 250, was posted, and Plaintiff was released that same day.  The two unaccounted for pairs of slacks were never recovered.

Plaintiff, represented by Glenn E. Murray, Esq. ("Murray"), was arraigned on the charge be fore Clarence Town Justice William A. Waible ("Justice Waible") in Clarence Town Court on April 16, 2002.  At Plaintiff's final court appearance on the shoplifting charge on July 16, 2002, Justice Waible dismissed the charge in the interest of justice, over the objection of Plaintiff who, through Mr. Murray, sought a dismissal on the merits, but did not file any motion requesting such relief.


## DISCUSSION

**1.     Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The

court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex, supra*, 477 U.S. at 322; *see Anderson*, *supra*, at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Rattner*, *supra*, 930 F.2d at 209.

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of*

*America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary

judgment has made a properly supported showing as to the absence of any genuine

issue as to all material facts, the nonmoving party must, to defeat summary judgment,

come forward with evidence that would be sufficient to support a jury verdict in its favor.

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Although a summary judgment motion may be made with or without supporting

affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P.

56(a).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific facts showing that there
> is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided

in Rule 56, the Rule does not impose on the party opposing summary judgment an

obligation to come forward with affidavits or other admissible evidence of his own."  *St.*

*Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (reversing granting of summary

judgment in favor of defendant because defendant failed to allege factual basis for

assertions contained in defendant's affidavit such that plaintiff, as the party opposing

summary judgment, was not required to adduce evidence to defeat summary judgment

and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the

statements, rather than to their admissibility).

**2.      Federal Causes of Action**

Plaintiff asserts causes of action under federal civil rights statutes, including 42 U.S.C. § 1981, 1983, 1985 and 1986.[2]  Specifically, under § 1983, Plaintiff alleges malicious prosecution (First Cause of Action), false imprisonment (Second Cause of Action), abuse of process (Third Cause of Action), and false arrest (Fifth Cause of Action) in violation of her Fourth Amendment rights.  Under § 1981 (Sixth Cause of Action), Plaintiff alleges deprivation "of the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . . based upon intentional and deliberate racial animus," violation of the Equal Protection Clause of the Fourteenth Amendment.  Complaint[3] ¶¶ 52-53.  Plaintiff also alleges that, under § 1985, Defendants conspired to interfere with his civil rights and, under § 1986, Defendants neglected to act to prevent such conspiracy (Seventh Cause of Action).

**A.      Plaintiff's § 1983 Claims**

Although Plaintiff has denominated her civil rights claims as in violation of 42 U.S.C. § 1983, "Section 1983 'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3

---

[2] Plaintiff's claims under § 1983 essentially are against Defendant Erie County Sheriff Deputy Piel, whereas Plaintiff claims that the Store Defendants conspired to violate Plaintiff's civil rights in violation of § 1985.

[3] A copy of the Complaint is attached as Exhibit A to the Notice of Removal (Doc. No. 1).

(1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 394, (1989); and *Baker*, *supra*, at 140.)  Here, Plaintiff's federal civil rights claims allege infringement of Plaintiff's rights under the Fourth(false arrest and imprisonment), and Fourteenth Amendment (selective prosecution, malicious prosecution, and abuse of process).

Pursuant to § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Infringement of a federal right must be alleged in asserting a §1983 civil rights claim. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  In particular, § 1983 provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action."  *Tancredi v. Metropolitan Life Insurance Co.*, 316 F.3d 308, 312 (2d Cir. 2003).  *See United States v. International Brotherhood of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.").  Preliminarily, the court observes that Plaintiff sues both Deputy Piel and the

11

Store Defendants under § 1983, despite the well-settled law that private actors generally cannot be sued under § 1983 absent a showing of official involvement.

"In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be fairly attributable to the state." *Tancredi*, *supra*, 316 F.3d at 312 (citing *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 51 (1999)).  "Conduct that is ostensibly private can be fairly attributable to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Tancredi*, *supra* (citing *Brentwood Academy v. Tennessee Secondary School Athletics Ass'n*, 531 U.S. 288, 295 (2001) (quotation marks and further internal citations omitted)).  Specifically, "[s]tate action may properly be found where the state exercises 'coercive power' over, is 'entwined in [the] management or control' of, or provides 'significant encouragement, either overt or covert' to, a private actor, or where the private actor 'operates as a willful participant in joint activity with the State or it agents,' is 'controlled by an agency of the State ,' has been delegated a 'public function' by the state, or is 'entwined with governmental policies.'" *Tancredi*, *supra*, 316 F.3d at 313 (quoting *Brentwood Academy*, *supra*, at 296).  Moreover, "[a] mere conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

"Generally, the acts of private security guards hired by a store, do not constitute state action under § 1983," with two exceptions, including when private guards either are given the authority of state law, or wilfully participate in the joint activity of the State

or its agents." *Josey v. Filene's, Inc.*, 187 F.Supp.2d 9, 16 (D.Conn. 2002).  Courts

within the Second Circuit have repeatedly held that store security personnel are not

state actors when they detain or call for the arrest of suspected shoplifters.  *See*

*Prowisor v. Bon-Ton, Inc.*, 426 F.Supp.2d 165, 170 (S.D.N.Y. 2006) (holding store

security personnel's telephone call to police to arrest suspected shoplifter "does not

constitute state action absent special circumstances, *i.e.*, guards sworn as 'special

patrolman' or cooperative interactions of guards and police"); *Moher v. Stop & Shop.*

*Cos.*, 580 F.Supp. 723, 725-26 (D. Conn. 1984) (stating alleged shoplifter claiming §

1983 violation that absent any indication in the plaintiff's complaint that the defendant

security guard's actions were undertaken 'under color of law,' the plaintiff's remedy was

in state court for the wrong allegedly done to her); *Newman v. Bloomingdale's*, 543

F.Supp. 1029, 1032 (S.D.N.Y. 1982) (complaint alleging only that 'the police, by

arresting and detaining an individual accused of shoplifting solely on the oral complaint

of store personnel . . . does not allege facts sufficient to make the store's conduct the

'state action' which is essential to state a claim under 42 U.S.C. § 1983"); *Iodice's*

*Estate v. Gimbels, Inc.*, 416 F.Supp. 1054, 1055 (E.D.N.Y. 1976) (stating that a security

guard's action "is not sufficient to bridge the gap between private and State action . . .

This 'shopkeepers' privilege' is insufficient to transform defendants' conduct into acts

under color of state law").  *See also Guiducci v. Kohl's Department Stores*, 320

F.Supp.2d 35, 37 (E.D.N.Y. 2004) (holding New York statute permitting as defense to

such torts as false imprisonment a retailer's reasonable detention of person attempting

to shoplift did not convert store's security guard into state actor for § 1983 liability).

   In the instant case, there is no evidence in the record supporting a finding that

the Store Defendants actions in detaining and calling for the arrest of Plaintiff for

suspected shoplifting constituted state action under § 1983.  Nor is there any evidence

either establishing, or raising an issue of fact as to whether the Store Defendants were

given the authority of state law, or wilfully participated in the joint activity of the State or

its agent, *i.e.*, Deputy Piel.  *Josey*, *supra*, 187 F.Supp.2d at 16.  *See Tancredi*, *supra*,

316 F.3d at 313 (requiring "close nexus" between state and private entity, such as

coercive power or control over, or significant encouragement the private actor, the

private actor's willful participation in joint activity with the state, the delegation of a

public function to a private actor, or the entwining of private action with governmental

policies).  Rather, the Store Defendants are merely alleged to have acted in concert

with Deputy Piel, Complaint, ¶¶ 13, 24, 35, 44, 47, 56, which is insufficient to support a

§ 1983 claim against the Store Defendants so as to defeat summary judgment.

*Ciambriello*, *supra*, 292 F.3d at 324 (§ 1983 conspiracy theory claim against private

entity requires facts demonstrating private entity acted in concert with state actor to

commit unconstitutional act); *Prowisor*, *supra*, 426 F.Supp.2d at 170 (holding no state

action where store's private security guard detains suspected shoplifter and merely

called police to have suspected shoplifter arrested).

The absence of any indication that the Store Defendants' conduct in detaining

and calling for the arrest of Plaintiff constituted state action requires summary judgment

be granted as to the § 1983 claims in their entirety as to the Store Defendants.

*Prowisor*, *supra*, 426 F.Supp.2d at 170.  Nevertheless, as the instant action is before

the undersigned for a Report and Recommendation, should Chief Judge Arcara find

there is an issue of fact as to whether the Store Defendants' conduct in detaining and

calling for Plaintiff's arrest constituted state action, the undersigned further considers the merits of the individual § 1983 claims as to the Store Defendants as well as to Deputy Piel.

### 1.      Plaintiff's Selective Prosecution Claim

Although not specifically denominated as a selective prosecution claim, Plaintiff alleges her Fourteenth Amendment right to equal protection was violated when Defendants, motivated by racial bias and animus, prosecuted her for shoplifting.  *See*, *e.g.*, Complaint ¶¶ 16-21, 25, 41, 49, 52, 54 (alleging that Plaintiff's race was true motivation for Defendants' decision to target Plaintiff for video security surveillance, and to detain, arrest and prosecute Plaintiff on shoplifting charges).[4]  Defendants argue that Plaintiff has failed to produce any evidence suggesting that any of the challenged conduct was motivated by racial animus, Defendant Piel's Memorandum at 12-13; Store Defendants' Memorandum at 18-22; Defendants' Reply at 3-4, but have not directly addressed the equivocal selective prosecution claim.

"In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'"  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).  Probable cause is not, however, a complete defense to a Fourteenth Amendment selective prosecution claim

---

[4] The term "selective prosecution" does not appear anywhere within the Complaint.

but, rather, is evidence to be considered in determining the validity of such claim and the prosecutor's discretion is subject to constitutional constraints including the Fourteenth Amendment Equal Protection Clause.  *See Armstrong*, *supra*, 517 U.S. at 464 (discussing claim for selective prosecution by federal prosecutor in context of "the equal protection component of the Due Process Clause of the Fifth Amendment"); *Cobb v. Pozzi*, 363 F.3d 89, 109-10 (2d Cir. 2004) (discussing county corrections officers' claim for selective prosecution in context of disciplinary proceedings brought by county corrections commissioner and chief under the Fourteenth Amendment's Equal Protection Clause); *Harlen Associates v. Incorporated Village of Mineola*, 273 F.3d 494, 499-503 (2d Cir. 2001) (discussing claim for selective enforcement based on denial of special use permit application in context of Fourteenth Amendment's Equal Protection Clause).  "The Equal Protection Clause requires that the government treat all similarly situated people alike."  *Harlen Assocs.*, *supra*, at 499 (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  As such, although discretionary, the decision to prosecute "may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'"  *Armstrong*, *supra*, at 465 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

"The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'"  *Armstrong*, *supra*, 517 U.S. at 465.  A successful selective prosecution claim requires the plaintiff "show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

16

*Cobb*, *supra*, 363 F.3d at 110 (citing *Harlen Assocs.*, *supra*, 273 F.3d at 499).  "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."  *Armstrong*, *supra*, at 465. Selective prosecution claims have been rejected where the plaintiff failed to show that the challenged prosecution practice did not exist exclusively among a particular class, or the relevant law was not enforced with regard to offenders of a race different than that of the plaintiff.  *Id*. at 466.  To illustrate, in *Armstrong*, *supra*, the Court held that a study submitted by the plaintiff as evidence in support of a selective prosecution claim, listing 24 defendants by race, whether each defendant was prosecuted for dealing cocaine and crack cocaine, and the status of each criminal case, did not constitute evidence establishing the essential elements of a selective prosecution claim that blacks were singled out for prosecution of crack cocaine dealing offenses because the study failed to identify individuals who were not black, yet could have been prosecuted for offenses for which the plaintiff were charged, but were not.  *Armstrong*, *supra*, at 470.  *Compare Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886) (holding selective enforcement claim successfully established by plaintiff, a Chinese national, who demonstrated that an ordinance prohibiting the operation of laundries in wooden buildings was enforced against Chinese nationals, but not against other laundry shop owners by submitting evidence that 200 applications by Chinese subjects for permits to operate laundry facilities in wooden buildings were denied, but 80 such applications by individuals who were not Chinese were granted).  Further, a showing of failure to prosecute similarly situated persons but for racial classification is an "absolute requirement" for a selective prosecution claim based on race.  *Armstrong*, *supra*, at

466.

In the instant case, the record is utterly devoid of any evidence demonstrating that Defendants selectively prosecuted African-Americans for shoplifting, while not pursuing similar charges against white shoplifters.  As such, regardless of whether Plaintiff's arrest and prosecution was supported by probable cause, her selective prosecution claim fails.  Summary judgment in favor of Defendants should be GRANTED on this aspect of the Complaint.


## 2. Plaintiff's Fourth and Fourteenth Amendment Claims Based on False Arrest and Imprisonment

Plaintiff claims that Defendants, motivated by racial bias and animus based on Plaintiff's race, apprehended and arrested Plaintiff on false charges.  Complaint ¶¶ 25-26, 35.  Plaintiff claims that following her arrest, she was detained in jail for three hours until her bail was posted and Plaintiff was released.  Complaint ¶¶ 26, 34-35. Defendants argue in support of summary judgment that Plaintiff's arrest for petit larceny[5] was supported by probable cause, a complete defense to Plaintiff's Fourth Amendment claim based on her alleged false arrest and imprisonment.  Defendant Piel's Memorandum at 9-10; Store Defendants' Memorandum at 9-12.

Claims for false arrest and imprisonment are common law torts.  *See Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999) (referring to claim for false arrest

---

[5] Under New York law, "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof."  N.Y. Penal Law § 155.05 (McKinney 1998). "A person is guilty of petit larceny when he steals property."  N.Y. Penal Law § 155.25 (McKinney 1998).

and false imprisonment as "common law tort").  "[A] common law tort is not cognizable under section 1983 unless it also results in a violation of federal constitutional or statutory law."  *Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994) (citing cases). Nevertheless, the tort of false arrest and false imprisonment supports a § 1983 claim because such tort also violates the Fourth Amendment.  *Cook*, *supra*. (observing common law tort of false arrest implies am unreasonable seizure in violation of the Fourth Amendment); *See Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) (stating that probable cause will defeat common law torts for false arrest, false imprisonment and malicious prosecution, and, similarly, alleged violations of the Fourth Amendment).

The elements of an unlawful seizure and false arrest claim include (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).  The existence of probable cause for the arrest, however, "constitutes justification and 'is a complete defense to [a § 1983] action [based on] false arrest.'"  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).  *See United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1999) (observing that the Fourth Amendment's reasonableness requirement permits certain actions, including an arrest, to be taken in certain circumstances, regardless of any subjective intent which, without more, would render the challenged action unlawful, such that "an officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no

constitutional significance"). *See also  Viator v. City of Rochester*, 2005 WL 1876064, *
7-8 (W.D.N.Y. Aug. 8, 2005) (considering existence of probable cause to stop vehicle
for traffic violation a complete bar to subsequent § 1983 action based on racial
profiling).

It is well established that a finding of probable cause to support an arrest will also
defeat state tort claims for false arrest, false imprisonment and malicious prosecution.
*Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985).  The
Supreme Court has held that such probable cause defense available to law
enforcement officers in state common-law tort actions for both false arrest and false
imprisonment is also available to the officers under § 1983 actions.  *Pierson v. Ray*, 386
U.S. 547, 557 (1967).  *See DePrima v. Village of Catskill*, 105 F.Supp.2d 75, 81
(E.D.N.Y. 2000) ("Claims for false arrest and detention, are premised on a lack of
probable cause for the arrest and detention."); *Smith v. County of Saratoga*, 1996 WL
637560, *5 (N.D.N.Y. 1996) (stating existence of probable cause for arrest bars § 1983
claims based on false arrest and false imprisonment).

"Probable cause exists when an officer has 'knowledge or reasonably trustworthy
information sufficient to warrant a person of reasonable caution in the belief that an
offense has been committed by the person to be arrested.'" *Curley v. Village of Suffern*,
268 F.3d 65, 69 (2d Cir. 2001) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d
Cir. 2000)).  Further, probable cause exists when the officer receives information from a
putative victim or eyewitness, "unless the circumstances raise doubt as to the person's
veracity." *Curley*, *supra*, at 69 (citing *Simonetti*, *supra*, and quoting *Singer*, *supra*, 63
F.3d at 119).

In the instant case, even assuming, *arguendo*, that Plaintiff could establish the elements of a false arrest claim, based on the record, a reasonable jury could only find that probable cause existed for the arrest.

Specifically,

[i]n general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . . The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute.

*Weyant*, *supra*, 101 F.3d at 852 (internal citations omitted).

When considering whether probable cause for an arrest exists, courts "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996).  The court must consider the "totality of the circumstances" in determining whether probable cause existed to effect an arrest.  *Illinois v. Gates*, 462 U.S. 213, 233 (1983).  Moreover, probable cause supporting an arrest "can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information."  *Bernard*, *supra*, 25 F.3d at 102.  Here, the facts presented to Defendant Piel by Defendants Meerboth and Goodwin at the J.C. Penney security office established probable cause for Plaintiff's arrest.

Plaintiff's claims are largely based on the fact that the two pairs of slacks Defendants suspected Plaintiff of taking from the store were never found either in Plaintiff's bag or on Plaintiff's person.  *See* Plaintiff's Fact Statement at 4-6.  Such fact does not, however, negate the existence of probable cause to believe that Plaintiff

shoplifted the items from J.C. Penney's.  Significantly, Plaintiff does not dispute that the missing items were never found in the store and, of course, Piel could reasonably infer from the scenario that Plaintiff took the items from the store, but discarded them elsewhere within the mall, intending to retrieve them before leaving the mall after her attempted shoplifting actions at the Kaufmann's store, perhaps to make room in her black bag for the items she admits later attempting to take from Kaufmann's by secreting them in her bag.  The record is devoid of any mention as to whether the Kaufmann's fitting rooms were checked for the clothing items missing from the J.C. Penney store.  Nevertheless, regardless of whether or not Plaintiff actually took the unaccounted for items, *i.e.*, the slacks, from J.C. Penney, the record establishes probable cause supporting the arrest of Plaintiff for taking the items.

In contrast to Plaintiff's assertions, the record establishes that Defendant Piel was present in Kaufmann's loss prevention office when it was revealed that Plaintiff had attempted to take items from Kaufmann's without paying for them.  After leaving Kaufmann's loss prevention office, Goodwin asked Deputy Piel to come to the J.C. Penney loss prevention office to review the surveillance tape to determine if there was probable cause to arrest Plaintiff and Piel agreed.  Goodwin and Meerboth then escorted Plaintiff from Kaufmann's loss prevention officer to J.C. Penney's loss prevention office where Deputy Piel joined them and Goodwin, Meerboth and Piel all reviewed the surveillance tape which showed Plaintiff taking five items into the fitting room and, upon emerging from the fitting room, returning only three items to the display racks, while Plaintiff's black shopping bag appears more full than when she entered the fitting room and a white price tag similar to the price tag attached to the slacks Plaintiff

22

brought into the fitting room appeared to be protruding from the top of the bag.
Defendants' Fact Statement at 2-3 (referencing Defendants' Exh. B (Meerboth Affidavit
¶ 9), and Exh. C (store video surveillance tape)).  Plaintiff does not dispute the accuracy
of the surveillance tape.

The undisputed facts thus establish the existence of probable cause to arrest
Plaintiff for petit larceny.  Furthermore, even if, *arguendo*, the circumstances of the
arrest raise questions as to Defendants' true motivation for effecting the arrest, such
motivation is not a consideration in assessing probable cause.  *Singer*, *supra*, 63 F.3d
at 119 (observing that probable cause for the plaintiff's arrest on petit larceny charges
existed, even though circumstances established the plaintiff, who was employed as
New York State Department of Environmental Conservation ranger, advised store clerk
he intended to take certain items needed for use in an emergency search and rescue
operation from store without paying for the items, provided the store clerk with a list of
the items taken and the cost of each item, and stated he would return later to pay for
the items, and despite fact of plaintiff's local reputation as "a maverick in local politics"
whose political positions were often unpopular with local elected officials).

The existence of probable cause to support Plaintiff's arrest thus requires
summary judgment on Plaintiff's § 1983 claim based on her alleged false arrest and
false imprisonment.  Summary judgment on Plaintiff's Second Cause of Action under §
1983 should be GRANTED.

### 3.    Plaintiff's Malicious Prosecution Claim

In her First Cause of Action, Plaintiff claims that Defendants subjected her to

malicious prosecution for shoplifting at the J.C. Penney store because of Plaintiff's race, causing Plaintiff to suffer "great indignity and humiliation, pain and distress of mind and body," preventing Plaintiff "from attending to usual business and social pursuits," and causing Plaintiff to incur expenses for legal counsel.  Complaint ¶¶ 25, 32-33.  In support of summary judgment, Defendants argue that Plaintiff is unable to establish several elements of a claim for a Fourth Amendment violation based on malicious prosecution.  Defendant Piel's Memorandum at 6-9; Store Defendants' Memorandum at 2-9.  In opposition to summary judgment, Plaintiff points to the Store Defendants' response to Plaintiff's interrogatory and Defendant Piel's deposition testimony in which Defendants admit that the two pairs of ladies slacks that were unaccounted for following Plaintiff's exiting J.C. Penney's fitting room were never recovered, yet Defendants proceeded to pursue criminal charges against Plaintiff, and refused Plaintiff's request to dismiss the charges.  Plaintiff's Fact Statement[6] at 4-8.

"Section 1983 liability may also be anchored in a claim for malicious prosecution, as this tort 'typically implicates constitutional rights secured by the fourteenth amendment, such as deprivation of liberty.'" *Cook*, *supra*, 41 F.3d at 79 (quoting *Easton v. Sundram*, 947 F.2d 1011, 1017 (2d Cir. 1991)).  [A] claim for malicious prosecution brought under § 1983 is governed by state law."  *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) (citing *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989).  The elements of a malicious prosecution claim, whether brought under state law or as a § 1983 due process violation, are the same and include: "'(1) the defendant either commenced or

---

[6] Plaintiff did not file a memorandum of law in opposition to summary judgment.

continued a criminal proceeding against [her]; (2) that the prosecution terminated in [her] favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice.'" *Bonide Products, Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) (quoting *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). Here, Plaintiff has failed to establish the required second, third and fourth elements.

In particular, the dismissal of the criminal proceedings against Plaintiff in Clarence Town Court "in the interest of justice" does not constitute the requisite favorable termination required for the second element. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("'[A]s a matter of law, [a] dismissal in the interests of justice] cannot provide the favorable termination required as the basis for a claim of malicious prosecution.'") (quoting *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992)). This is so because an interest of justice dismissal is not *per se* inconsistent with a conclusion of innocence. *See Hygh*, *supra*, at 368 (quoting *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 493 (N.Y. 1984) ("A dismissal 'in the interest of justice" is neither an acquittal of the charges nor any determination of the merits. Rather, it leaves the question of guilt or innocence unanswered."). Thus, Plaintiff has not, and cannot establish the second element of a malicious prosecution claim.

Nor, as discussed above, Discussion, *supra*, at 19-23, has Plaintiff established the third element requiring the absence of probable cause. Plaintiff thus fails to meet the third required element of a malicious prosecution claim.

Finally, Plaintiff points to no evidence suggesting that the criminal proceeding against her was instituted with actual malice, as required by the fourth element. A

showing of actual malice

> "does not require a plaintiff to prove that the defendant was motivated by spite or hatred . . . [r]ather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."

*Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (N.Y. 1978)).

Actual malice rarely can be established through direct evidence but, rather, is generally proven through circumstantial evidence. *Rounseville*, *supra*, at 630-31 (citing *Martin v. City of Albany*, 364 N.E.2d 1304, 1306-08 (1977)). A lack of probable cause and actual malice are closely related and the existence of malice may be inferred from a finding that the defendants lacked probable cause to initiate criminal proceedings. *Rounseville*, *supra*, at 631 (citing cases). As explained by the New York Court of Appeals,

> [c]are must especially be taken here with the critical word 'malicious'. A man may institute a well-founded prosecution with the worst of motives and the prosecution will not be deemed malicious. Or he may act on evidence which would seem reasonably to justify making a charge, and the prosecution will not be malicious if he was mistaken about the true meaning of the evidence. Thus, in practice, 'malice' as here conjoined with 'prosecution' often comes to mean conscious falsity.

*Munoz v. City of New York*, 218 N.E.2d 527, 529 (N.Y. 1966).

In the instant case, the record is devoid of any evidence suggesting that the criminal charges lodged against Plaintiff were anything other than well-founded, even if, *arguendo*, based on an improper motive, such that there can exist no issue of fact that the criminal charges were filed against Plaintiff as a result of conscious falsity. As such, summary judgment on Plaintiff's First Cause of Action alleging malicious prosecution should be GRANTED in favor of Defendants.

### 4.      Plaintiff's Due Process Claim Based on Abuse of Process

In her Third Cause of Action, Plaintiff alleges abuse of process insofar as Defendants knew or should have known that Plaintiff was not guilty of any crime, "but issued the Accusatory Instrument and Supporting Deposition to said Plaintiff and caused Plaintiff to be maliciously prosecuted nonetheless, without any lawful reason," resulting in monetary damages.  Complaint ¶¶ 37-39.  Defendants maintain that Plaintiff is unable to establish the elements of an abuse of process claim, and that the claim is otherwise precluded by the fact that the criminal proceedings against Plaintiff were not terminated in Plaintiff's favor.  Defendant Piel's Memorandum at 10; Store Defendants' Memorandum at 12-14.

"In the criminal context, malicious abuse of process is 'by definition a denial of procedural due process.'" *Cook*, *supra*, 41 F.3d at 80 (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977)).  "The torts of malicious prosecution and abuse of process are closely allied.  While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'" *Cook*, *supra*, at 80 (quoting 2 Committee on Pattern Jury Instructions, Association of Supreme Court Justices, New York Pattern Jury Instructions § 3:51 at 816 (1968)).  According to the Second Circuit, the circuit's recognition of malicious prosecution claims under § 1983 is properly extended "to the tort's close cousin, abuse of criminal process." *Cook*, *supra*.

As with malicious prosecution, state law provides the elements for an abuse of process claim. *Cook*, *supra*, 41 F.3d at 80.

In New York, a malicious abuse of process claim lies against a defendant who

(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.

*Id.* (citing *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984); and *Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n*, 343 N.E.2d 278, 282 (N.Y. 1975)).

Nevertheless, "[a] malicious motive alone does not give rise to a cause of action for abuse of process." *Curiano*, *supra*, at 1326.

In the instant case, Plaintiff has failed to establish the third element necessary for a due process violation based on an abuse of process claim.  Specifically, Plaintiff claims that Defendants initiated and pursued the criminal charges to "cause[ ] Plaintiff to be maliciously prosecuted."  Complaint ¶ 38.  Although malicious prosecution would be a collateral objective outside the legitimate ends to a criminal proceeding, the failure of Plaintiff's malicious prosecution claim also vitiates the abuse of process claim.

As such, summary judgment on Plaintiff's Third Cause of Action for a due process violation based on abuse of process should be GRANTED in favor of Defendants.

### 5.      Conspiracy to Violate Plaintiff's Constitutional Rights

Plaintiff's Fifth Cause of Action is that the Store Defendants conspired with Defendant Piel to seize Plaintiff and deprive Plaintiff of liberty in violation of her constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments, as well as under unspecified sections of "New York State Constitutional and statutory law." Complaint ¶¶ 44-48.  Plaintiff further alleges Defendants violated her right (1) to be free

from invidious and intentional racial discrimination under 42 U.S.C. § 2000a, and the

Thirteenth and Fourteenth Amendments; (2) to be secured in her person and effects

against unreasonable search and seizure based on her race under the Fourth and

Fourteenth Amendments; (3) to be free from false and trumped up criminal charges for

no legitimate reason but, rather, solely for racial bias and animus, in violation of the

Fifth,  Thirteenth and Fourteenth Amendments; (4) not to be deprived of life, liberty or

property without due process of law, and to the equal protection of law secured by the

Fourteenth Amendment.  Complaint ¶ 49(a)-(d).  In support of summary judgment,

Defendants argue that Plaintiff's alleged violations of her Fourth and Fourteenth

Amendment rights are duplicative of Plaintiff's earlier claims, that 42 U.S.C. § 2000a,

prohibiting racial discrimination or segregation in placed of public accommodation as

defined thereunder provides no basis for Plaintiff's § 1983 claim, Plaintiff alleges no

facts in support of her claimed Fifth Amendment violation, and Plaintiff points to no

action by Defendants constituting a badge or incident of slavery as required for a claim

under the Thirteenth Amendment.  Defendant Piel's Memorandum at 11; Store

Defendants' Memorandum at 16-19.

Insofar as Plaintiff's Fifth Cause of Action alleges violations of her Fourth and

Fourteenth Amendment rights, for which Plaintiff alleges no additional facts, the court

finds that this claim is duplicative of Plaintiff's First and Second Causes of Action

respectively alleging a Fourth Amendment violation based on Plaintiff's allegations of

malicious prosecution and false arrest and imprisonment.  Further, the Fifth Cause of

Action's conspiracy allegations are duplicative of Platiniff's Seventh Cause of Action

alleging violations of 42 U.S.C. §§ 1985 and 1986.  *See* Discussion, *infra*, at 36-42.  As

such, the court will not separately consider Plaintiff's Fourth and Fourteenth

Amendment alleged violations and her § 1985 and § 1986 claims in connection with the

discussion of Plaintiff's Fifth Cause of Action.  Rather, with regard to Plaintiff's Fifth

Cause of Action, the court addresses only the allegations that Defendants violated

Plaintiff's rights under 42 U.S.C. § 2000a and the Thirteenth Amendment.  Complaint ¶

49(a) and (c).[7]

Insofar as Plaintiff asserts a violation of her rights under 42 U.S.C. § 2000a ("§

2000a"), Complaint ¶ 49(a), Defendants' conduct on which the instant action is

predicated occurred at the J.C. Penney retail store.  As relevant, § 2000a prohibits

discrimination or segregation on the basis of "race, color, religion, or national origin" to

ensure that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, and accommodations of any place of public

accommodation . . . ."  42 U.S.C. § 2000a(a).  As defined under § 2000a, a "place of

public accommodation" includes

> (1) any inn, hotel, motel, or other establishments which provides lodging to
> transient guests, other than an establishment located within a building which
> contains not more than five rooms for rent or hire and which is actually occupied
> by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other

---

[7] Plaintiff also mentions, without providing any factual support, violations of her rights under the
Fifth and Sixth Amendments, as well as under unspecified "New York State Constitutional and statutory
law. . . ."  Complaint ¶ 45.  Plaintiff's failure to more precisely describe the alleged violations renders this
court unable to address them as to do so would place the court in the position of acting as providing legal
advice to Plaintiff, who is represented by counsel, implying the court has abandoned its neutral role in
favor of advocating Plaintiff's position.  *See Amnesty America v. Town of West Hartford*, 288 F.3d 467,
470 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an
independent review of the record to find proof of a factual dispute.").  *See Little v. Cox's Supermarkets*, 71
F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for
factual disputes, it is not required to scour the party's various submissions to piece together appropriate
arguments.").

facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(I) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b)(1) - (4).

Significantly, the text of § 2000a does not specifically include retail department stores such as the J.C. Penney store which Plaintiff has not alleged has a restaurant or lunch counter, as a "place of public accommodation," nor has the Second Circuit Court of Appeals, nor any district court within the Second Circuit, defined a retail shop, such as a department store, as a place of public accommodation as defined under § 2000a.  *See Kelly v. Yorktown Police Department*, 2006 WL 3316183, *5 (S.D.N.Y. Nov. 13, 2006) (holding "retail stores are not places of public accommodation within the meaning of § 2000a") (citing cases).  In contrast, had there been located within the premises of the Defendant J.C. Penney store a lunch counter or other eating area, the store would then have constituted a "place of public accommodation" under § 2000a.  *See United States v. Baird*, 85 F.3d 450, 455 (9th Cir.1996) (finding that the presence of two video game machines transformed a retail store, otherwise not a place of public accommodation under 42 U.S.C. § 2000a, into a place of entertainment for purposes of the statute); *Thomas v. Tops Friendly Markets, Inc.*, 1997 WL 627553, *3 - 4 (N.D.N.Y. Oct. 8, 1997) (retail grocery store in which was physically located food counters and table areas was "place of public accommodation").  Nevertheless, absent any allegation that there was

31

any dining facility or area within the subject J.C. Penney store, there is no basis for Plaintiff's § 2000a violation and summary judgment in favor of Defendants should be GRANTED as to such claim.

As for Plaintiff's asserted Thirteenth Amendment violation, the Thirteenth Amendment proscribes slavery or involuntary servitude. U.S. Const. amend XIII, § 1. Under § 2 of the Thirteenth Amendment, Congress is given authority to enforce the amendment. The Supreme Court has narrowly construed the direct, self-executing meaning of the Thirteenth Amendment. *Memphis v. Greene*, 451 U.S. 100, 125-28 (1981) (holding closing of two-lane city street transversing white residential community and which had previously traveled into adjoining black residential community did not violate Thirteenth Amendment because street closing's disparate impact on black citizens could not be fairly characterized as a badge or incident of slavery in the absence of any showing of discriminatory motive, proffered interests of child safety and tranquility were legitimate concerns and closing only minimally affected driving time and distance). Even assuming the Thirteenth Amendment had a broader self-executing effect other than abolishing slavery, "the disparate impact on black citizens could not, in any event, be fairly characterized as a badge or incident of slavery." *Id*. at 126.

District Courts within the Second Circuit have construed similar claims as outside the Thirteenth Amendment's purview. *See Robinson v. Town of Colonie*, 878 F.Supp. 387, 395-96 (N.D.N.Y. 1995) (holding actions by police in directing, at request of store management, African-American shoppers to leave store could not be construed as "badges and incidents" of slavery in violation of the Thirteenth Amendment); *Flowers v. The TJX Companies, Inc.*, 1994 WL 382515, * 4 (N.D.N.Y. Jul. 15, 1994) (holding

complaints by African-American plaintiffs against defendant retail store employees regarding brief detention and questioning for suspected shoplifting which did not result in any legal action against the plaintiffs did not provide basis for Thirteenth Amendment claim).  Similarly, in the instant case, the acts of which Plaintiff complains cannot be construed as "badges or incidents" of slavery.  As such, summary judgment on this aspect of Plaintiff's Fifth Cause of Action should be GRANTED.


**B.    § 1981**

Plaintiff alleges in her Sixth Cause of Action that Defendants, pursuant to J.C. Penney store policy, have "deprived Plaintiff of the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens on the basis fo Plaintiff's race, Afro-American, and to like punishment, pain and penalties," in violation of 42 U.S.C § 1981.  Complaint ¶ 52.  Defendant Piel argues in support of summary judgment that 42 U.S.C. § 1981 affords a cause of action only for race discrimination in the making and enforcing of contracts and, as the conduct underlying the instant claims against him does not involve any contract, Plaintiff's Sixth Cause of Action is without any basis.  Defendant Piel's Memorandum at 11-12.  The Store Defendants argues that Plaintiff has failed to establish a *prima facie* case of racial discrimination.  Store Defendants' Memorandum at 19-22.

As relevant, 42 U.S.C. § 1981 ("§ 1981")  provides that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of

33

every kind, and to no other.

42 U.S.C. § 1981(a).

Initially, the court observes that there is a "dearth of case law regarding the 'equal

benefit' clause" of 42 U.S.C. § 1981 ("§ 1981"). *Pierre v. J.C. Penney Company, Inc.*,

340 F.Supp.2d 308, 310 (E.D.N.Y. 2004); *Felton v. Maines Cash & Carry, Inc.*, 2001

WL 118594, *5 (N.D.N.Y. Feb. 2, 2001).  Nevertheless, the Second Circuit Court of

Appeals recently held that no state action is required for a claim under § 1981's equal

benefit clause.  *Phillip v. University of Rochester*, 316 F.3d 291, 296 (2d Cir. 2003)

(citing 1981(c) ("The rights protected by this section are protected against impairment

by nongovernmental discrimination and impairment under color of State law.")).

The elements of a § 1981 claim include "(1) the plaintiff is a member of a racial

minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the

discrimination concerned one or more of the activities enumerated in the statute."  *Mian

v. Donaldson, Lufkin & Jenrette*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Further, the Second

Circuit has broadly construed § 1981's equal benefit clause as applying to "racially

motivated torts that deprive a plaintiff of the equal protection of laws or proceedings for

the security of persons and property."  *Phillip*, *supra*, 316 F.3d at 297-98.  Although the

Second Circuit declined to specify what "laws or proceedings" protect "the security of

persons and property," *id*. at 298, the allegations in the instant action that Defendants'

unlawfully detained, arrested, imprisoned and prosecuted Plaintiff are within the ambit

of such laws or proceedings.  *See Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir.

2004) (holding allegations that store security officer's decision to stop and search

African-American customer on suspicion of shoplifting was racially motivated supported

alleged claim for violation of customer's right to full and equal benefit of the laws under § 1981); *see also Pierre*, *supra*, 340 F.Supp.2d at 312-13 (holding black customer's allegations that retail store's security guards accused her of shoplifting, detained her for nearly three hours, and attempted to force her to sign a false confession because of her race sufficiently stated claim under § 1981's equal benefit clause based on alleged violations of state laws against assault and battery and false imprisonment).

A violation of § 1981's equal benefit clause, however, requires that at least some of Defendants' challenged actions constituted a tort.  *See Frierson-Harris v. Hough*, 2006 WL 298658, * 7 (S.D.N.Y. Feb. 7, 2006) (holding plaintiff failed to state claim for racial discrimination under § 1981's equal benefit clause where plaintiff alleged no facts which, if true, would constitute a violation of any other laws).  Further, "[a]lthough the Second Circuit has recognized the possibility that the 'equal benefit' clause of Section 1981 could result in the 'federalization' of state tort laws, it has never suggested that it would create a cause of action where none existed before." *Id*. (citing *Phillip*, *supra*, 316 F.3d at 297).  In the instant case, as discussed, Plaintiff has failed to establish that any of Defendants' conduct constituted a tort in violation of any federal or New York laws or proceedings.  Discussion, *supra*, at 10-32 (federal laws); Discussion, *infra*, at 48-52 (New York laws).  In the absence of some such predicate violation, Plaintiff's § 1981 claim also fails.

Summary judgment on Plaintiff's Sixth Cause of Action alleging a violation of § 1981's equal benefit clause should therefore be GRANTED.

## C.   §§ 1985 and 1986

In her Seventh Cause of Action, Plaintiff alleges the Store Defendants "jointly and willfully participated together with Sheriff's Deputies Piel and Doe in a conspiracy by advising and/or counseling Defendants Piel and Does to file false charges, falsely arrest and maliciously prosecute Plaintiff without any legal or lawful basis to do so." Complaint ¶ 56.  Plaintiff further alleges Defendants knew of the falsity of the petit larceny charge against her, yet conspired against her because of her race.  *Id.*  ¶¶ 57-59.  In support of summary judgment, Defendants argue that no evidence establish any basis for finding Defendants had any agreement to conspire against Plaintiff, and that in any event such claim is time-barred.  Defendant Piel's Memorandum at 12-13; Store Defendants' Memorandum at 23-25.  Here, Plaintiff's failure to provide evidence of any agreement between the Store Defendants and Defendant Piel renders the Seventh Cause of Action without merit as discussed below.

It is unlawful to conspire to interfere with one's civil rights.  42 U.S.C. § 1985 ("§ 1985").  Although Plaintiff does not specify the subsection under which she asserts her § 1985 claim, a fair reading of § 1985 establishes Plaintiff's Seventh Cause of Action must be based on § 1985(3) which proscribes a conspiracy to deprive a person of any rights or privileges under the laws.[8]  The four elements of a § 1985(3) claim include

---

[8] Section 1985(1) renders it unlawful to conspire to prevent an officer from performing duties, whereas § 1985(2) renders it unlawful to conspire to obstruct justice, or to intimidate a party, juror or witness.  Further, as relevant, § 1985(3) provides

If two or more persons in any State or Territory conspire . . . for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protections of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this

(a) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citing and quoting *United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).

A conspiracy under § 1985 "need not be shown by an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United States v. Rubin*, 844 F.2d 878, 984 (2d Cir. 1988)).

Further, § 1986 "provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (quoting *Mian*, *supra*, 7 F.3d at 1088)).  As such, "a § 1986 claim must be predicated on a valid § 1985 claim."  *Mian*, *supra* (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir.), *cert. denied*, 436 U.S. 906 (1978)).  Moreover, an essential element to a cause of action under both §§ 1985 and 1986 is that "the alleged discrimination took place because of the individual's race."  *Mian*, *supra*, at 1088.

---

section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having an exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985(3) essentially bans "private conspiracies to accomplish deprivations that are actionable under § 1983 when caused by state officials." *United Bhd. of Carpenters, Local 610, supra*, 463 U.S. at 840.  It is "not required that the conspirators be state officials or act under color of state law . . . . [rather] the requirement is that the conspiracy intended to cause the State or a person acting under color of state law to deprive the victims of the conspiracy of their constitutional rights." *Id*. at 840 n. 2.

> Establishment of a § 1985(3) claim requires proof of a conspiracy between "two or more persons."  A conspiracy, for these purposes, need not be shown by proof of an explicit agreement, but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct. . . . [A] claim under § 1985(3) may be established against a state if it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State.

*LeBlanc -Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting § 1985(3)) (additional internal quotations omitted).

There is, however, "no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978).  *See Prescod v. American Broadcasting Companies, Inc.*, 1979 WL 242, *4 (S.D.N.Y. May 16, 1979) ("Under the settled law of this Circuit, a legally sufficient § 1985(3) claim is not made out by allegations of an intra-corporate conspiracy, whether the acts of the corporation and its agents are single or multiple, and whether or not the corporate agents are sued in their individual capacity.").  As such, the Seventh Cause of action requires a conspiracy not *among* the Store Defendants but, rather, *between* at least one of the Store Defendants and Defendant

Deputy Piel.  Here, the Seventh Cause of Action fails.

In particular, the record is devoid of any evidence establishing any agreement between any of the Store Defendants and Deputy Piel.  In opposition to summary judgment, Plainitff submitted an affidavit from one Marquita Sharp ("Sharp Affidavit"),[9] who was formerly employed at the J.C. Penney store[10] in the mall where Plaintiff was arrested for shoplifting on March 29, 2002.  According to Sharp, she commenced working at the J.C. Penney store in October 2004.  Sharp Affidavit ¶ 1.  Sharp maintains that since commencing her employment with J.C. Penney, she had personally observed several incidents leading Sharp to believe that "J.C. Penney's loss prevention security officers, starting at the top, have a mind set and policy of racial discrimination against minorities who patronize the Clarence J.C. Penney's store."  *Id*. ¶ 7.  The alleged incidents described by Sharp include witnessing an unidentified white security guard follow an Hispanic couple through the J.C. Penney store's shoe department in December 2004.  *Id*. ¶ 3(i).  According to Sharp, while assisting the Hispanic man in purchasing a pair of boots and a shirt, Sharp received a telephone call from the white security guard directing Sharp to put the purchased items into a small bag to ensure that the Hispanic man was not able to place additional unpaid items into the bag.  *Id*.

Sharp describes a second incident in which Sharp notified a J.C. Penney employee as to some suspicious activity by a white couple who had taken several pairs

---

[9] Plaintiff's Exh. B.

[10] Although Plaintiff refers to Sharp as a "former" J.C. Penney employee, Plaintiff's Fact Statement at 3, Sharp neither refers to herself as a "former" employee, nor does Sharp state that she no longer is employed by J.C. Penney.

of shoes out of their respective boxes while in an area of the shoe department that was isolated and outside the view of the store's security cameras.  Sharp Affidavit ¶ 3(ii).  Upon reporting such activity to "a senior J.C. Penney employee, Trent (last name unknown), he (Trent) told me not to worry about it."  *Id*.  Sharp's observations of Trent caused Sharp "to conclude that he (Trent) has a selective preference to serve white customers and not to serve minority customers." *Id*.  Sharp explained that such conclusion was also based on the fact that Trent would routinely refer minority customers to Sharp even though the shoe department salespeople, including Sharp and Trent, worked on a commission basis.  *Id*.  Sharp also describes an incident in which, after making several purchases at the J.C. Penney store, she entered a fitting room to try on some clothing and, upon exiting the fitting room, observed that a store security officer was present.  *Id*. ¶ 6.  The Sharp Affidavit, however, fails to create a triable issue of fact requiring trial for several reasons.

The personal and anecdotal observations set forth in the Sharp Affidavit pertain to a period of time more than 20 months <u>after</u> the incident at issue in the instant action, and nothing establishes that any of the security personnel involved in the instant action were involved in any of the incidents observed or recounted by Sharp.  Nor did J.C. Penney employee Trent work as a security guard and, as such, any decision by Trent as to whether to report suspicious activity cannot be fairly attributed to J.C. Penney's security policy.  Even assuming, *arguendo*, the Store Defendants maintained a discriminatory policy of targeting minority customers for shoplifting investigations and false charges, such an intra-corporate conspiracy is insufficient to establish a conspiracy with a government official under § 1985(3).  *Herrmann*, *supra*, 576 F.2d at

459.   Nor does the record establish that Defendant Piel ever agreed to participate in such policy.  Rather, the record establishes, and Plaintiff does not dispute, that Defendant Piel found probable cause to arrest Plaintiff on the petit larceny charge only after viewing the surveillance video.  Defendants' Exhs. A (Goodwin Affidavit ¶ 21), B (Meerboth Affidavit ¶ 19), and D (Piel Declaration ¶¶ 5-8).  As such, nothing in this record supports finding any conspiracy necessary to establish a § 1985(3) claim.

Furthermore, a § 1985(3) civil rights conspiracy claim cannot be maintained in the absence of some evidence establishing the plaintiff was deprived of some civil right. *Herrmann v. Moore*, 576 F.2d 453, 457 (2d Cir. 1978) (affirming district court's grant of summary judgment in favor of defendants on § 1985 claim where plaintiff failed to offer any evidence establishing plaintiff suffered a deprivation of any civil rights); *Patterson v. County of Oneida*, 2002 WL 31677033, * 4 (N.D.N.Y. Oct. 30, 2002) (holding African-American police officer could not maintain civil rights conspiracy claim deprivation of equal protection in violation of Fourteenth Amendment because police officer failed to prove he was deprived of equal protection), *aff'd in part*, *vacated in part*, 375 F.3d 206 (2d Cir. 2004).  Likewise, in the instant action, Plaintiff has failed to establish she was deprived of any civil rights.  Discussion, *supra*, at 10-32.  As such, Plaintiff's § 1985(3) claims also fails on this ground.

Given that Plaintiff cannot establish Defendants engaged in any conspiracy to deprive her of any civil rights so as to prevail on a § 1985(3) claim, Plaintiff also cannot prevail on her § 1986 claim.   *Mian*, *supra*, 7 F.3d at 1088 ("a § 1986 claim must be predicated on a valid § 1985 claim.").

Plaintiff's § 1986 claim is also time-barred in part as § 1986 provides that "no

41

action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  In the instant case, the conduct on which Plaintiff's claims are predicated occurred between March 29 and July 16, 2002.  Plaintiff did not commenced the action, however, until July 9, 2003.  As such, insofar as Plaintiff's § 1986 claim is predicated on Defendants' conduct between March 29 and July 9, 2003, it is time-barred.

Summary judgment on Plaintiff's Seventh Cause of Action alleging violations of 42 U.S.C. §§ 1985 and 1986 should be GRANTED in Defendants' favor.


**3.     State Causes of Action**

**A.     Supplemental Jurisdiction**

Even if Chief Judge Arcara accepts the instant recommendation that summary judgment be granted in favor of Defendants on all of Plaintiff's federal claims, the court could, notwithstanding, exercise jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367 (a).  The court, however, may decline to exercise supplemental jurisdiction over a state law claim where (1) the court has dismissed all claims over which it has original jurisdiction, or (2) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c)(2),(3).  The Second Circuit has stated that "'in the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered. . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 (2d Cir.1993) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). *See also Warren v. Fischel*, 33 F.Supp.2d 171, 178 (E.D.N.Y. 1999).

Nevertheless, "the discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors, including considerations of judicial economy, convenience and fairness to litigants." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (citing *Castellano v. Board of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)). Where "dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary.'" *Purgess, supra*, 33 F.3d at 138 (quoting 28 U.S.C. § 1367, Practice Commentary (1993) at 835).

The Second Circuit has concluded that the district court abused its discretion by exercising supplemental jurisdiction over state law claims, despite the dismissal of all federal claims, "where the federal claims had been dismissed at a relatively <u>early</u> state and the remaining claims involved issues of state law that were unsettled." *Valencia v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (underlining added) (citing *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001); *see also Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001); *Seabrook v. Jacobson*, 153 F.3d 70, 71-73 (2d Cir. 1998); and *Fay v. South Colonie Central School District*, 802 F.2d 21, 34 (2d Cir. 1986)). "Where a pendent state claim turns on novel or unresolved questions of state law,

43

especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts."  *Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992) (holding that where state claims involved novel questions of state law, it was an abuse of discretion to exercise supplemental jurisdiction over state claims after dismissing federal claims, given that state had yet to decide applicable period of repose for actions brought under state statute).  The Second Circuit, on the other hand, has affirmed a district court's decision to retain state claims after dismissing all federal claims.  *See Purgess*, *supra*, 33 F.3d at 139 (holding district court did not abuse its discretion by exercising supplemental jurisdiction over state claims where four of five federal claims were dismissed on the eve of trial, final federal claim was dismissed after the close of all the evidence, the parties had spent years preparing for trial in federal court, jury had heard evidence for several days and was ready to being deliberations, and it would have been wasteful to subject case to another full trial before a different tribunal).

        In the instant case, if Chief Judge Arcara accepts the recommendation that summary judgment should be granted in Defendants' favor on all the federal claims, such decision will serve as *res judicata* with regard to any future action on any heretofore unpleaded state claims in state court.  Specifically, New York courts both recognize and give full effect to the doctrine of *res judicata*.  *See Ryan v. New York Telephone Co.*, 467 N.E.2d 487, 490 (N.Y. 1984) ("To be sure, it is a fundamental principle that 'a judgment rendered jurisdictionally and unimpeached for fraud shall be conclusive, as to the questions litigated and decided, upon the parties thereto and their

privies, whom the judgment, when used as evidence, relieves from the burden of otherwise proving, and bars from disproving the facts therein determined.'") (quoting *Fulton County Gas & Elec. Co. v. Hudson Riv. Tel. Co.*, 93 N.E. 1052, 1055-56 (N.Y. 1911)).  "Under the transactional approach to *res judicata* adopted by New York, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction . . . are barred, even if based upon different theories or seeking a different remedy.'"  *Application of American Tobacco Co.*, 880 F.2d 1520-27 (2d Cir. 1989) (quoting *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981)).  *See also Troy v. Goord*, 752 N.Y.S.2d 460, 461 (App. Div. 4th Dep't 2002) ("[A] new claim constitutes the same cause of action as the formerly litigated claim if they arise out of the same transaction or occurrence or series of transactions or occurrences, even if the new claim is based upon a different legal theory or seeks a different remedy.") (citing *Smith v. Russell Sage College*, 429 N.E.2d 746, 749 (N.Y. 1981), *rearg. denied* 433 N.E.2d 537 (N.Y. 1982)).  As such, this court, in furtherance of judicial economy, should exercise supplemental jurisdiction over the state claims.

**B.      Compliance with New York Notice of Claim Requirements**

In support of summary judgment, Defendant Piel argues that the claims asserted against him under New York law should be dismissed given that Plaintiff never complied with notice of claim requirements under New York General Municipal Law § 50 and New York County Law § 52.  Defendant Piel's Memorandum at 3-5.  Plaintiff has not responded to this argument.

As a condition precedent to suit against a municipality or its officers and

employees, plaintiffs are required to serve on the defendant a notice of claim.  New

York General Municipal Law ("N.Y. Gen. Mun. Law")[11] § 50-e(1)(a) and (b).  Such notice

of claim is required to be filed "within ninety days after the claim arises."  N.Y. Gen.

Mun. Law § 50-e(1)(a).  Additionally, pursuant to New York County Law ("N.Y. County

Law")[12] § 52, a notice of claim "must be made and served in compliance with section

fifty-e of the general municipal law" for personal injury actions attributed to the actions

of a county, its officers or employees.   N.Y. County Law § 52(a).  In the instant case, it

is undisputed that Plaintiff never filed the requisite notice of claim, and that more than

90 days have elapsed since Plaintiff's claims arose.

Failure to timely file a notice of claim will result in a bar to the plaintiff's claim,

unless leave to file a late notice of claim is granted pursuant to N.Y. Gen. Mun. Law §

50-e(5).  The applicable limitations period is tolled pending determination of such

motion.  *Giblin v. Nassau County Medical*, 459 N.E.2d 856, 859 (N.Y. 1984).  The time

period within which to serve a late notice of claim, however, cannot be extended

beyond the applicable limitations period, *i.e.*, one year and 90 days for negligence

actions and one year for intentional tort actions, N.Y. Gen. Mun. Law §§ 50-e(5), 50-

i(3), and the request must therefore also be filed within the statutory period.  *Rattner v.*

*Netburn*, 733 F.Supp. 162, 166 (S.D.N.Y. 1989), *rev'd on other grounds*, 930 F.2d 204

(2d Cir. 1991); *Cohen v. Pearl River Union Free School Dist.*, 414 N.E.2d 639, 640

(N.Y. 1980).  Here, because Plaintiff's claims for negligence and intentional torts under

---

[11] Unless otherwise indicated, references to N.Y. Gen. Mun. Law are to McKinney 1999.

[12] Unless otherwise indicated, references to N.Y. County Law are to McKinney 2004.

New York common law arose nearly four years ago, Plaintiff is time-barred from

seeking an extension of her time to file the requisite notice of claim.  As such, Plaintiff's

claims for negligence and intentional torts should be dismissed for failure to comply with

New York law requiring the filing of a notice of claim.

### C.    Statute of Limitations

Defendant Piel argues that Plaintiff's New York common law claims for the

intentional torts of false arrest and false imprisonment must be dismissed because such

claims were filed more than one year after the underlying occurrence.  Defendant's

Piel's Memorandum at 5.  Defendant Piel further asserts that Plaintiff's negligence

claim, asserted under New York common law, must also be dismissed as time-barred

insofar as the claim is based on conduct occurring more than one year and 90 days

prior to the date the claim was filed. *Id*.  Plaintiff has not responded to this argument.[13]

Under New York law, the statute of limitations for claims sounding in negligence

asserted against a municipality, including a county or an officer of the municipality, is

one year and 90 days, N.Y. Gen. Mun. Law § 50-i(1)(c), while the statute of limitations

for intentional torts, including false arrest, false imprisonment, malicious prosecution

and abuse of process as generally applicable is one year.  New York Civil Practice Law

---

[13] Although the Store Defendants include the statute of limitations as an affirmative defense to
Plaintiff's claims under New York common law, Store Defendants' Answer ¶ 14, the Store Defendants fail
to address the statute of limitations defense in support of summary judgment.  Although a finding that
Plaintiff's state common law claims for intentional torts are time-barred as against Defendant Piel would
imply that the claims are also time-barred as against the Store Defendants, the failure to argue as much
renders the court unable to recommend dismissal against the Store Defendants based on such
untimeliness.

and Rules ("N.Y. Civ. Prac. L. & R.")[14] § 215(3).  Here, Plaintiff commenced the instant action on July 9, 2003, more than one year and 90-days after Plaintiff was arrested on March 29, 2002 and charged with the petit larceny charges.  However, Plaintiff continued to face prosecution on such charges until July 16, 2002, when the charges were dismissed in the interest of justice.  Thus, the negligence claim, insofar as it is predicated on events occurring more than one year and 90 days prior to the commencement of the instant action, and the intentional tort claims, insofar as they are predicated on events occurring more than one year prior to the commencement of the instant action, should be dismissed against Defendant Piel as a municipal employee as time-barred.

### D.    Merits of Plaintiff's State Claims

### 1.    Intentional Torts

As discussed, Plaintiff alleges the intentional torts of false arrest, false imprisonment, malicious prosecution and abuse of process as the basis for her § 1983 claims, as well as under state common law.  The elements of such claims, however, are identical to their federal constitutional counterparts.  *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (false arrest and imprisonment); *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994) (malicious prosecution and abuse of process).  As such, assuming Chief Judge Arcara agrees the record fails to establish the elements of Plaintiff's federal claims for false arrest, false imprisonment, malicious prosecution and

---

[14] References to N.Y. Civ. Prac. L. & R. are to McKinney 2006.

abuse of process under § 1983, Discussion, *supra*, at 18-28, Plaintiff has, likewise,

failed to establish the elements of such claims under New York common law, and

summary judgment on such state common law claims should be GRANTED in favor of

Defendants.


### 2.    Negligence

In her Fourth Cause of Action, Plaintiff alleges a claim under New York common

law for negligence in hiring and training based on J.C. Penny's reckless or careless acts

or omissions, including the "failure to properly select, hire, train, supervise and

otherwise to maintain a policy to prevent unwarranted racial profiling and racial 'video'

surveillance of Afro-Americans, absent any legitimate basis for doing so, and to prevent

false and malicious charges against Afro-American members of the general public. . . ."

Complaint ¶ 41.  The Store Defendants seek dismissal of this claim, arguing that insofar

as Plaintiff alleges simple negligence, no duty was owed to Plaintiff.  Store Defendants'

Memorandum at 14-15.  The Store Defendants further maintain that to establish a

claims for negligence in hiring, training and retention, Plaintiff must prove Defendant

J.C. Penney knew of Defendant Goodwin's and Meerboth's propensity to commit the

alleged racial profiling, or that J.C. Penney would have known of such propensity had

the store maintained an adequate hiring procedure.  *Id*.

The elements necessary to establish a cause of action for common law

negligence include "(1) the existence of a duty on defendant's part as to plaintiff; (2) a

breach of this duty; and (3) injury to the plaintiff as a result thereof."  *Akins v. Glens*

*Falls City School Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981).  The extent of any duty owed

is an issue of law for the court and dependent upon "whether the relationship of the

parties is such as to give rise to a duty of care * * *, whether the plaintiff was within the

zone of foreseeable harm * * *, and whether the [occurrence causing injury] was within

the reasonably foreseeable risks." *Di Ponzio v. Riordan*, 679 N.E.2d 616 (N.Y. 1997).

In the instant case, the record fails to establish that Defendant J.C. Penney owed any

duty to Plaintiff and Plaintiff cites no New York caselaw to support this element of her

negligence claim.  As such, summary judgment on Plaintiff's Fourth Cause of Action,

insofar as it alleges simple negligence, should be GRANTED in favor of Defendants.

As for Plaintiff's claims alleging negligent hiring and supervision by J.C. Penney,

such claims require Plaintiff to show that J.C. Penney knew of Defendant Goodwin's

and Meerboth's propensity to commit the alleged acts, or should have known of such

propensity had an adequate hiring procedure been conducted.  *Honohan v. Martin's*

*Food of South Burlington Inc.*, 679 N.Y.S.2d 478, 479 (App. Div. 3rd Dep't. 1998)

(granting summary judgment in favor of defendant retailer on negligent hiring and

supervision claim based on retailer's security guard's physical assault of customer

because plaintiff failed to make any showing that retainer knew or should have known

of security guard's propensity and defendants submitted affidavit from security guards

former supervisor establishing security guard had prior experience working in security,

had always received favorable reviews, and a check of the security guard's employment

references revealed no complaints); *Detone v. Bullit Courier Service, Inc.*, 528 N.Y.S.2d

575, 577 (App. Div. 1st Dep't. 1988) (holding a defendant employer may be required to

answer for the tort of any employee against a third party, but only "when the employer

has either hired or retained the employee with knowledge of the employee's propensity

for the sort of behavior which caused the injured party's harm.").

In the instant case, Defendants do not submit similar evidence establishing any lack of forseeability as to any propensity by Goodwin or Meerboth to target Plaintiff for arrest and prosecution on false shoplifting charges based on Plaintiff's race. Nevertheless, the initial burden is on Plaintiff to point to some evidence establishing such a propensity on the part of Goodwin and Meerboth and, as such, Defendants were not required to submit any evidence until and unless Plaintiff met her initial burden of proof. *Nora Beverages, Inc.*, *supra*, 164 F.3d at 742 ("as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."). Furthermore, a finding of negligence may never be based solely on speculation. *MacKendrick v. Dry Dock Company*, 338 N.Y.S.2d 41, 43 (App. Div. 1st Dep't. 1972), *aff'd*, 319 N.E.2d 421 (N.Y. 1974). Plaintiff's reliance solely on mere conclusory assertions in support of her negligent hiring and supervision claims requires summary judgment be GRANTED in favor of Defendants. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *See Yin Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (in opposing summary judgment, nonmoving party may not rely simply on conclusory statements or on contentions that affidavits supporting motion lack credibility).

As for Plaintiff's allegation that Defendant J.C. Penney was negligent in training

Goodwin and Meerboth, a failure-to-train claim requires that a plaintiff establish training inadequacy reflecting "deliberate indifference" to the rights of those persons with whom the defendant employees come into contact.  *Canton v. Harris*, 489 U.S. 378, 388 (1989).  Again, Plaintiff points to no evidence tending to establish such element of the claim but, rather, relies on mere conclusory allegations which are insufficient to avoid summary judgment.  *Nora Beverages, supra*.  As such, summary judgment on this aspect of Plaintiff's Fourth Cause of Action should be GRANTED in favor of Defendants.

### D.    Qualified Immunity

Alternatively, on this record, Defendant Piel is entitled to qualified immunity. Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue was clearly established, if it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S.194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865-66 (2d Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  "The availability of the defense depends on whether a reasonable officer could have believed his action to be

lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful. *Brown v. City of Oneonta, N.Y. Police Dep't*, 106 F.3d 1125, 1131 (2d Cir. 1997). If, however, it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity. *Robison*, *supra*, 821 F.2d at 920-21.

A defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduces[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiff. . . could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison*, *supra*, 821 F.2d at 921 (internal quotation omitted). Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment is properly denied. *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996). Provided that no factual issues are disputed, the application of qualified

immunity to the facts is a question of law for the court to decide.  *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).  Accordingly, the court must evaluate whether Defendants' actions, in light of clearly established law in existence as of March 29, 2002, violated Plaintiff's civil rights.

As discussed above, there is no merit to any of Plaintiff's claims.  Rather, given that Defendant Piel had viewed the security surveillance video prior to determining there was probable cause for arresting Plaintiff, and that the surveillance video showed, and Plaintiff does not dispute, Plaintiff taking five items into the fitting room and, upon emerging from the fitting room, and returning only three items to the display racks, while Plaintiff's black shopping bag appears more full than when she entered the fitting room with what appears to be a price tag protruding from the top of the bag, Defendants' Fact Statement at 2-3 (referencing Defendants' Exh. B (Meerboth Affidavit ¶ 9), and Exh. C (store video surveillance tape)), it was objectively reasonable for Defendant Piel to believe that his actions in arresting Plaintiff did not violate Plaintiff's civil rights.  See Discussion, *supra*, at 19-23 (finding on this record Piel had probable cause to arrest Plaintiff for shoplifting).

Alternatively, summary judgment should also be GRANTED as to Defendant Piel based on qualified immunity.

## **CONCLUSION**

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 143) should be GRANTED and the action should be DISMISSED.  The Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 19, 2007
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,*

892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys

for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       January 19, 2007
             Buffalo, New York